# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GREGORY McKNIGHT,

:

    Petitioner,

Case No. 2:09-cv-059

:

    -vs-

Chief Judge Susan J. Dlott
Magistrate Judge Michael R. Merz

DAVID BOBBY, Warden,

:

    Respondent.

---

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR LEAVE TO CONDUCT DISCOVERY

---

This capital habeas corpus case is before the Court on Petitioner's Motion for Leave to Conduct Discovery (Doc. No. 27). The Warden opposes the Motion (Doc. No. 29) and Petitioner has filed a Reply in support (Doc. No. 30).

Petitioner seeks:

1. To depose Vinton County Deputy Sheriff Matthew Kight on his First Claim for Relief,

2. To depose his appellate counsel on his Thirty-Third Claim for Relief,

3. To depose the jurors

    1. As to their exposure to pretrial publicity and the effect that had on their deliberations (Second Claim),

    2. As to their knowledge of and exposure to racial biases in Vinton County, Ohio, during the trial (Third Claim),

    3. As to their knowledge of a juror sleeping during the trial (Fourteenth Claim), and

-1-

    4.     As to their failure to follow the court's instructions (Thirty-Second Claim).

4.     To depose the records custodian for the Vinton County Prosecuting Attorney for all homicides in Vinton County, Ohio, from October 19, 1981, to the present (Thirty-Fifth Claim).

The claims for relief on which Petitioner seeks discovery are pled in the Petition as follows:

> **First Ground for Relief:**
>
> A search warrant based on an affidavit containing false information made knowingly and intentionally or with reckless disregard for the truth violated Gregory McKnight's right against an unreasonable search and seizure in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments.
>
> **Second Ground for Relief**
>
> Gregory McKnight was denied a fair trial, impartial jury and due process as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments when the trial court failed to change venue, despite pervasive pretrial publicity.
>
> **Third Ground for Relief**
>
> Gregory McKnight was deprived of due process, a fair trial and a fair sentencing hearing in violation of his Fifth, Sixth, Eighth and Fourteenth Amendment rights due to the trial court's failure to change venue in light of the pervasive racial bias in the Vinton County, Ohio community.
>
> **Fourteenth Ground for Relief**
>
> Gregory McKnight's right to due process and a fair trial by a fair and impartial jury was denied when the trial court permitted a juror to remain on the jury after the juror was sleeping during the presentation of evidence in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.
>
> **Thirty-Second Ground for Relief**

>Gregory McKnight's rights to a fair trial, due process and a reliable sentencing determination were denied under the Fifth, Sixth, Eighth, and Fourteenth amendments when members of his jury engaged in misconduct by failing to follow the trial court's instructions of law
>
>**Thirty-Third Ground for Relief**
>
>Gregory McKnight was denied the effective assistance of appellate counsel on his sole appeal of right to the Supreme Court of Ohio under the Fifth, Sixth, Eighth, and Fourteenth amendments.
>
>**Thirty-Fifth Ground for Relief**
>
>Gregory McKnight's rights were violated when he was convicted and sentenced to death under Ohio's death penalty system which fails to provide an adequate system of appellate and proportionality review in death penalty cases in violation of the Fifth, Sixth, Eighth, and Fourteenth amendments.

## Standard for Discovery in Habeas Corpus Cases

A habeas petitioner is not entitled to discovery as a matter of course, but only upon a fact-specific showing of good cause and in the Court's exercise of discretion. Rule 6(a), Rules Governing §2254 Cases; *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harris v. Nelson*, 394 U.S. 286 (1969); *Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000). Before determining whether discovery is warranted, the Court must first identify the essential elements of the claim on which discovery is sought. *Bracy*, *citing United States v. Armstrong*, 517 U.S. 456 (1996). The burden of demonstrating the materiality of the information requested is on the moving party. *Stanford v. Parker*, 266 F.3d 442 (6th Cir. 2001), *citing Murphy v. Johnson,* 205 F. 3rd 809, 813-15 (5th Cir. 2000). "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or require an evidentiary hearing.'" *Bowling v. Parker*, 344 F.3d 487 (6th Cir. 2003) *quoting Stanford v. Parker*, 266 F.3d 442,

460 (6th Cir. 2001).

