# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GREGORY McKNIGHT

                    :

        Petitioner,                  Case No. 2:09-cv-059

                    :        Chief Judge Susan J. Dlott

    -vs-                  Magistrate Judge Michael R. Merz

DAVID BOBBY, Warden,

                    :

        Respondent.

---

# SUPPLEMENTAL OPINION

---

### Status of the Case

This capital habeas corpus case is presently pending before Chief Judge Dlott on Petitioner's Objections (Doc. No. 69) to the Magistrate Judge's Decision and Order denying an evidentiary hearing (Doc. No. 64). It is also pending before Judge Dlott on the Warden's Objections (Doc. Nos. 71, 86) to the Magistrate Judge's Decision and Order (Doc. No. 68) allowing an amendment of the Petition to add claims related to Ohio's lethal injection protocol.

The Magistrate Judge denied Petitioner's Renewed Motion for Evidentiary Hearing without prejudice to its renewal with respect to Grounds for Relief Twenty-Seven (ineffective assistance of trial counsel) and Thirty-Three (ineffective assistance of appellate counsel). In any

1

renewed motion, McKnight was to address whether the state court decisions on those Grounds for

Relief were entitled to deference under 28 U.S.C. § 2254(d)(1) or (2).   McKnight has done so,

adding analysis under the Supreme Court's recent decision in *Martinez v. Ryan*, 566 U.S. ___, 132

S. Ct. 1309, 182 L. Ed. 2d 272 (2012)(Doc. No. 77).   The Warden has responded (Doc. No. 81)

and McKnight has filed a Reply (Doc. No. 85).

### Ground Twenty-Seven:   Ineffective Assistance of Trial Counsel

In his Twenty-Seventh Ground for Relief, McKnight claims his trial attorneys provided

ineffective assistance of counsel in that they failed to "conduct a reasonable investigation into the

background and mental health history of the client" and therefore failed "to introduce readily

available and compelling mitigating evidence . . ."   (Petition, Doc. No. 9, ¶ 517, PageID 229).

One of the omitted themes was McKnight's abandonment as a child by his father.   *Id.* at ¶ 524,

PageID 231.   Trial counsel testified in the state post-conviction proceeding that evidence related

to McKnight's childhood before the age of fifteen was not offered because the trial judge indicated

that would lead to admission of McKnight's juvenile adjudication for murder.   *Id.* at ¶ 526,

PageID 232.   McKnight pleads that further development of those facts would have led to valuable

mitigating evidence under *Skipper v. South Carolina*, 476 U.S. 1 (1986).   *Id.*

McKnight also pleads that his counsel were ineffective for failure to introduce, by way of a

cultural expert, evidence of his cultural background (his parents are from Trinidad and Guyana)

and how a person of that background would assimilate into American culture.   *Id.* at ¶¶ 531-532,

PageID 233-234.

McKnight's claims of ineffective assistance of trial counsel in these two respects, paternal abandonment and failure to present a cultural expert, were presented in his Petition for Post Conviction Relief as claims nine and fifteen.   The Ohio Court of Appeals affirmed denial of the claim nine relating to paternal abandonment as follows:

> In his ninth claim for relief, McKnight contends that trial counsel rendered ineffective assistance of counsel by failing "to present available, relevant, and compelling mitigating evidence to the jury." He claims that trial counsel failed to investigate, prepare, and present mitigating evidence regarding his character, history, and background, and in particular, his father's abandonment. McKnight alleges that the evidence would have humanized him and provided the jurors with reasons to spare his life. To support this claim, McKnight relies upon affidavits from his mother, his maternal aunt, and a family friend in which they asserted that McKnight's feelings of paternal abandonment and the lack of a father-figure in his life were dominant themes in his life. He also refers to lead defense counsel's deposition in which he stated that he did not consider parental abandonment as a mitigating factor.
>
> The state contends that trial counsel investigated McKnight's background and decided not to present the evidence. The state points to a discussion held on the record where lead defense counsel related his thought that calling certain mitigation witnesses would open the door to McKnight's prior juvenile murder conviction. The state thus asserts that counsel was not deficient but instead made a strategic decision. The state further argues that McKnight did not suffer prejudice.
>
> "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith* (2003), 539 U.S. 510, 521, *citing Strickland v. Washington* (1984), 466 U.S. 668, 687; *see, also, State v. Bradley* (1989),42 Ohio St.3d 136.
>
> "To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins* at 521, *quoting Strickland* at 688. The Supreme Court of the United States has refrained from "articulat[ing] specific guidelines for appropriate attorney conduct

3

and instead has emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id., quoting Strickland* at 688. Thus, debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *See, e.g., State v. Clayton* (1980), 62 Ohio St.2d 45, 49, *certiorari denied* (1980), 449 U.S. 879.

