# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

GREGORY McKNIGHT

:

    Petitioner,                               Case No. 2:09-cv-059

:                Chief Judge Susan J. Dlott
   -vs-                                      Magistrate Judge Michael R. Merz

DAVID BOBBY, Warden,

:

    Respondent.

## SECOND SUPPLEMENTAL OPINION ON PETITIONER'S RENEWED MOTION FOR EVIDENTIARY HEARING ON GROUNDS FOR RELIEF TWENTY-SEVEN AND THIRTY-THREE

       This capital habeas corpus case is before the Court on Petitioner's Objections (the "11/30/2012 Objections," Doc. No. 96) to the Magistrate Judge's Supplemental Opinion of October 23, 2012 (Doc. No. 90), addressing whether the state court decisions on McKnight's Twenty-Seventh and Thirty-Third Grounds for Relief were entitled to AEDPA deference under 28 U.S.C. § 2254(d)(1) or (2). The Warden has responded to the Current Objections (Doc. No. 98) and Chief Judge Dlott has recommitted the matter to the Magistrate Judge for further analysis (Doc. No. 97).

### Non-Compliance with Page Limit Rule

       McKnight's 11/30/2012 Objections do not comply with S. D. Ohio Civ. R. 7.2(a)(3) which provides:

> In all cases in which memoranda exceed twenty (20) pages, counsel must include a combined table of contents and a succinct, clear and accurate summary, not to exceed five (5) pages, indicating the main sections of the memorandum, the principal arguments and citations to primary authority made in each section, as well as the pages on which each section and any sub-sections may be found.

While McKnight's Objections include a table of contents (PageID 2799), no summary is included.

## Ground for Relief Twenty-Seven

In Ground for Relief Twenty-Seven, McKnight accuses his trial counsel of ineffective assistance for failure to introduce evidence of his childhood abandonment by his father and a cultural expert to testify about the impact on him of being the child of a mother from Trinidad and a father from Guyana.  In the Supplemental Opinion, the Magistrate Judge quoted at length from the decision of the Ohio Fourth District Court of Appeals on appeal from denial of post-conviction relief (Supplemental Opinion, Doc. No. 90, PageID 2732-2743).  Rejecting McKnight's seven arguments to the contrary, the Magistrate Judge concluded this was a decision on the merits of these two claims.  *Id.* at 2743-2750.  In his 11/30/2012 Objections, McKnight reprises those seven arguments.

**Argument One:  State Appellate Decision Was Not "On the Merits."**

McKnight argues that the Fourth District Court of Appeals' decision[1] was not "on the merits" within the meaning of 28 U.S.C. § 2254(d)(1) because the standard of review applied

---

[1] *State v. McKnight,* No. 07-CA-665, 2008-Ohio-2435, 2008 Ohio App. LEXIS 2o76, 2008 WL 2124076 (Ohio App. 4th Dist. May 19, 2008).

2

was abuse of discretion.

In the Supplemental Opinion, the Magistrate Judge agreed that the court of appeals had applied an abuse of discretion standard and had relied on *State v. Gondor*, 112 Ohio St. 3d 377 (2006) as authority for that standard. (Supplemental Opinion, Doc. No. 90, PageID 2743.) For the proposition that such review does not constitute review on the merits, McKnight relied on *Vasquez v. Bradshaw*, 345 Fed. Appx. 104, 2009 U.S. App. LEXIS 19979 (6th Cir. 2009)(Boggs, J.) The Supplemental Opinion noted Judge Boggs expressly disclaimed deciding whether review for abuse of discretion was review "on the merits" and that this particular review included a lengthy analysis of the merits of these two claims.[2] (Supplemental Opinion, Doc. No. 90, PageID 2744.)

