# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

GREGORY McKNIGHT

:

Petitioner,

Case No. 2:09-cv-059

:

District Judge Susan J. Dlott
-vs-                                                            Magistrate Judge Michael R. Merz

DAVID BOBBY, Warden,

:

Respondent.

---

## DECISION AND ORDER DENYING MOTION TO AMEND

---

This capital habeas corpus case is before the Court on Petitioner's Motion for Leave to File an Amended Petition to Address Newly Ripe Claim under *Hurst v. Florida* [136 S. Ct. 616 (2016)] (ECF No. 215) and a companion Motion for Authorization to Appear in Ancillary State Court Litigation (ECF No. 216). The Warden has filed a combined Opposition (ECF No. 217) and McKnight has filed a combined Reply in Support (ECF No. 218). The Motion for Authorization will be dealt with separately after additional briefing (ECF No. 220).

A motion to amend a habeas petition is a pretrial non-dispositive motion which Magistrate Judges are authorized to decide in the first instance. 28 U.S.C. § 636(b)(1)(A). *Monroe v. Houk*, No. 2:07-cv-258, 2016 U.S. Dist. LEXIS 38999 (S.D. Ohio, Mar. 23, 2016)(Sargus, C.J.)

A pending habeas corpus petition may be amended "as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v.*

1

*Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182. *See also Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997)(citing *Foman* standard).

In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, i.e., if it could withstand a motion to dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.,* 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980); *United States ex rel. Antoon v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 887 (S.D. Ohio 2013)(Rose, J.); *William F. Shea, LLC v. Bonutti Reseach Inc.*, 2011 U.S. Dist. LEXIS 39794, *28 (S.D. Ohio March 31, 2011) (Frost, J.).

Likewise, a motion to amend may be denied if it is brought after undue delay or with dilatory motive. *Foman v. Davis*, 371 U.S. 178 (1962); *Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1259 (6th Cir. 1990). ); *Bach v. Drerup*, 2012 U.S. Dist. LEXIS 35574, *1 (Ovington, M.J.); *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), cert denied, 517 U.S. 112 (1996)(amendment should be denied if it "is brought in bad faith, for dilatory purposes, results in

2

undue delay or prejudice to the opposing party, or would be futile."). These considerations apply as well in capital habeas corpus cases. *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998), quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994).

**The Parties' Positions**

McKnight seeks to add the following Ground for Relief to his case:

> Gregory McKnight's Sixth, Eighth, and Fourteenth Amendment Rights were violated because the jury's penalty phase verdict and death recommendation were only advisory and the judge independently made the conclusive findings and determinations that McKnight be sentenced to death.

(ECF No. 215-1, PageID 16649.) He asserts that *Hurst* renders Ohio's capital sentencing scheme unconstitutional as it was applied to him (Motion, ECF No. 215, PageID 16641). He argues that the trial jury did not make the findings required to be made by a capital jury under *Hurst*. Although not mentioned in the proposed ground for relief, McKnight also asserts in his Motion that:

> In addition, in McKnight's case the Supreme Court of Ohio found error in the trial court's merger of statutory aggravating circumstances but "cured" that error by independently reweighing the proper aggravating circumstances against the mitigating factors. *Hurst* makes clear that this type of appellate reweighing violates the Sixth Amendment. A sentence of death must be premised upon factual findings made by the jury – not the trial judge – and not appellate courts.

*Id.* at PageID 16643. Apparently McKnight believes *Hurst* also renders unconstitutional appellate reweighing of aggravating and mitigating circumstances. For relief, McKnight requests "a new, fair, penalty phase at which the jury considers the proper statutory aggravating

3

circumstances, decides whether McKnight demonstrated the existence of any mitigating factors, the weight to be given to those mitigating factors, and whether the statutory aggravating circumstances outweigh those mitigating factors." *Id.* at PageID 16646.

The Warden is opposed on the ground that Ohio's capital sentencing scheme does not violate the Constitution as interpreted in *Hurst*. (Opposition, ECF No. 217).

# Analysis

***Hurst* Does Not Invalidate Ohio's Capital Sentencing Scheme**

In *Hurst, supra,* the Supreme Court was called upon to decide whether its prior decisions upholding Florida's capital punishment scheme in *Spaziano v. Florida*, 468 U.S. 447 (1984) and *Hildwin v. Florida*, 490 U.S. 638 (1989), survived its holding in *Ring v. Arizona*, 536 U.S. 584 (2002). The Florida Supreme Court had relied on *Spaziano* and *Hildwin*, but the United States Supreme Court expressly overruled those two decisions. 136 S. Ct. at 623. In *Ring* the Court had applied the *Apprendi* line of cases to conclude "that Arizona's capital sentencing scheme violated *Apprendi*'s rule because the State allowed a judge to find facts necessary to sentence a defendant to death." *Hurst*, 136 S. Ct. at 621. In Arizona, "a judge could sentence Ring to death only after independently [of the jury] finding at least one aggravating circumstance." *Id.*, quoting *Ring*, 536 U.S. at 591. Had Ring's judge not engaged in the independent factfinding of an aggravating circumstance, the maximum sentence Ring could have received would have been a life sentence. *Hurst*, 136 S.Ct. at 620. Justice Sotomayor continued:

> The analysis the *Ring* Court applied to Arizona's sentencing scheme applies equally to Florida's. Like Arizona at the time of *Ring*, Florida does not require the jury to make the critical findings necessary to impose the death penalty. Rather, Florida requires a judge to find these facts. Fla. Stat. §921.141(3). Although Florida incorporates an advisory jury verdict that Arizona lacked, we have previously made clear that this distinction is immaterial: "It is true that in Florida the jury recommends a sentence, but it does not make specific factual findings with regard to the existence of mitigating or aggravating circumstances and its recommendation is not binding on the trial judge. A Florida trial court no more has the assistance of a jury's findings of fact with respect to sentencing issues than does a trial judge in Arizona." *Walton* v. *Arizona*, 497 U.S. 639, 648, 110 S. Ct. 3047, 111 L. Ed. 2d 511 (1990); accord, *State* v. *Steele*, 921 So. 2d 538, 546 (Fla. 2005) ("[T]he trial court alone must make detailed findings about the existence and weight of aggravating circumstances; it has no jury findings on which to rely").

*Id.* at 621-22.

The Warden reads *Hurst* narrowly as just overruling *Spaziano* and *Hildwin* and allowing a capital sentencing scheme where the jury merely finds the facts necessary to make a defendant death eligible, e.g., the existence of an aggravating circumstance (ECF No. 217, PageID 16667-69). In contrast, Petitioner asserts that *Hurst* requires the trial jury to "consider the proper statutory aggravating circumstances, [and] decide whether McKnight demonstrated the existence of any mitigating factors, the weight to be given to those mitigating factors, and whether the statutory aggravating circumstances outweigh those mitigating factors." (Motion, ECF No. 215, PageID 16646.) McKnight is unclear whether these findings have to be by special verdict or whether some form of general verdict is constitutional.

This Court believes the correct reading of *Hurst* is that the relative weight of aggravating circumstances and mitigating factors is a question of fact akin to an element under the *Apprendi* line of cases, that is, a fact necessary to be found before a particular punishment can be imposed, e.g., a mandatory minimum sentence as in *Alleyne v. United States*. 570 U.S. ___, 133 S. Ct. 2151,

5

186 L. Ed. 2d 314 (2013).

*Hurst*, however, does not invalidate Ohio's capital sentencing scheme because Ohio's scheme is materially different from Florida's. At the time of McKnight's trial, Ohio law required that, before a sentence of death could be imposed, the jury must find, beyond a reasonable doubt, that the aggravating circumstances outweighed the mitigating factors. That is to say, every fact necessary for imposition of a death sentence, including the fact that the proved aggravating circumstances outweigh the mitigating factors, had to be proved to the jury beyond a reasonable doubt. The trial jury in this case was instructed:

> If all twelve of you find that the State of Ohio proved beyond a reasonable doubt * * * that the aggravating circumstance * * * is sufficient to outweigh the mitigating factors in this case, then it will be your duty to decide that the sentence of death shall be imposed on Gregory B. McKnight.
>
> If you find that the State of Ohio has failed to prove beyond a reasonable doubt that the aggravating circumstance Gregory B. McKnight was guilty of committing is sufficient to outweigh the mitigating facts present in this case, then it will be your duty to decide which of the * * * life sentence alternatives should be imposed[.] * * * "You shall recommend the sentence of death if you unanimously, that's all twelve, find by proof beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating facts.

*State v. McKnight,* 107 Ohio St. 3d 101, ¶¶ 264-65 (2005). In Ohio, unlike Florida, the trial judge could not find an aggravating circumstance the jury had not already found beyond a reasonable doubt in the culpability phase of the capital trial.

It is true, of course, that the Ohio trial judge has to weigh the aggravating circumstances against the mitigating factors and that weighing is independent of the jury's weighing in the sense that the judge must do it himself or herself. But that weighing is, so to speak, on top of the jury's weighing: if the jury does not find the aggravating circumstances outweigh the mitigating

6

factors, the judge cannot overrule that finding.

Nothing in the United States Constitution forbids a State from giving a defendant the extra protection from a capital sentence that Ohio provides. The protection is parallel to that provided by a motion for judgment of acquittal: a judge can acquit even if a jury has convicted if the judge determines the evidence is insufficient. Likewise, in Ohio's death penalty scheme, a judge may conclude that the aggravating circumstances do not outweigh the mitigating factors in a capital case and may sentence a defendant to a life term despite the jury's finding on relative weight and recommendation of death.