In conducting the analysis that led to granting discovery in *Bracy v. Gramley, supra*, the Supreme Court provided at least part of the template which lower courts should follow in deciding discovery motions in habeas corpus cases. First of all, it identified the claims to which the sought discovery in that case related and specifically determined whether they were claims upon which habeas corpus relief could be granted at all. Federal habeas corpus is, of course, available only to correct wrongs of constitutional dimension. 28 U.S.C. §2254(a); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). In *Bracy* the claim was that the trial judge was biased in favor of other defendants who had bribed him and therefore had a motive to be harsh with those, like the petitioner, who had not. The Supreme Court distinguished this kind of claim of judicial disqualification from other non-constitutional claims which would not be cognizable in habeas corpus. This part of the *Bracy* analysis makes it clear that discovery should not be authorized on allegations in a habeas corpus petition which do not state a claim upon which habeas corpus relief can be granted.

Secondly, the Supreme Court identified circumstances which corroborated the Bracy's theory of relief and request for discovery:

> As just noted above, petitioner's attorney at trial was a former associate of Maloney's, App. 51, and Maloney [the corrupt trial judge] appointed him to defend this case in June 1981. The lawyer announced that he was ready for trial just a few weeks later. He did not request additional time to prepare penalty-phase evidence in this death penalty case even when the State announced at the outset that, if petitioner were convicted, it would introduce petitioner's then-pending Arizona murder charges as evidence in aggravation. Tr. of Oral Arg. 43. At oral argument before this Court, counsel for petitioner suggested, given that at least one of Maloney's former law associates--Robert McGee--was corrupt and involved in bribery, see supra, at 8, that petitioner's trial lawyer might have been appointed

> with the understanding that he would not object to, or interfere with, a prompt trial, so that petitioner's case could be tried before, and camouflage the bribe negotiations in, the Chow murder case. Tr. of Oral Arg. 17-18, 43-44. [FN11] This is, of course, only a theory at this point; it is not supported by any solid evidence of petitioner's trial lawyer's participation in any such plan. It is true, however, that McGee was corrupt and that petitioner's trial coincided with bribe negotiations in the Chow case and closely followed the Rosario murder case, which was also fixed.

520 U.S. 907-908.

> We emphasize, though, that petitioner supports his discovery request by pointing not only to Maloney's conviction for bribe taking in other cases, but also to additional evidence, discussed above, that lends support to his claim that Maloney was actually biased in petitioner's own case. That is, he presents "specific allegations" that his trial attorney, a former associate of Maloney's in a law practice that was familiar and comfortable with corruption, may have agreed to take this capital case to trial quickly so that petitioner's conviction would deflect any suspicion the rigged Rosario and Chow cases might attract.

*Id*. at 909. The quoted "specific allegations" language is from *Harris v. Nelson, supra,* and demonstrates that the Supreme Court in both cases was adverting not to the **claim** language in the habeas petition, but to specific **evidence** obtained outside the discovery process and presented in support of a motion for discovery, which corroborates the claimed constitutional violation.

Other parts of habeas corpus procedural jurisprudence, although not relevant to the particular decisions in *Harris* and *Bracy*, also should inform the district court's exercise of its discretion in granting discovery under Habeas Rule 6.

> The purpose of discovery in any case is ultimately to gather evidence which will be put before the court in deciding the case on the merits. In order to obtain an evidentiary hearing in federal court on a claim on which he has not fully developed the factual basis in state court, a habeas corpus petitioner must show cause and prejudice under *Wainwright v. Sykes*, 433 U.S. 72 (1977). *Keeney v. Tamayo-Reyes*,

> 504 U.S. 1 (1992).  Logically, there is no good reason to gather evidence which one will not be permitted to present because one cannot satisfy the *Keeney* standard.  Therefore, if there are items of evidence sought in discovery which could have been obtained and presented during the state court process but were not, a petitioner should make the required *Keeney* showing before being authorized to conduct discovery to obtain the evidence.