Moreover, when addressing an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of action. *See State v. Phillips* (1995), 74 Ohio St.3d 72, 85, (stating that a reviewing court must assess the reasonableness of the defense counsel's decisions at the time they are made). Rather, the reviewing court "must be highly deferential" *Strickland* at 689. As the *Strickland* court stated, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

In evaluating whether claimed deficient performance prejudiced the defense, the relevant inquiry is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Thus, "(the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; see, also, *Bradley* at paragraph three of the syllabus ("To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different". In the specific context of a capital case, to demonstrate prejudice, a petitioner must show that "there is a reasonable probability that the evidence would have swayed the jury to impose life sentence." *State v. Keith* (1997), 79 Ohio St.3d 514, 536; see, also, *Strickland* at 695 (stating "[w]hen a defendant challenges a death sentence * * * the question is whether there is a reasonable probability that, absent the errors, the sentencer-including an appellate court, to the extent it independently reweighs the evidence-would have concluded that

4

the balance of aggravating and mitigating circumstances did not warrant death").

"'The decision to forgo the presentation of additional mitigating evidence does not itself constitute proof of ineffective assistance of counsel.' *Keith* at 536. "'Attorneys need not pursue every conceivable avenue; they are entitled to be selective.'" *State v. Murphy* (2001),91 Ohio St.3d (516,) 542*, quoting United States v. Davenport* (CA7, 1993), 986 F.2d 1047, 1049." *State v. Davis,* 116 Ohio St.3d 404, 2008-Ohio-2. Furthermore, "(t)he presentation of mitigating evidence is a matter of trial strategy. *Keith* at 530. Moreover, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *State v. Bryan*, 101 Ohio St.3d 272, 2004-0hio-971, at 1)189, *quoting Wiggins* at 521, quoting *Strickland* at 690-691.

In *State v. Mundt,* 115 Ohio St.3d 22, 2007-0hio-4836, the court discussed a capital defendant's claim that trial counsel rendered ineffective assistance of counsel by failing to present certain mitigation evidence. The court stated:

> "In general, 'counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.' *State v. Treesh* (2001),90 Ohio St.3d 460, 490.   See also *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221; *State v. Williams*, 99 Ohio St.d 493, 2003-Ohio-4396. 'It may be that often the best strategy in a capital case is to attempt to humanize the defendant by presenting evidence of his personal qualities. We are unable to hold, however, that any other strategy would be so unreasonable as to constitute ineffective assistance of counsel.' *Stanley v. Zant* (CA 11, 1983),697 F.2d 955.   Moreover, in evaluating the performance of counsel, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'

5

> *Strickland*, 466 U.S. at 690-691,104 S.Ct 2052, 80
> L.Ed.2d 674."

In *Mundt*, the court rejected the defendant's argument that defense counsel rendered ineffective assistance of counsel during the mitigation phase by choosing not to present evidence regarding the defendant's low intelligence. The court noted that counsel's decision did not result from any lack of investigation and, more importantly, that the defendant failed "to demonstrate prejudice, i.e., a reasonable likelihood that the outcome of the case would have been otherwise but for the allegedly ineffective assistance." *Id*. at ¶ 159. The court explained:

> "[The defendant's] contention that being depicted as
> a struggling special education student would have
> humanized him is rank speculation. [His] claim that
> the jury would have found this evidence compelling
> is equally speculative."

*ld*.

Similarly, here, McKnight's argument that evidence regarding his paternal abandonment would have humanized him and caused the jury to vote for a life sentence is "rank speculation." *Id*. Additionally, courts have upheld death sentences in spite of mitigation evidence that a defendant had a troubled childhood. *See, e.g., State v. LaMar,* 95 Ohio St. 3d 181, 2002-Ohio-2128, at ¶ 195, ("As for the evidence relating to LaMar's background, we acknowledge that it is entitled to some weight We accord it only modest weight, however, just as we have done in other capital cases of defendants with similarly troubled backgrounds") (citations omitted); *State v. Coley* (2001),93 Ohio St. 3d 253, 273 ("Once again, as we have been in a number of death penalty cases, we are presented with a record that contains evidence of unrelenting, shocking abuse of a child by adults, including a parent. However, after weighing the aggravating circumstances against the mitigating evidence, we find that the aggravating circumstances of murder in the course of robbery and kidnapping outweigh the mitigation evidence of Coley's young age and deprived childhood"); *State v. Hoffner* (Mar. 23, 2001), Lucas App. No. L-95-181 (upholding death sentence in spite of mitigating evidence of troubled childhood).

6

Furthermore, counsel made a tactical decision not to present this mitigation evidence for fear that it would open the door to evidence regarding McKnight's prior juvenile murder adjudication. In *State v. Clark* (1988),38 Ohio St.3d 252, 255, the court held that "when a defendant raises the issue of history, character and background during the mitigation phase of a capital trial, he opens the door 'to all relevant evidence.'" *See, also, State v. Jackson* (Oct. 5, 1989), Cuyahoga App. No. 55758; Evid.R 405(B). In *Clark*, the defendant offered evidence to show he was a "quiet, religious man and good father" with a potential for rehabilitation. The court held that the defendant's prior criminal record was admissible to rebut this evidence. Additionally, the court noted that Evid.R. 405(B) provides that once the defendant introduces character evidence, his character witness is subject to cross-examination about relevant specific instances of conduct.