In his 11/30/2012 Objections, McKnight quotes at length from Judge Boggs' opinion in *Vasquez*. The quoted language does not refute the analysis of *Vasquez* made in the Supplemental Opinion. Judge Boggs expressly says the question whether to give AEDPA deference to an appellate court decision applying an abuse of discretion standard is "unresolved." He analogizes to the Sixth Circuit's refusal to defer to an Ohio appellate court "plain error" decision in *Benge v. Johnson*, 474 F.3d 236 (6th Cir. 2007), but notes that "[o]ther cases have focused on the reasoning actually followed by the state court and not the standard of review applied." *Vasquez*, 345 Fed. Appx. at 111, n. 1, *citing Fleming v. Metrish*, 556 F. 3d 520 (6th Cir. 2009).

The Supplemental Opinion follows the latter approach and focuses on the reasoning actually used by the Fourth District Court of Appeals. The court of appeals stated that McKnight's claims not barred by *res judicata* "lack substantive merit." *McKnight*, 2008-Ohio-2435 at ¶ 1. As is clear from the lengthy quotations from the court of appeals' decision in the

---

[2] McKnight's Ground for Relief Twenty-Seven encompasses his ninth and fifteenth claims for relief in post-conviction.

3

Supplemental Opinion, that court extensively examined the merits of these two claims.

Nevertheless, McKnight argues, an abuse of discretion review in Ohio cannot be a merits review for AEDPA purposes. However, McKnight cites not one case, from Ohio or any other jurisdiction, holding that review under an abuse of discretion standard cannot be merits review for AEDPA purposes. *See Jermyn v. Horn*, 266 F.3d 257 (3rd Cir. 2001)(A determination that a petitioner failed to meet Pennsylvania's "miscarriage of justice" standard constituted an adjudication on the merits for AEDPA purposes.); *Moreno v. Dretke*, 362 F. Supp. 2d 773 (W.D. Texas 2005), aff'd, 450 F.3d 158 (5th Cir. 2006)(Dismissal of an *Atkins* claim as an abuse of the writ constituted a ruling on the merits for AEDPA purposes.) Obviously, if what occurred was functionally a merits review and no error was found, there would have been no abuse of discretion.

**Argument Two:** **McKnight Was Constitutionally Entitled to an Evidentiary Hearing in the State Court.**

McKnight's second argument is that he was constitutionally entitled to an evidentiary hearing in state court, relying on four Supreme Court cases from the period 1945-1956. The Supplemental Opinion noted that none of these cases or any others in the fifty-six years since the last of them was decided provided a holding "about the kind of evidentiary hearing which must be permitted by the states in a collateral attack on a criminal judgment." (Supplemental Opinion, Doc. No. 90, PageID 2745.)

Not so, says McKnight. "*Hawk v. Olson* [326 U.S. 271 (1945),] is unambiguous as to the federal right to a hearing in state court goes [sic]:

> Petitioner states a good cause of action when he alleges facts
> which support his contention that through denial of asserted

4

> constitutional rights he has not had **the kind of trial** in a state court which the due process clause of the Fourteenth Amendment requires. This, of course, does not mean that uncontradicted evidence of a witness must be accepted as true on the hearing. Credibility is for the trier of facts. The evidence may show that the charge was served upon petitioner well in advance of the trial (see note 5, supra) and that he had ample opportunity to consult with counsel and secure any needed witnesses. He may have intelligently waived his constitutional rights. Adams v. U.S. ex rel. McCann, 317 U.S. 269, 275. Petitioner carries the burden in a collateral attack on a judgment. He must prove his allegations but he is entitled to an opportunity.

(11/30/2012 Objections, Doc. No. 96, PageID 2803-2804, quoting *Hawk*, 326 U.S. at 278-79.)(Emphasis added.)

The Magistrate Judge respectfully suggests counsel has not read *Hawk* carefully enough. In that case the Supreme Court found the petitioner alleged he had been denied **at trial** the right to "examine the charge, subpoena witnesses, consult counsel, and prepare a defense." *Hawk* must be one of thousands of United States Supreme Court cases finding a due process violation in a state felony trial. As noted in the Supplemental Opinion, *Hawk* says nothing about the process required in a state habeas proceeding, to which Hawk was remanded.