*Hurst* does not mandate jury sentencing in capital cases, the position Justice Breyer believes the Eighth Amendment requires. *Hurst, supra,* at 624 (Breyer, J., concurring in the judgment). It requires only that the jury take the penultimate step: make the necessary factual finding that the aggravating circumstances outweigh the mitigating factors.

Because *Hurst* does not invalidate Ohio's capital sentencing scheme, the proposed amendment would be futile.

### *Hurst* Does Not Apply to Cases on Collateral Review

Subject to two narrow exceptions, a case that is decided after a defendant's conviction and sentence become final may not provide the basis for federal habeas relief if it announces a new rule. *Graham v. Collins*, 506 U.S. 461 (1993); *Stringer v. Black,* 503 U.S. 222 (1992); *Teague v. Lane*, 489 U.S. 288 (1989). "Two exceptions to the *Teague* rule, however, permit the retroactive application of a new rule whenever: 1) the rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or otherwise prohibits

imposition of a certain type of punishment for a class of defendants because of their status or offense; or 2) the rule announces a new "watershed" rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *In re Carl Green,* 144 F.3d 384, 386 (6th Cir. 1998), *citing Caspari v. Bohlen*, 510 U.S. 383, 396 (1994).

A Supreme Court decision announces a new rule where the issue addressed was susceptible to debate among reasonable minds. *Butler v. McKellar,* 494 U.S. 407, 412-15 (1990). A new rule is "a rule that ... was not *dictated* by precedent existing at the time the defendant's conviction became final." *Saffle v. Parks*, 494 U.S. 484, 488 (1990), *quoting Teague v. Lane*, 489 U.S. 288, 301 (1989)(emphasis in original). For instance, the rule in *Crawford v. Washington,* 541 U.S. 36 (2004), is a new rule, but does not fall within the "watershed" exception to *Teague*. *Whorton v. Bockting*, 549 U.S. 406 (2007). As of February 28, 2007, the date *Whorton* was decided, the only rule the Supreme Court had identified as qualifying under the "watershed" exception is that adopted in *Gideon v. Wainwright,* 372 U.S. 335 (1963).

Whether a Supreme Court decision applies retroactively should be decided by the district court in the first instance. *Wiegand v. United States,* 380 F.3d 890, 892 (6th Cir. 2004).

The rule announced in *Hurst* is plainly new within the meaning of *Teague*. It was not dictated by precedent. Indeed *Hildwin* and *Spaziano*, overruled by *Hurst*, were the relevant precedents. *Hurst* does not create a new substantive rule. Compare *Atkins v. Virginia,* 536 U.S. 304 (2002)(the intellectually disabled may not be executed), and *Johnson v. United States*, 135 S. Ct. 2551 (2015)(declaring unconstitutionally vague the "residual" clause of the Armed Career Criminal Act). Nor is it a watershed new rule of procedure. See *Beard v. Banks*, 542 U.S. 406, 415-16 (2004)(*Gideon v. Wainwright* might qualify under *Teague's* second exception, but *Batson v Kentucky,* for example, would not).

Petitioner argues he has good cause to amend in that the Florida and Delaware Supreme Courts have held *Hurst* to be applicable retroactively (ECF No. 215, PageID 16643). But both of those decisions were based on state law retroactivity doctrine. Nothing in *Teague* prohibits state courts from giving retroactive effect, as a matter of state law, to new constitutional rules such as *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004). *Danforth v. Minnesota*, 552 U.S. 264, 280 (2008).

Because *Hurst* does not apply to cases in which the conviction became final on direct appeal before January 2016, it has no application here and the requested amendment would therefore be futile.

**Undue Delay**

McKnight insists he has not acted in bad faith because his "request to amend is brought within AEDPA's one year statute of limitations." (ECF No. 215, PageID 16644). The Motion to Amend was filed January 11, 2017, on the eve of the anniversary of *Hurst*. The fact that an amendment is filed within the statute of limitations does not per se prove it was filed without undue delay. To suggest that seven such *Hurst* motions on this judge's docket and more on the dockets of other judges of this Court, all filed within hours of one another on the last day before the statute ran, were all filed without "undue delay" tests the credulity of the Court.

In addition, McKnight moved on April 1, 2016, to stay these proceedings to allow "exhaustion of his claims and evidence developed in federal habeas in the state courts of Ohio." (ECF No. 202, PageID 16444). Although that Motion was filed more than two months after *Hurst* was decided, no mention was made of a *Hurst* claim. Judge Dlott has now denied that

9

Motion as well (ECF No. 221).   McKnight has offered no explanation for splitting his new claims between two different motions to amend.

No finding on the undue delay factor is made in light of the rulings on futility.

**Conclusion**

For the foregoing reasons, the Motion to Amend is DENIED.

February 15, 2017.

s/ *Michael R. Merz*<br>United States Magistrate Judge