*Turner v. Hudson*, Case No. 2:07-cv-595 (Decision and Order Granting in Part and Denying in Part Petitioner's Motion for Discovery, July 11, 2008).  This Magistrate Judge has applied this reasoning to discovery in habeas corpus cases for at least ten years, including the following capital cases: *Campbell v. Bradshaw*, 2005 U.S. Dist. LEXIS 13225(S.D. Ohio, July 1, 2005); *LaMar v. Ishee*, Case No. 1:01-cv-541 (Order, June 30, 2005); *Taylor v. Bradshaw*, Case No. 3:04-cv-154 (Order, Dec. 29, 2004); *Hasan v. Ishee,* Case No. 1:03-cv-288 (Decision and Order, Oct. 16, 2004); *Hanna v. Ishee*, Case No. 1:03-cv-801 (Decision, Sept. 24, 2004); *Issa v. Bradshaw,* Case No. 1:03-cv-280 (Decision, Sept, 4, 2004); *Moore v. Mitchell*, Case No. C-1-00-023 (Decision, Feb. 18, 2004); *Jones v. Bagley*, Case No. C-1-01-564 (Decision, June 22, 2002); *Henness v. Bagley*, Case No. C-2-01-043 (Decision, Feb. 18, 2002); *Fears v. Bagley*, Case No. C-1-01-0183 (Decision, Feb. 18, 2002); *Keene v. Mitchell*, Case No. C-1-00-421 (Decision, Apr. 17, 2001); *Raglin v. Mitchell,* Case No. MC-1-00-015 (Decision, Apr. 9, 2001); *Wogenstahl v. Mitchell*, Case No. C-1-99-843 (Decision, Jan. 15, 2001); *Gapen v. Bobby*, 2010 U.S. Dist. LEXIS 137976 (S.D. Ohio Dec. 23, 2010); and *Gapen v. Bobby*, 2011 U.S. Dist. LEXIS 6266 (S.D. Ohio, Jan. 24, 2011).

**Analysis**

**Proposed Deposition of Deputy Sheriff Kight**

McKnight proposes to take the deposition of Vinton County Deputy Sheriff Matthew Kight in support of his claim that evidence used against him at trial was unconstitutionally seized from him. He asserts that the search warrant authorizing the search of his property and trailer was based on an affidavit that contained false information which was made knowingly and intentionally or with reckless disregard for the truth.

The affidavit in question was signed by Corporal Charles Boyer on December 9, 2000, and McKnight contends his later testimony contradicts the search warrant. To prove this in the state courts, he presented an affidavit from Deputy Kight as an attachment to his petition for post-conviction relief, but discovery and an evidentiary hearing were denied in that proceeding.

The Warden notes that litigation of Fourth Amendment claims in habeas corpus is limited by *Stone v. Powell,* 428 U.S. 465 (1976), and that McKnight made no claims in the state courts relating to the Fifth, Sixth, or Eighth Amendments or to the Fourteenth except insofar as it incorporates the Fourth. The Warden asserts that McKnight had a full and fair opportunity to litigate this claim in the state courts and therefore cannot be heard on the merits of his Fourth Amendment claim in this Court.

Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell,* 428 U.S. 465 (1976). *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of claim was

frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of procedural rule prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526. McKnight does not dispute that the Ohio mechanism for adjudicating Fourth Amendment claims is adequate in the abstract; rather, he asserts it was not applied so as to allow him a full and fair opportunity to litigate this claim.

In his initial Motion to Suppress filed September 13, 2001, McKnight argued that there was not probable cause to support issuance of a search warrant, that the requesting officer did not have probable cause to believe a crime had been committed within the residence, and that the warrant was overbroad (Motion, Apx. to Return of Writ, Vol. 1, p. 216.) At the hearing on that Motion, Mr. Carson noted that Corporal Boyer's testimony raised concerns under *Franks v. Delaware*, 438 U.S. 154 (1978), and indicated his intention to file a supplemental motion on that basis which he did on December 5, 2001.

The Supplemental Motion to Suppress, came on for hearing on March 26, 2002. Mr. Carson,

Petitioner's counsel, said "there were some misstatements or misrepresentations of fact regarding contact with Knox County law enforcement officers and that there was not sufficient evidence to make some of the statements even on a probable cause basis that are included in the affidavit in support of the search warrant." (Trial Tr. Vol. 1, p. 132.) He planned to call two witnesses, Dispatcher Gerben (characterized as the Vinton County dispatcher on duty on December 9, 2000, when contact was made with Knox County) and Detective Brenneman (the Knox County detective characterized as the lead investigator on the disappearance of Emily Murray). *Id.* The prosecutor represented that he understood the allegations to be (1) that Boyer lied when he used the word "I" with respect to obtaining verification from Knox County when the truth was that it had been Boyer, Kight, and the dispatcher who had obtained the verification and (2) when Boyer revised the violation section of the application. *Id*. at 133-134. Judge Simmons confirms Defendant's position that Boyer's testimony at the prior hearing conflicted with affidavit. *Id.* at 134. Mr. Carson clarified that the Franks test doesn't require a showing that Boyer lied, it would be sufficient to show reckless disregard of the truth.