Here, had counsel chosen to present evidence regarding McKnight's background as a child, particularly his feelings of paternal abandonment, counsel would have opened the door to evidence regarding his prior juvenile murder adjudication, as the trial court properly warned. Thus, as the record clearly indicates, McKnight's trial counsel's decision not to present mitigating evidence regarding childhood issues of paternal abandonment and the lack of a father figure was a strategic decision to avoid possibly opening the door to his prior juvenile murder adjudication. After McKnight finished presenting mitigation evidence, the state requested the court to place on the record defense counsel's decision not to present additional mitigation evidence. The following conversation occurred:

> Mr. Gleeson: * * * I'm aware that (defense counsel) have had the opportunity and the benefit of mitigation specialists, of an investigator, of moneys for psychological assessment.
>
> In fact, they had wanted to have the right person, whether it's a specialist, go to New York, go to Texas, to do the things that they should be doing in mitigation, and I'm glad for it. But I'd like the record to be clear as to the fact that these other people whose information has not been presented today, is a tactical decision that, quite frankly, I might make myself, because I know where he's coming from.

And I don't know if he wants to put it on the record, but I want to make sure it is put on the record that it is a knowing, intelligent strategic decision that nothing more will be presented at this point in time, particularly from an expert point of view, things like that.

The Court: Thank you, Mr. Gleeson. Mr. Carson, do you care to give a response or follow-up, please?

Mr. Carson: We've done our best to prepare a defense for Greg and evaluate everything that's available. Ultimately, the trip wasn't taken to New York or Texas either one only because of scheduling and interviews were done by phone, but nonetheless, they were done, and so the information was available to us and was factored into the decision to prepare and present the mitigation presentation we've given today.

Mr. Canepa: One of the reasons why we raise this now is because in the event there is a sentence of death, you know, we have in our audience here Carol Wright, who is assisting today and she's one of the attorneys who would be the first in line to raise the issue of ineffective assistance in mitigation for failing to present experts and more family members and so forth, and that claim is easily dealt with where it's clear on the record and there's averments made that all of that stuff was considered and discussed with the client and that for tactical reasons, it wasn't presented, and for the record, you know, the State is very aware of the limitations because of the prior homicide as a juvenile, and that seriously limits their ability to present things, and we fully understand that in the trial trenches, but sometimes that gets deluded and obscured as it moves up the appellate process, so we want to make it-in an abundance of caution, make it abundantly clear that these trial lawyers are good, they did everything they could do and considered everything they had and made every effort to

8

investigate and that was discussed with their client, because we find ourselves in the   unsavory position of having to defend the trial lawyers actions later on appeal, and it makes our jobs a whole heck of a lot more difficult where this kind of a record is not made at this level.

The Court: All right, thank you, Mr. Canepa.

Mr. Carson: * * * *  You know, I don't feel it's appropriate for us to go through line by line what we talked about with our client or what options were considered, rejected, considered, adopted, adopted or considered and left hanging, whatever the possible scenarios there are.

Yes, I recognize the basis of the invitation. I made my representation to the Court that, you know, Mr. Toy, Mr. Miller and I have done everything we can to prepare for this. We are severely constrained, handcuffed, by the juvenile adjudication.

One of Greg's cousins was able to make it here from New York. She's present. I am not calling her merely because of the way the Court has ruled so far on certain matters, that to introduce the evidence that she would have is going to be, I am confident, ruled to open the door to all kinds of things.   So for that reason, she is not being called as a witness.

Therefore, based on this record, we find that trial counsel made a strategic decision after full and fair consideration and investigation. As such, trial counsel's performance was not deficient. Consequently, trial counsel was not ineffective.

Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's ninth claim for relief.

*State v. McKnight*, No. 07CA665, 2008-Ohio-2435, ¶¶66-79, 2008 Ohio App. LEXIS 2076, 2008

WL 2124076 (Ohio App. 4th Dist. May 19, 2008).

On claim fifteen, failure to present a cultural expert, the court of appeals held:

9

In his fifteenth claim for relief, McKnight contends that trial counsel rendered ineffective assistance of counsel by failing to reasonably investigate and present mitigating evidence during the penalty phase. In particular, he alleges that defense counsel should have employed a cultural expert to explain the distinctions between an African American and a Caribbean American. McKnight maintains that the American Bar Association guidelines "instruct defense counsel to investigate the client's 'cultural' influences for mitigation" and that the Supreme Court of the United States has affirmed the ABA guidelines "as the standard for determining what is reasonable when evaluating counsel's performance in a capital case."