**Argument Three:**     **The Post-Conviction Trial Court's Decision that Trial Counsels' Decisions Were "Strategic" Is Contrary to Clearly Established Federal Law.**

McKnight's third argument is that the state post-conviction trial court decision that trial counsels' decisions were "strategic" and therefore not ineffective assistance of trial counsel is contrary to *Strickland v. Washington*, 466 U.S. 668 (1984), and *Wiggins v. Smith*, 539 U.S. 510 (2003) (11/30/2012 Objections, Doc. No. 96, PageID 2806-2808). This argument will be analyzed if the District Court rejects the Magistrate Judge's conclusion that the Fourth District

5

Court of Appeals' decision was on the merits.

**Argument Four:** **The Post-Conviction Trial Court's Decision that McKnight Was Not Prejudiced by His Trial Counsels' Errors is an Objectively Unreasonable Application of** *Strickland***.**

McKnight's fourth argument is that the post-conviction trial court unreasonably applied *Strickland* in finding McKnight suffered no prejudice from his counsels' failure to present the omitted evidence (11/30/2012 Objections, Doc. No. 96, PageID 2809-2811). This argument will be analyzed if the District Court rejects the Magistrate Judge's conclusion that the Fourth District Court of Appeals' decision was on the merits.

**Argument Five:** **The Ohio Court of Appeals Acted Contrary to Clearly Established Federal Law by reviewing a Mixed Question of Federal Law and Fact Under an Abuse of Discretion Standard**.

This argument does not require analysis beyond that made in the Supplemental Opinion.

**Argument Six:** **The Ohio Court of Appeals Unreasonably Applied** *Strickland* **in "Holding that Speculation About the Impact of New Mitigating Evidence Cannot Establish Prejudice under** *Strickland***. . . ."**

McKnight's argument here seems to be that trial courts deciding ineffective assistance of trial counsel omission of evidence claims constitutionally must "speculate" about the impact of that evidence and give the benefit of that speculation to the petitioner. As the Warden responds, that claim is "facially implausible." (Warden's Opposition, Doc. No. 98, PageID 2825.) As the quotation from *Sears v. Upton*, 130 S. Ct. 3259 (2010), hopefully makes clear, weighing the probable impact of additional evidence does not mean that a court must accept a petitioner's speculation about that impact.

6

## Ground for Relief Thirty-Three

McKnight's Thirty-Third Ground for Relief asserts he received ineffective assistance of appellate counsel when his appellate attorneys (1) failed to challenge all (as opposed to some of) the false statements in the affidavit of probable cause supporting the search of his home which disclosed the bodies of the two people he was convicted of murdering, and (2) failed to seek a change of venue from Vinton County because of racial discrimination there. (Petition, Doc. No. 9, ¶ 607, PageID 254, incorporating by reference the claims of ineffective assistance of trial counsel made in Ground Twenty-Five.)

As noted in the Supplemental Opinion, McKnight raised these claims in the first instance in the manner required by Ohio law – application for reopening the direct appeal in the Ohio Supreme Court – and that court declined to consider the application without opinion. (Supplemental Opinion, Doc. No. 90, PageID 2751, *citing State v. McKnight*, 109 Ohio St. 3d 1492 (2006).)

In his Supplemental Memorandum, McKnight argued the refusal of the Ohio Supreme Court to consider the application was not a "decision on the merits" for purposes of 28 U.S.C. § 2254(d) "[b]ecause McKnight was prevented by operation of state law from developing and presenting evidence in support of his claim of the denial of effective assistance of appellate counsel. . . ." (Supplemental Memorandum, Doc. No. 77, PageID 2553.)  The Supplemental Opinion rejected this argument, quoting Ohio S. Ct. Prac. R. 11.6 on the method for creating a record on a motion for reopening (Supplemental Opinion, Doc. No. 90, PageID 2751).