>Based on this position taken by McKnight's counsel, Judge Simmons found that Boyer
>
>> [T]estified [at the September 13, 2001, hearing] that he obtained that information through both the dispatcher ... and through Deputy Kight. I think fairly read that is what the transcript of the prior hearing indicates and therefore its [sic] the Courts [sic] belief that fairly read and taken in total he did have the information personally even if he didn't make the call to Knox County himself personally and that he had that information its [sic] clear from the transcript prior to requesting the search warrant.

*Id.* at 136. Judge Simmons confirmed this oral ruling with an entry incorporating the ruling on August 23, 2002. (Return of Writ, Apx. Vol. 5 at 35.)

Defense counsel did not intend to call Deputy Kight at the second suppression hearing. So

-9-

far as this Court is aware, the first time any attorney on behalf of McKnight sought to present evidence from Deputy Kight was when his affidavit was filed in support of the petition for post-conviction relief. The Affidavit avers in material part that Kight and Boyer returned to the McKnight trailer after Kight had first been to the trailer to serve a subpoena,[1] found no one home, but ran the plate from the car he found through LEADS and discovered it "came back" to Emily Murray. (Return of Writ, Apx. Vol. 11, pp. 210-211.) At ¶¶ 8 Kight avers that he and his brother, a special deputy, remained at the McKnight trailer while Boyer went to get the search warrant. Paragraph 9 reads "Cpl. Boyer did not participate in the events detailed in the search warrant affidavit that he signed." He notes that he was subpoenaed by the State to testify at both suppression hearings but was never called. *Id.* at ¶ 18.

The instant Motion is only one for discovery, not to determine the merits of Petitioner's Fourth Amendment claim or the merits of the Warden's *Stone v. Powell* defense to that claim. It is appropriate at this stage, however, to rule that, to the extent Petitioner's response to the *Stone v. Powell* defense is that he was deprived of the opportunity to present Deputy Kight in support of his *Franks v. Delaware* argument, his position is not well taken. McKnight's counsel never proposed to put Kight on the stand to contradict Boyer, even though he was present at both hearings. Deputy Kight was present and not called to testify or proposed to be called. Nothing the State did, either through the prosecutor or through Judge Simmons, prevented his being called to testify. Thus to the extent he claims that a full and fair opportunity to litigate his Fourth Amendment claim would have included the opportunity to call Kight to contradict Boyer, he had that opportunity and did not exercise it. Having waived that opportunity, he cannot now litigate his Fourth Amendment claim

---

[1]This document is referred to at other places in the record as a grand jury indictment.

by presenting testimony from Deputy Kight which could have been offered on the motions to suppress.

The request to depose Deputy Kight is denied.

### Proposed Depositions of Appellate Counsel Wilhelm, Schneider, and Lowe

McKnight proposes to depose his appellate counsel on his Thirty-third Ground for Relief, ineffective assistance of appellate counsel.

The Warden opposes this request on three bases. First, the Warden claims McKnight has not shown these counsel were uncooperative or why the records would not suffice to decide this claim. So far as this Court is aware, the Ohio appellate courts do not allow evidentiary development on collateral proceedings to show ineffective assistance of appellate counsel. Second, the Warden claims the underlying claims (the omitted propositions of law) are meritless. This Court declines to decide that question in the absence of a developed record.

Petitioner may therefore depose his appellate counsel, attorneys Willhelm, Schneider, and Lowe.

### Proposed Depositions of the Jurors and Alternates

McKnight proposes to depose the trial jurors and alternates in support of his Second, Third, Fourteenth, and Thirty-Second Claims.