McKnight claims that a cultural expert "would have been helpful in bridging the communications gap that existed between counsel and McKnight and his family." He further claims that the lack of a cultural expert deprived him of individualized sentencing and that a cultural expert would have humanized him. Specifically, McKnight claims that the following summary derived from the cultural expert's report would have humanized him and helped sway the jury to vote for a life sentence, as opposed to a death sentence:

> "As Dr. Lewis's report indicates, McKnight was tormented with his identity. He was raised in the United States by an immigrant mother. McKnight's mother Lewin was raised in Trinidad. His father, who was absent from his life, was from Guyana. The history of the Caribbean is complex. Additionally, McKnight was raised within the strict Seventh Day Adventist religion. As a child and young teenager, he was deprived of activities that youth in the United States traditionally experience. He was an outsider who struggled to fit in. When McKnight resided in Texas with his godparents (who were from Trinidad), he suffered strict discipline—including humiliating beatings at the hands of his godfather, sometimes while McKnight was naked in the shower.

Dr. Lewis also found that McKnight was haunted by feelings of abandonment. Not only had his father left him when he was just an infant, McKnight's mother had sent him to Texas to live with the Chandlers (his godparents) when he was only three years old. Lewin promised McKnight that she would bring him back to New York to live with her when he turned five, but when she visited on his fifth birthday, the Chandlers convinced Lewin to leave McKnight with them. McKnight told his mother that she had lied to him; he expressed his feeling that neither she nor anyone else liked him, and that he believed she loved his brother more.

McKnight also often expressed feelings that he was the reason his father had left. He believed he was not lovable and that his father was ashamed of him. These feelings—according to his wife, his mother, his cousin, and his aunt—made him a person who searched for his sense of self in others. This, in turn, made McKnight vulnerable to others who were able to easily manipulate him because he wanted to fit in and gain the affection and approval of others."

The state disagrees with McKnight that the ABA standards set forth the benchmark for judging the reasonableness of counsel's performance in a capital case, but asserts that in any event, "McKnight failed to meaningfully address and meet his burden of showing prejudice." The state argues, "In fact, if trial counsel attempted to present evidence on McKnight's childhood, as his post-conviction attorneys in hindsight argue they should have, the State may have countered with McKnight's delinquent conduct (murder) committed as a teenager. That seems to be something a capital defendant's trial counsel would avoid if at all possible."

In *Wiggins, supra*, the court considered an argument similar to the one McKnight raises, i.e., that trial counsel performed deficiently by limiting their investigation of potential mitigation evidence. The court noted that in *Strickland*, it "defined the deference owed such strategic judgments in terms of the adequacy of the investigations supporting those judgments: '[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on

11

investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.' " *Wiggins* at 521–522, quoting *Strickland* at 690–691.

Thus, in a capital case when a defendant challenges defense counsel's investigation of potential mitigating evidence, the focus is "on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background was itself reasonable." *Wiggins* at 523. "In assessing counsel's investigation, we must conduct an objective review of their performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.' ('[E]very effort [must] be made to eliminate the distorting effects of hindsight')." (Cites omitted.) Id.

Here, defense counsel made a tactical decision not to present further mitigation evidence. Even assuming that in hindsight, introducing cultural mitigation evidence would have been an appropriate theory, we may not evaluate counsel's decision in hindsight. Instead, we must consider counsel's decision at the time it was made and accord counsel's decision deference. At the time counsel made the decision, they reasonably believed that presenting further mitigation evidence would open the door to McKnight's prior juvenile murder adjudication. And counsel appears to have been correct in this regard. In his postconviction deposition, Attorney Carson stated that the judge warned defense counsel that if they brought up anything that predated McKnight's detention as a juvenile, then they would open the door to his prior juvenile adjudication for murder, which the defense obviously wanted to avoid. Therefore, McKnight cannot overcome the strong presumption that counsel made a reasonable strategic decision. Consequently, we do not find counsel's decision to decline to present further mitigation evidence deficient. See *Darden v. Wainwright* (1986), 477 U.S. 168, 186, 106 S.Ct. 2464, 91 L.Ed.2d 144 (concluding that counsel engaged in extensive preparation and that the decision to present a mitigation case would have resulted in the jury hearing evidence that petitioner had been convicted of violent crimes and spent much of his life in jail).

12

Additionally, McKnight merely speculates that evidence of his cultural background would have humanized him to the jury and led to a life sentence. As we indicated before, speculation is not sufficient to demonstrate prejudice.

Furthermore, other Ohio appellate courts have rejected claims that failure to use cultural mitigation evidence constitutes ineffective assistance of counsel. *See State v. Issa* (Dec. 21, 2001), Hamilton App. No. C–000793 ("A postconviction claim does not show ineffective assistance of counsel merely because it presents a new expert opinion that is different from the theory used at trial. This claim involved nothing more than an alternative mitigation theory and did not provide substantive grounds for postconviction relief"); *State v. Murphy* (Dec. 26, 2000), Franklin App. No. 00AP–233 ("Encouraging jurors to decide a defendant's sentence based on conclusions about groups of people, delineated by race or ethnicity, is [an] anathema to individualized sentencing. Sentencing in capital cases should be about the crime and the individual characteristics of the defendant. There is no room for group guilt or group mitigation").