In his 11/30/2012 Objections, McKnight essentially asserts that the Magistrate Judge has

misread the Ohio Supreme Court Rule. He claims "[t]he Rule only permits the submission of an affidavit – the equivalent of a legal memorandum – 'which affidavit may include citations to applicable authorities and reference to the record.'"  (11/30/2012 Objections, Doc. No. 96, PageID 2818, *quoting* Ohio S. Ct. Prac. R. 11.6(B)(4).)  However, it was not Rule 11.6(B)(4) on which the Supplemental Opinion relied, but Rule 11.6(B)(5). The text of both Rules is as follows:

> (B) An application for reopening shall contain all of the following:
> * * *
> (4) An affidavit stating the basis for the claim that appellate counsel's representation was ineffective with respect to the propositions of law or arguments raised pursuant to S. Ct. Prac. R. 11.6(B)(3) and the manner in which the claimed deficiency prejudicially affected the outcome of the appeal, which affidavit may include citations to appropriate authorities and references to the record;
>
> (5) Any relevant parts of the record available to the applicant and all supplemental affidavits upon which the applicant relies.

Thus while McKnight is correct that the (B)(4) affidavit is essentially the equivalent of a legal memorandum, that is not true of the (B)(5) affidavits.

With respect to the provision for additional affidavits in Rule 11.6(B)(5), McKnight argues that "no *procedure* exists that permits the development of the factual basis required to vindicate the federal constitutional right in state court. . . ." (11/30/2012 Objections, Doc. No. 96, PageID 2818). The procedure for creating affidavits is well known: interview the relevant witness, reduce his or her relevant testimony to writing, and have it sworn before a notary. If an evidentiary hearing is needed to resolve factual questions, Rule 11.6(H) provides that such a hearing can be held by the Supreme Court itself "or referred to a master commissioner." Both of those hearing bodies have subpoena power to compel the presence and testimony of witnesses

and the production of documents.

McKnight argues that the Magistrate Judge previously allowed him to depose his appellate counsel because "the governing state court rule prevented the diligent McKnight from presenting the factual basis for the claim to the state court." (11/30/2012 Objections, Doc. No. 96, PageID 2818). What the Magistrate Judge wrote was "[s]o far as this Court is aware, the Ohio appellate courts do not allow evidentiary development on collateral proceedings to show ineffective assistance of appellate counsel." (Decision and Order Granting in Part and Denying in Part Petitioner's Motion for Leave to Conduct Discovery, Doc. No. 31, PageID 1312.) Obviously at that point the Magistrate Judge was unaware of Ohio S. Ct. Prac. R. 11.6(B)(5) and 11.6(H). While this is no excuse for the Magistrate Judge's incomplete research, the Rule was not cited by the Warden's counsel in opposition. In any event, the prior statement is plainly wrong: Rule 11.6 does provide for evidentiary development of a claim of ineffective assistance of appellate counsel. And of course the discovery was granted in February, 2011, before *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011), was decided in April.

## Impact of *Martinez v. Ryan*

In his Supplemental Memorandum, McKnight sought to benefit from the 2012 decision in *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012). He asserted *Martinez* entitled him to discovery and an evidentiary hearing at which he could show ineffective assistance of post-conviction counsel to excuse "any failure to raise or develop bases for his federal constitutional claim that he was denied effective assistance of counsel at the penalty phase." (Supplemental Memorandum, Doc. No. 77, PageID 2752.)

9

The Supplemental Opinion held *Martinez* was inapplicable because the Fourth District Court of Appeals decided the post-conviction claims on the merits and not on the basis of any procedural default by post-conviction counsel (Supplemental Opinion, Doc. No. 90, PageID 2752-2755).

In the 11/30/2012 Objections, McKnight quotes the Magistrate Judge's finding that "there is not procedural default held against McKnight by the state courts to which *Martinez* would have any application." (Doc. No. 96, PageID 2820). In the very next sentence, he claims this finding is clearly erroneous, but he does not cite to any procedural default ruling. *Id.* Instead he says the "new evidence" changes the nature of McKnight's ineffective assistance of trial counsel claim so much "that it amounts to a new claim which has never been presented in state court." *Id.*

This new "compelling mitigating evidence" which has been "subsequently discovered" is said in the Supplemental Memorandum (Doc. No. 77, PageID 2568) to be summarized in the Affidavit of Pamela Swanson, attached as Exhibit B to the Supplemental Memorandum (Doc. No. 77, PageID 2578-2583). The first ten paragraphs of that Affidavit are devoted to criticizing the work done by McKnight's now-deceased post-conviction counsel, Ruth Tkacz. At the end of the Affidavit, Ms. Swanson describes the new evidence she has discovered:

> Lewin [McKnight, Petitioner's mother], like her son, chose not to provide information to the post-conviction team that would have been critical to mitigation, particularly, information regarding cultural child-rearing practices; Gregory's problems in school; issues of abandonment by primary caregivers; physical abuse; traumatization and brutalization by older youths who viewed him as a disposable commodity; and childhood diagnosis of Attention Deficit-Hyperactivity Disorder. Ms. McKnight, later, admitted that her son's poor relationship with his post-conviction counsel influenced what she did and did not share with me[3] at post-

---

[3] In the beginning of the Affidavit, Ms. Swanson explains that she was actually the post-conviction mitigation specialist, but did not uncover this evidence in that capacity because Ms. Tkacz controlled what she did in the case.

conviction. The wealth of information obtained at the habeas stage of appeals, was due to Gregory [McKnight] forming a trusting relationship with habeas counsel at the Office of the Federal Public Defender.

Working with habeas counsel, I was able to conduct the mitigation investigation that should have been done at the Office of the Ohio Public Defender either at trial or on postconviction. I interviewed Lewin McKnight and obtained her life history that had not been given to either the trial or post-conviction team. She talked about the abandonment of the family by Greg's father when Greg was seven months old and how it devastated Lewin and had a long-term negative impact on Greg. I was also able to obtain information about her extremely difficulty [sic] pregnancy with Gregory. Lewin also spoke about the problems Greg had in school, particularly, how he was teased because of his dark skin. She believed that the client eventually left school because he could no longer tolerate his treatment in school. He turned to the streets, where he was easily manipulated by older youths into selling drugs. Greg, she believes was used by the older youths because he sought in them, the father who abandoned him. It was a loss that Greg never recovered from. He wanted to have a relationship with his father was denied any relationship by the father. They never met, as Curbert McKnight, Gregory's father died in 1995.

I was also able to confirm much of the information about the problems of abandonment by Curbert McKnight and the negative effect it had on Gregory from Stella Spence, Lewin's sister, her husband Wortley Spence and their daughters Melanie and Latoya Spence. None of them had been previously interviewed for purposes of trial or postconviction. The devastation Greg felt was also attested to by members of the Weekes family of Shepherd, Texas. The family kept the client from 1982 to 1984. I interviewed Beulah Weekes, her husband, Edmund, as well as, sons Earl, Andy, and spoke with sons, Lester and Derek. Derek Weekes explained how Lewin worked 16 hour days and went to bed after [sic] immediately after cooking dinner; leaving Greg to his own devices, starved for attention, since he was ignored by his mother and brother. I also [interviewed] Steven Chandler, oldest son of Noel and Gloria Chandler, the client's godparents (with whom Gregory had also lived), as well as Ollie and Zachary Dykes. Zachary and Greg were in the same juvenile detention facility in Columbus. Zachary's mother, Ollie, took "adopted" [sic] Greg when he was released from detention. They both talked about the client's racial isolation in rural southern Ohio, where he lived with his wife and her family. With the exception of one interview of

Gloria Chandler by telephone, none of these people had been contacted by either the trial or post-conviction teams.

The Chandlers explained that they had been the primary caregivers for Gregory from the day he came home from the hospital. Gregory was sent to live with them in Texas after they moved there and lived with them off and on for several years. The Chandlers were strict Seventh Day Adventists. Home life was extremely strict, especially in comparison to the complete lack of supervision Gregory had when in New York with his mother. The cultural differences were likewise shocking. The Chandlers lived in a mostly white rural area – where Gregory's extremely dark skin stood out and made him the subject of considerable harassment. Gregory was subjected to severe beatings by the Chandlers when he was in junior high school and before – and at the hands of his mother when he was with her. Greg was eventually sent back to NY when the Chandlers could no longer control his comings and goings. I also interviewed the Chandler children who had lived with Gregory. None of them had been previously interviewed by the trial or postconviction teams.