The Second Claim for Relief essentially posits that the pretrial publicity was so pervasive

that it infected the verdict, despite the voir dire process. The Third Claim for Relief essentially posits that the racial bias in Vinton County was so pervasive that it also infected the verdict. The Thirty-Second Claim for Relief is even more direct than Claims Two and Three in seeking to show what occurred in the jury deliberations. Any testimony from the jurors on how pretrial publicity, racial bias, or failure to properly understand and follow the instructions would be inadmissible under Fed. R. Evid. 606(b) which provides:

> **(b) Inquiry into validity of verdict or indictment**. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

The *aliunde* rule embodied in Fed. R. Evid. 606(b) "is designed to protect the finality of verdicts and to ensure that jurors are insulated from harassment by defeated parties." *Doan v. Brigano*, 237 F.3d 722, 730 (6th Cir. 2001), *quoting State v. Schiebel*, 55 Ohio St. 3d 71, 564 N.E. 2d 54, 61 (1990). The corresponding Federal Rule of Evidence likewise strives to preserve the finality of jury decisions and protect jurors from harassment:

> Let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed * * * in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to

> make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.

*McDonald v. Pless*, 238 U.S. 264, 267-268 (1915). In declining to allow depositions of the jurors on the Second, Third, and Thirty-Second Claims for Relief, the Magistrate Judge intends to enforce the policies behind Fed. R. Evid. 606(b), believing that those policies are properly considered when determining whether there is good cause for discovery under Habeas Rule 6.

The request to depose all jurors and alternates on whether one juror was sleeping during the trial does not offend the *aliunde* rule. However, the Petitioner has not shown good cause to conduct the depositions on that basis either. Given the layout of most courtrooms, practically everyone else in the courtroom is in a better position to observe the demeanor of a particular juror than are his or her co-jurors and alternates. To choose for discovery the potential witnesses least likely to have observed the conduct complained of displays a disregard for the assiduous protection of jurors in which most courts engage. For example, this Court has long had a policy prohibiting trial counsel from interviewing jurors after verdict to prevent their being harassed. S. D. Ohio Civ. R. 47.1.

Petitioner has chosen for deposition on this Fourteenth Claim the possible witnesses least likely to have useful information and those whom the Court is most solicitous to protect from unnecessary intrusion. Under Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii), the Court is required to limit discovery if the information can be obtained "from some other source that is more convenient, less burdensome, or less expensive" or where the burden of the discovery outweighs its likely benefit. Therefore Petitioner has not established good cause to depose the jurors and alternates on the Fourteenth Claim for Relief.

**Proposed Records Depositions**

In support of this Thirty-Fifth Claim for Relief that the Ohio death penalty system provides inadequate appellate and proportionality review, Petitioner seeks to obtain all Vinton County Prosecutor homicide files from the date Ohio's current death penalty statute was adopted to date.

In support of an almost identical claim in another capital habeas case, *Gapen v. Bobby*, Case No. 3:08-cv-280, the Petitioner, represented by the same office which represents Petitioner in this case, sought to obtain evidence by records deposition of the Clerk of the Ohio Supreme Court who collects data pursuant to Ohio Revised Code § 2929.021 on proportionality matters. The Maigstrate Judge rejected the request in that case because the Sixth Circuit has repeatedly rejected the notion that the Constitution requires proportionality review of the sort for which Gapen contended and McKnight contends. *See Gapen v. Bobby,* 2011 U.S. Dist. LEXIS 6266 *21 (S.D. Ohio Jan. 24, 2011); *Beuke v. Houk,* 537 F.3d 618 (6th Cir. 2008); *Getsy v. Mitchell*, 495 F.3d 295 (6th Cir. 2007)(*en banc*); *Byrd v. Collins,* 209 F.3d 486 (6th Cir. 2000); *Williams v. Bagley*, 380 F.3d 932 (6th Cir. 2004), *citing Smith v. Mitchell*, 348 F.3d 177, 214 (6th Cir. 2003); *Wickline v. Mitchell,* 319 F.3d 813, 824 (6th Cir. 2003); *Cooey v. Coyle*, 289 F.3d 882, 928 (6th Cir. 2002); *Buell v. Mitchell*, 274 F.3d 337, 368-69 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417, 453 (6th Cir. 2001); *Greer v. Mitchell*, 264 F.3d 663, 691 (6th Cir. 2001). The request for records from the Vinton County Prosecutor is rejected on the same basis.

In addition, the breadth of the request is extraordinary and offends the customary rule against fishing expeditions in discovery. Finally, on its face the request seeks to obtain documents in complete disregard of the protection for attorney work product.

**Conclusion**

Accordingly, Petitioner's Motion is granted in part (i.e., as to his appellate attorneys) and otherwise denied. The discovery permitted herein shall be completed by April 15, 2011.

February 2, 2011.

s/ **Michael R. Merz**<br>United States Magistrate Judge