McKnight nonetheless refers to *State v. Dixon* (Mar. 13, 1997), Cuyahoga App. No. 68338, to support his argument that counsel rendered ineffective assistance by failing to employ a cultural mitigation expert. That case, however, is distinguishable. In *Dixon*, the court did not consider the evidence regarding a cultural mitigation expert in the context of an ineffective assistance of counsel claim, but instead the court considered whether the trial court abused its discretion by prohibiting such evidence during the mitigation phase. The reviewing court determined that the trial court should have allowed the evidence to be heard. In contrast, here, the question is not whether the trial court abused its discretion by prohibiting the evidence, rather it is a question of whether defense counsel's decision not to pursue this mitigation theory constituted ineffective assistance of counsel. Because the two issues are not the same, we do not find *Dixon* persuasive.

Accordingly, we find that the trial court did not abuse its discretion by dismissing McKnight's fifteenth claim for relief and overrule McKnight's second assignment of error.

13

*Id.*, at ¶¶ 94-103.  The Ohio Supreme Court declined to accept jurisdiction over an appeal.  *State v. McKnight*, 119 Ohio St. 3d 1487 (2008).

Where there has been one reasoned state court judgment rejecting a federal claim, there is a rebuttable presumption that later unexplained orders upholding the judgment or rejecting the same claim rest on the same ground.  *Ylst v. Nunnemaker*, 501 U.S. 797 (1991).  The district court must look at the last state court disposition providing reasons for the decision. *Joseph v. Coyle,* 469 F.3d 441, 450 (6th Cir. 2006);*Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir.  1991).  A state court's noncommittal denial of review is not controlling. *McBee v.  Abramajyts*, 929 F.  2d 264, 267 (6th Cir.  1991).  Therefore it is the Vinton County Court of Appeals decision just quoted which must be the focus of this Court's analysis.


**Argument One:   State Appellate Decision Not "On the Merits."**


McKnight first argues that he is not precluded from an evidentiary hearing because the court of appeals' decision is not on the merits.  (Supplemental Memorandum, Doc. No. 77, PageID 2540-2541.)  He notes that Ohio courts of appeals are required to review common pleas court post-conviction decisions for abuse of discretion, rather than *de novo*, *Id.* at 2540, citing *State v. Gondor*, 112 Ohio St. 3d 377 (2006).   The court of appeals did indeed rely on *Gondor* for the appropriate standard of review.  *State v. McKnight*, 2008-Ohio-2435 ¶ 15, 2008 Ohio App. LEXIS 2076, 2008 WL 2124076 (Ohio App. 4th Dist. May 19, 2008).

McKnight then argues that "review for abuse of discretion is not likely to constitute a

14

decision 'on the merits' within the meaning of AEDPA." (Supplemental Memorandum, Doc. No. 77, PageID 2540, *citing Vasquez v. Bradshaw,* 345 Fed. Appx. 104, 111, n.1, 2009 U.S. App. LEXIS 19979 (6th Cir. 2009)). *Vasquez* is not a published opinion of the Sixth Circuit and therefore not binding precedent even on the issues it actually decided. More importantly, Judge Boggs made it clear the court was not deciding whether review for abuse of discretion constituted a decision on the merits.

Here the court of appeals examined the merits at length and gives no indication that the trial court opinion was arguably wrong but within the margin of error allowed by the abuse of discretion standard of review. It is not uncommon for appellate courts, even when they look closely at the merits of an appealed issue, to affirm on the basis of no abuse of discretion where that is the governing standard. The Magistrate Judge concludes the court of appeals' decision here was a decision on the merits within the meaning of 28 U.S.C. § 2254(d).

**Argument Two: McKnight Constitutionally Entitled to Evidentiary Hearing in the State Court**

McKnight next argues that he was entitled, under the United States Constitution, to an evidentiary hearing in the state trial court. (Supplemental Memorandum, Doc. No. 77, PageID 2541-2543, *citing Hawk v. Olson*, 326 U.S. 271, 278-279 (1945); *Palmer v. Ashe*, 342 U.S. 134, 135-38 (1951); *Com. of Pa. ex rel Herman v. Claudy*, 350 U.S. 116, 118-19, 123 (1956*); Uveges v. Pennsylvania,* 335 U.S. 437, 438-442 (1948); and *Rice v. Olson*, 324 U.S. 786, 791-92 (1945)).

All of these cases enforce the right to counsel at trial in felony cases in the period between *Powell v. Alabama*, 287 U.S. 45 (1932), and *Gideon v. Wainwright*, 372 U.S. 335 (1963), when the

15

Court was recognizing that right where there were "special circumstances."   In *Gideon*, of course, the right was expanded to all persons charged with felonies without proof of special circumstances. There is simply no holding in these or in any Supreme Court case decided in the fifty-six years since the last of them was handed down about the kind of evidentiary hearing which must be permitted by the states in a collateral attack on a criminal judgment.