Gregory's isolation in Texas and feelings of abandonment and returns to New York where he had little to no supervision from his mother made him ripe for the brutal gang initiation and indoctrination that was to follow. Dino Johnson (now a youth outreach coordinator) and his gang recruited young boys like Greg, in New York's notorious LeFrak City.

I was able to visit the metropolitan housing complex with Dino Johnson. LeFrak was a huge complex of towers and tunnels. The building's courtyards were divided into fiercely defended gang territories. Socialization between buildings was strictly forbidden by gang members. Young boys were traumatized and brutalized by older gang members in order to desensitize them to the acts of violence they were expected to commit. The boys were, then, taken out of town to sell drugs for their handlers. The children were often abandoned or disposed of, when they were no longer of use or became a liability. Mr. Johnson believes that Greg was disposed of in such a manner. Harvey Halliburton, an Ohio gang expert, stated that Greg was dumped into the middle of a brutal gang war when he came to Columbus. He was faced with losing his own life, when he was robbed.  This was verified by Mr. Johnson who stated that Greg would have been killed if he had been unable to replace the money that his handler had lost when the client was robbed of the drugs he was supposed to sell. Greg, not the money, was the disposable commodity in that situation.

> I also interviewed his maternal cousin, Gail King Fagan, who lived with Greg and his family when she and her mother first came from Trinidad. Greg pushed Gail out of harm's way when the two children were caught in the line of fire, just outside of LeFrak. I also interviewed Olda King, Gail's mother who provided information about the McKnight family in Trinidad. All of the witnesses interviewed talked about how the client strived to be a good person despite not having the skills or resources to do so. Records collected echoed statements made by the witnesses.
>
> All of this information was available to the trial team and would have been available to me during the post-conviction investigation, had I been permitted to conduct such an investigation. It is my opinion, that Gregory McKnight's life history contains compelling mitigating evidence that not only humanizes him but is critical to explaining his behavior in the crimes he was charged with but also in the earlier juvenile murder adjudication.

*Id.* at PageID 2580-2583. This copious information has never been presented to the state courts. To some extent, it might be regarded as further support for the ninth claim for relief – failure to present available evidence on the impact of paternal abandonment. Some of the cultural information might be used to show prejudice from not presenting a cultural expert, the fifteenth claim for relief. But most of it would support completely new claims and none of it has been presented to the state courts.

McKnight notes that "the federal courts may determine that a claim is defaulted if there is no remaining state corrective process available where the claim can be presented." (11/30/2012 Objections, PageID 2820, *citing Strickler v. Greene*, 527 U.S. 263, 278 (1999), and *Webb v. Mitchell*, 586 F.3d 383, 389 (6th Cir. 2009).) But Ohio does allow a person to file a subsequent post-conviction petition under Ohio Revised Code § 2953.23 under certain conditions. McKnight has not attempted to present this new evidence in such a petition. This Court should not assume the Ohio courts would find these new claims/evidence procedurally defaulted. Indeed the jurisprudence of *Martinez* is sufficiently undeveloped that the Ohio courts might

recognize its applicability here to excuse the failure to present this evidence earlier.

At this stage of the case, however, there exists no state court finding of procedural default to which *Martinez* could apply.  Rather than hypothesize such a finding and then go through the lengthy discovery and hearing process to decide whether Ms. Tkacz's performance was deficient and prejudicial, initial evaluation of these new claims/evidence should be left to the Ohio courts.

**Conclusion**

Upon reconsideration, the Magistrate Judge does not find that the Objections require amendment of the prior conclusion that McKnight is not entitled to an evidentiary hearing on his Twenty-Seventh and Thirty-Third Grounds for Relief.  Regarding his reliance on Martinez v. Ryan, the Magistrate Judge concludes the claims/evidence adverted to in the Swanson Affidavit remain unexhausted in the Ohio courts and cannot be considered by this Court until they are exhausted.

December 31, 2012.

s/ *Michael R. Merz*<br>United States Magistrate Judge