**Argument Three:   Trial Court Error in Finding Strategic Choices Were Made by Attorneys**

**Argument Four:   Trial Court Error in Finding No Prejudice under *Strickland***


In his third argument, McKnight asserts the state trial court decision in post-conviction was contrary to or an unreasonable application of Supreme Court precedent when it conclusively presumed McKnight's trial attorneys were not ineffective because they based their actions on allegedly strategic decisions (Supplemental Memorandum, Doc. No. 77, PageID 2543-2545).

In his fourth argument, McKnight asserts the trial court erred in finding that there was no prejudice in failing to present the additional mitigating evidence.   *Id.* at PageID 2545-2548.

For the reasons stated above as to Argument One, the decision of the Fourth District Court of Appeals was the last reasoned judgment on the merits of McKnight's ineffective assistance of trial counsel claims, and the judgment this Court must review.

16

**Argument Five:   The Standard of Review Applied by the Ohio Court of Appeals Was Contrary to Clearly Established Federal Law.**

In his fifth argument, McKnight asserts the Fourth District Court of Appeals applied a standard of review -- abuse of discretion -- which was contrary to clearly established Supreme Court precedent.   (Supplemental Memorandum, Doc. No. 77, PageID 2549-2550, *citing Ornelas v. United States,* 517 U.S. 690 (1996); *Lilly v. Virginia,* 527 U.S. 116 (1999); and *United States v. Bajakajian*, 524 U.S. 321 (1998).   McKnight expressly asserts that the law is "[w]hen an appellate court reviews a lower court's disposition of a mixed question of federal law and fact, a *de novo* standard of review must be applied."   *Id.* at PageID 2549.

In *Ornelas*, the Supreme Court reversed the Seventh Circuit application of a clear error standard to review of district court findings on a motion to suppress.   The case in no way speaks to any constitutional mandate for state appellate courts to review trial court decisions.   Indeed, the Court did not find that *de novo* review was constitutionally required within the federal courts.   Rather, it imposed the *de novo* standard as a matter of policy.   517 U.S. at 699.

In *Lilly*, the plurality opinion states:

> Nothing in our prior opinions, however, suggests that appellate courts should defer to lower courts' determinations regarding whether a hearsay statement has particularized guarantees of trustworthiness. To the contrary, those opinions indicate that we have assumed, as with other fact-intensive, mixed questions of constitutional law, that "independent review is . . . necessary . . . to maintain control of, and to clarify, the legal principles" governing the factual circumstances necessary to satisfy the protections of the Bill of Rights. *Ornelas v. United States*, 517 U.S. 690, 697, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996) (holding that appellate courts should review reasonable suspicion and probable cause determinations *de novo*). We, of course, accept the Virginia courts'

17

> determination that Mark's statements were reliable for purposes of state hearsay law, and, as should any appellate court, we review the presence or absence of historical facts for clear error. But the surrounding circumstances relevant to a Sixth Amendment admissibility determination do not include the declarant's in-court demeanor (otherwise the declarant would be testifying) or any other factor uniquely suited to the province of trial courts. For these reasons, when deciding whether the admission of a declarant's out-of-court statements violates the Confrontation Clause, courts should independently review whether the government's proffered guarantees of trustworthiness satisfy the demands of the Clause.

527 U.S. at 136. Only four justices concurred in this portion of the opinion. Even if this had become a majority opinion, its holding would have been about the standard of review of "the government's proffered guarantees of trustworthiness of a declarant's out-of-court statements," not to establish a general constitutional requirement for state appellate review of trial court decisions. The Court has not had occasion to develop this particular point further because *Lilly* has been superseded by *Crawford v. Washington,* 541 U.S. 36 (1994).

The relevant language in *Bajakajian* is in footnote 10

> At oral argument, respondent urged that a district court's determination of excessiveness should be reviewed by an appellate court for abuse of discretion. See Tr. of Oral Arg. 32. We cannot accept this submission. The factual findings made by the district courts in conducting the excessiveness inquiry, of course, must be accepted unless clearly erroneous. See *Anderson v. Bessemer City*, 470 U.S. 564, 574-75, 84 L. Ed. 2d 518, 105 S. Ct. 1504 (1985). But the question of whether a fine is constitutionally excessive calls for the application of a constitutional standard to the facts of a particular case, and in this context *de novo* review of that question is appropriate. *See Ornelas v. United States,* 517 U.S. 690, 697, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996).

524 U.S. at 337. Like *Ornelas*, *Bajakajian* is a case within the federal courts and does not suggest that de novo review is constitutionally mandated even within the federal court hierarchy, much less

18

imposed upon the States.

In sum, McKnight has exhibited no holdings of the United States Supreme Court requiring that state appellate review of trial court post-conviction decisions must be *de novo*.

**Argument Six:   The Ohio Court of Appeals and Speculation About Prejudice under *Strickland*.**

The Fourth District Court of Appeals found that McKnight's claims that the paternal abandonment and cultural background evidence would have led to a life sentence was speculative and therefore not sufficient.   (See quotations *supra* at pages 6 and 13.)   McKnight asserts "[t]he United States Supreme Court squarely rejected that line of reasoning in *Sears v. Upton*, 130 S. Ct. 3259 (2010)."   (Supplemental Memorandum, Doc. No. 77, PageID 2550.)

The relevant passage in *Sears* is as follows:

> We certainly have never held that counsel's effort to present some mitigation evidence should foreclose an inquiry into whether a facially deficient mitigation investigation might have prejudiced the defendant. To the contrary, we have consistently explained that the Strickland inquiry requires precisely the type of probing and fact-specific analysis that the state trial court failed to undertake below. [Footnote omitted.]   In the *Williams* decision, for instance, we categorically rejected the type of truncated prejudice inquiry undertaken by the state court in this case. 529 U.S., at 397-398, 120 S. Ct. 1495, 146 L. Ed. 2d 389. And, in *Porter*, we recently explained:

>> To assess [the] probability [of a different outcome under Strickland], we consider the totality of the available mitigation evidence--both that adduced at trial, and the evidence adduced in the habeas proceeding--and reweig[h] it against the evidence in aggravation." 558 U.S., at ____, 130 S. Ct. 447, 454, 175 L. Ed. 2d 398 (internal quotation marks omitted; third alteration in original).

19

> That same standard applies--and will necessarily require a court to "speculate" as to the effect of the new evidence--regardless of how much or how little mitigation evidence was presented during the initial penalty phase. Indeed, it is exactly this kind of probing inquiry that Justice Scalia now undertakes, post, at ___ - ___, 177 L. Ed. 2d, at 1037-1039, and that the trial court failed to do. In all circumstances, this is the proper prejudice standard for evaluating a claim of ineffective representation in the context of a penalty phase mitigation investigation.

130 S. Ct. at 3266-3267, *quoting Porter v. McCollum*, 558 U.S. 30 (2005).  Thus the relevant holding of *Sears* is not that state courts must "speculate" as to whether the additional proffered mitigation evidence would have resulted in a different sentence.  Rather, any court engaged in prejudice analysis under *Strickland* must weigh "the totality of the available mitigation evidence" and decide if there is a reasonable probability that the additional evidence would have change the result.  Given the context, the Court did not hold that courts must speculate and if the results of the speculation are favorable to a petitioner, he must be given the benefit of the speculation.  Instead, the Court was recognizing that, inevitably, a court's reweighing of the mitigation evidence must project what the likely result would be without being able to present the evidence to a hypothetical jury and ask what effect it has.

Review of the court of appeals' decision shows it did not violate the holding in *Sears* by concluding that, because some mitigating evidence was presented, further inquiry into prejudice is precluded.  Rather, it carefully considered the proffered additional evidence of impact on McKnight of paternal abandonment and Caribbean American culture and found it was unlikely to

have resulted in a different sentence.

**Argument Seven:   Appellate Error in Affirming the Trial Court.**

McKnight asserts the appellate court acted contrary to or unreasonably applied clearly established Supreme Court law to the extent it adopted trial court reasoning.  The Magistrate Judge does not understand this argument to require analysis separate from that already given.

**Conclusion:**

Because the Fourth District Court of Appeals decided McKnight's ineffective assistance of trial counsel claims on the merits, he is not entitled to an evidentiary hearing on those claims under *Pinholster*.

**Ground Thirty-Three:   Ineffective Assistance of Appellate Counsel**

In his Thirty-Third Ground for Relief, McKnight asserts he received ineffective assistance of appellate counsel in that his appellate counsel failed to claim trial counsel were ineffective in that they:   (1) failed to challenge all (as opposed to some of) the false statements in the affidavit of probable cause supporting the search of his home which disclosed the bodies of the two people he was convicted of murdering, and (2) failed to seek a change of venue from Vinton County because of racial discrimination there.   (Petition, Doc. No. 9, ¶ 607, PageID 254, incorporating by reference the claims of ineffective assistance of trial counsel made in Ground Twenty-Five.)

McKnight raised these claims in the method provided by Ohio law for raising ineffective

assistance of appellate counsel claims in a capital case, to wit, by applying to the Ohio Supreme Court for reopening pursuant to Ohio Sup. Ct. Prac. R. XI, § 6[1].  The Application was filed February 27, 2006, and denied without opinion.   *State v. McKnight*, 109 Ohio St. 3d 1492 (2006).

McKnight contends that this decision by the Ohio Supreme Court is not a decision "on the merits" within the meaning of 28 U.S.C. § 2254(d) "[b]ecause McKnight was prevented by operation of state law from developing and presenting evidence in support of his claim of the denial of effective assistance of appellate counsel. . . ."   (Supplemental Memorandum, Doc. No. 77, PageID 2553.)

McKnight is not contending that the rule was applied improperly in this case.   Rather, he makes a facial attack, claiming that the Rule does not allow

> . . . any petitioner to supplement the record before the court with any information in the form of additional affidavits or depositions from appellate counsel that address any of the critical factors for a *Mapes* analysis.
>
> In essence, Rule 11.6 permits the Petitioner to make a legal argument about why he or she was deprived of the effective assistance of appellate counsel without any factual development - simply on the record that was before the court at the time of the appeal.

*Id.* at PageID 2555.

McKnight's counsel simply misread the rule.   Rule 11.6(B)(5) requires the filing with an application to reopen of "all supplemental affidavits upon which the applicant relies."   Rule 11.6(H) provides:   "If the Supreme Court determines that an evidentiary hearing is necessary, the

---

[1] At PageID 2554, McKnight refers to the rule in question by its current designation, Ohio S. Ct. Prac. R. 11.6.

evidentiary hearing may be conducted by the Supreme Court or referred to a master commissioner."

The premise of McKnight's argument is belied by the text of the rule which does permit introduction of evidence in support of a claim of ineffective assistance of appellate counsel. McKnight presents no other argument about why the Ohio Supreme Court denial of reopening is not a decision on the merits and it will therefore be accepted as such a decision by this Court. Therefore Petitioner is precluded from an evidentiary hearing on his ineffective assistance of appellate counsel claims by *Pinholster.*

### Impact of *Martinez v. Ryan*

In the concluding section of his Supplemental Memorandum, McKnight argues that he received ineffective assistance of post-conviction counsel and this should lead the Court to grant him discovery and an evidentiary hearing "so that he can more fully demonstrate that he has "cause" under *Martinez [v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012)], to excuse any failure to raise or develop bases for his federal constitutional claim that he was denied effective assistance of counsel at the penalty phase."   (Supplemental Memorandum, Doc. No. 77, PageID 2571.)

In *Coleman v. Thompson,* 501 U.S. 722 (1991), the Supreme Court had held that an attorney's ignorance or inadvertence in a postconviction proceeding did not qualify as cause to excuse a procedural default.   *Coleman* remained the law for twenty years and the District Court in

*Martinez* and the Ninth Circuit on appeal in that case applied *Coleman* to bar consideration of an ineffective assistance of trial counsel claim which had been procedurally defaulted by failure to raise the claim by the first attorney who could have raised it.   The Supreme Court reversed, holding:

> To protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel, it is necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default. This opinion qualifies *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.

132 S. Ct. at 1315.   The Court noted that Arizona "does not permit a convicted person alleging ineffective assistance of trial counsel to raise that claim on direct review.   Instead, the prisoner must bring the claim in state collateral proceedings." *Id*.   at 1313.   As the Court noted, citing *Massaro v. United States*, 538 U.S. 500 (2003), Arizona parallels the federal system in this regard: federal court claims of ineffective assistance of trial counsel cannot be raised on direct appeal even if they depend on the record; they must be raised by motion to vacate under 28 U. S.C. § 2255. Because a collateral petition was the only proceeding in which an ineffective assistance of trial counsel claim could be raised in Arizona, the Supreme Court thought it should be made more like the situation where a claim of ineffective assistance of trial counsel can be raised on direct appeal, where a defendant is constitutionally guaranteed the effective assistance of counsel so that a defective representation on direct appeal can provide excusing cause.   See discussion, *Martinez*, 132 S. Ct. at 1317.

The precise holding in *Martinez* is

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U. S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. *Cf. Miller-El v. Cockrell*, 537 U. S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).

*Id*. at 1318-1319.   The Court emphasized the narrowness of the new rule.   "*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial." *Id*.   at 1319.   "The rule of *Coleman* governs in all but the limited circumstances recognized here."   *Id*.   at 1320.

*Martinez* only applies to excuse a procedural default of an ineffective assistance of trial counsel claim.   In this case McKnight's claims of ineffective assistance of trial counsel were decided on the merits by the Fourth District Court of Appeals as set forth above.   That court in no way attempted to avoid deciding the claims on the merits by pointing to any procedural default in McKnight's presentation of the claims.   Thus there is no procedural default held against McKnight by the state courts to which *Martinez* would have any application.

25

McKnight makes a lengthy argument about the deficiencies in post-conviction counsels' performance (Supplemental Memorandum, Doc. No. 77,PageID 2562-2569). That argument is beside the point. *Martinez* does not create a new right to effective assistance of post-conviction counsel. Instead, it permits a habeas petitioner who has been found to have procedurally defaulted on an ineffective assistance of trial counsel claim to offer the ineffective assistance of trial counsel as excusing cause. *Turner v. Hudson*, 2012 U.S. Dist. LEXIS 150319, *9 (S.D. Ohio Oct. 18, 2012). *Martinez* does not support granting an evidentiary hearing in this case.

October 22, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge