# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

GREGORY McKNIGHT

:

    Petitioner,            Case No. 2:09-cv-059

:          District Judge Susan J. Dlott

-vs-          Magistrate Judge Michael R. Merz

DAVID BOBBY, Warden,

:

    Respondent.

## SUPPLEMENTAL MEMORANDUM OPINION ON MOTION TO AMEND

This capital habeas corpus case is before the Court on Petitioner's Appeal (ECF No. 227) of the Decision and Order Denying Motion to Amend (ECF No. 222). The State has responded to the appeal (ECF No. 229) and Judge Dlott has recommitted the matter (Corrected Recommittal Order, ECF No. 228).

On January 11, 2017, the Petitioner McKnight filed his "Motion for Leave to File an Amended Petition to Address Newly Ripe Claim under *Hurst v. Florida* [577 U.S. ___, 136 S. Ct. 616 (2016)]"("Motion to Amend," ECF No. 215).

**Standard of Review**

McKnight devotes two pages of his appeal to arguing that, because the Decision and Order prevents him from filing his proposed claim under *Hurst*, it is a "dispositive order" and "must be construed as a recommendation and reviewed *de novo*."

1

The Magistrate Judge disagrees with the assertion that a decision on a motion to amend is dispositive. Motions to amend are not listed as excepted from Magistrate Judge decisional authority in 28 U.S.C. § 636(b)(1)(A). Although that list has been held by the Sixth Circuit to be nonexhaustive, the circuit court has never added motions to amend to the list. Chief Judge Sargus of this Court has expressly held Magistrate Judges have authority to decide Rule 15 motions. *Monroe v. Houk*, No. 2:07-cv-258, 2016 U.S. Dist. LEXIS 38999 (S.D. Ohio, Mar. 23, 2016). McKnight has cited no authority from any court to the contrary.

However, the Magistrate Judge agrees that McKnight is entitled to de novo review by the District Judge on his appeal. The appeal is on pure questions of law and there is no discernible difference between reviewing the Decision and Order de novo under Fed. R. Civ. P. 72(b) or determining whether it is "contrary to law" under Fed. R. Civ. P. 72(a).[1]

**General Standard for Motions to Amend**

In considering the Motion to Amend, the Magistrate Judge applied the following general standard:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

---

[1] Magistrate Judge findings of fact are reviewed under a clearly erroneous standard under Fed. R. Civ. P. 72(a), but there are no alleged factual errors in the Decision and Order. While McKnight refers to the "clearly erroneous" standard in the last line of his appeal (PageID 16773), he nowhere makes reference to any allegedly erroneous factual findings.

2

*Foman v. Davis*, 371 U.S. 178, 182 (1962). The Appeal asserts "[t]he Magistrate Judge erred by not considering these important factors [bad faith, prejudice, or lack of notice] that weighed in favor of granting the motion to amend." But, as McKnight admits, "the Warden never argued" those factors were present. Nor did McKnight ever argue the absence of those factors. The Court has no cause to make findings about factors on which there is no claim either way.

**Futility**

The gravamen of the Decision and Order is that the proposed amendment would be futile. No law cited by McKnight suggests that absence of bad faith or dilatory motive should cause a court to allow an amendment that would be futile. In other words, if the proposed amendment would be futile, no amount of subjective good faith by the movant would overcome the futility.

McKnight also makes the standard "death is different" argument: "the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination." (Appeal, ECF No. 227, PageID 16772-73, quoting *California v. Ramos*, 463 U.S. 992, 998-99 (1983)). While the quotation is accurate, it is pure dictum, written by the Supreme Court in the course of reinstating a death sentence found unconstitutional by the California Supreme Court. The opinion has nothing to do with amending habeas petitions. Accepting that "death is different," the Supreme Court has not adopted a different Rule 15 for assessing proposed amendments to capital habeas corpus petitions.

The Decision concluded *Hurst* is not applicable to Ohio's capital sentencing scheme because the two schemes are "materially different." McKnight asserts, to the contrary,

> [T]hese distinctions between the Ohio and Florida sentencing statutes . . .are insignificant and do not affect the underlying

3

> constitutional problem that under Ohio law, no death sentence may be imposed until the trial judge *independently* finds aggravating circumstances, [and] mitigating factors, and that the aggravating circumstances outweigh any factors in mitigation beyond a reasonable doubt.

(Appeal, ECF No. 227, PageID 16763.)  In Florida, before *Hurst*, a trial judge could impose a death sentence without any input from the jury after the jury had finished its process.  Ohio is different because a trial judge in Ohio cannot impose a death sentence unless the jury has previously returned a verdict finding the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

*Hurst* is the latest in the *Apprendi* line of cases in which the Supreme Court has held the jury must decide every element of the charged crime and then specified what findings are to count as elements.  Most recently before *Hurst* it had held that any fact that makes a defendant eligible for the mandatory minimum sentence for an offense is an "element" which must be submitted to the jury. *Alleyne v. United States*. 570 U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), expressly overruling *Harris v. United States*, 536 U.S. 545 (2002).

The Ohio death penalty sentencing scheme is perfectly consistent with the *Apprendi* line of cases.  Under Ohio law the jury must decide what we might now call the *Hurst* element, to wit, that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

On the other hand, adopting McKnight's reading of *Hurst* would upend sentencing law in America in general, not just in death penalty cases.  McKnight is correct that once an Ohio capital jury renders a valid verdict, another act of judgment on the part of the judge is necessary, to wit, determining the appropriate sentence.  But that is true of virtually every crime on the books:  the jury renders a verdict and then the judge decides, from options created by the

4

legislature, what the appropriate sentence should be. In reaching that ultimate conclusion, the trial judge may need to make several subordinate decisions – e.g., does this particular prior conviction qualify as a violent felony predicate for purposes of the Armed Career Criminal Act? Does this particular defendant's past criminal history warrant sentencing at a particular point within the Guideline range? Etc.

We have not for many years in America had the common law scheme where conviction of a particular statutorily-described crime meant the defendant would receive a fixed sentence. Instead, we have had a system with much discretion committed to the sentencing judge.[2] Sometimes the judge must explain how he or she exercised that discretion and sometimes not. But there is always some judgment the judge must make about which sentence to imposed, whether or not it is explained.

Adopting McKnight's reading of *Hurst* would imply that jury sentencing would be constitutionally compelled, and not just in capital cases. *Apprendi's* logic is not confined to capital cases, so that if whatever must be decided by any participant in the system in order to impose a particular sentence is an "element," that question would require a jury verdict.

Certainly that cannot be what the Supreme Court intended in *Hurst*. Justice Breyer in his concurrence adhered to his view that the Eighth Amendment requires jury sentencing in capital cases. *Hurst*, 136 S. Ct. at 624. But that view did not gain a single concurring vote. Because in habeas corpus it is the holdings of the Supreme Court that count, not dicta, it would be strange indeed to declare Ohio's capital sentencing scheme unconstitutional on the basis of a view that received only a concurrence in the judgment.

The Appeal criticizes the decision for not being sufficiently deferential to Ohio court opinions on the similarity of Ohio and Florida capital schemes (Appeal, ECF No. 227, PageID

---
2 Even to the parole board when indefinite sentencing was the norm.

16766, citing *State v. Rogers*, 28 Ohio St. 3d 427 (1986), and *State v. Davis*, 139 Ohio St. 3d 122 (2014)).  Neither one of those cases suggested Ohio's capital sentencing scheme was likely unconstitutional on the basis of *Ring v. Arizona*, 536 U.S. 584 (2002).³  Moreover, the "highly deferential" to state court decisions standard cited from *Woodford v. Visciotti*, 537 U.S. 19 (2002), requires deference to state court decisions made in the case under habeas review, not in state court cases generally.  Finally, the Ohio Supreme Court has expressed its opinion that *Hurst* does not invalidate Ohio's capital sentencing scheme:

> **[\*P59]** Ohio's capital-sentencing scheme is unlike the laws at issue in *Ring* and *Hurst*. In Ohio, a capital case does not proceed to the sentencing phase until *after* the fact-finder has found a defendant guilty of one or more aggravating circumstances. *See* R.C. 2929.03(D); R.C. 2929.04(B) and (C); *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 147. Because the determination of guilt of an aggravating circumstance renders the defendant eligible for a capital sentence, it is not possible to make a factual finding during the sentencing phase that will expose a defendant to greater punishment. Moreover, in Ohio, if a defendant is tried by a jury, then the judge cannot impose a sentence of death unless the jury has entered a unanimous verdict for a death sentence. R.C. 2929.03(D)(2).
>
> **[\*P60]** Federal and state courts have upheld laws similar to Ohio's, explaining that if a defendant has already been found to be death-penalty eligible, then subsequent weighing processes for sentencing purposes do not implicate *Apprendi* and *Ring*. Weighing is *not* a fact-finding process subject to the Sixth Amendment, because "[t]hese determinations cannot increase the potential punishment to which a defendant is exposed as a consequence of the eligibility determination." *State v. Gales*, 265 Neb. 598, 628, 658 N.W.2d 604 (2003); *see, e.g., State v. Fry*, 2006-NMSC-001, 138 N.M. 700, 718, 126 P.3d 516 (2005); *Ortiz v. State*, 869 A.2d 285, 303-305 (Del.2005); *Ritchie v. State*, 809 N.E.2d 258, 268 (Ind.2004). Instead, the weighing process amounts to "a complex moral judgment" about what penalty to

---

3 Note that *Rogers* was decided fourteen years before *Apprendi*.

>impose upon a defendant who is already death-penalty eligible. *United States v. Runyon*, 707 F.3d 475, 515-516 (4th Cir.2013) (citing cases from other federal appeals courts).

*State v. Belton*, ___ Ohio St. 3d ___, 2016-Ohio-1581, 2016 Ohio LEXIS 958 (2016).

In sum, the Magistrate Judge remains of the opinion that *Hurst* does not invalidate Ohio's capital sentencing scheme.

**Retroactivity**

In addition to finding *Hurst* did not create a cognizable claim, the Magistrate Judge also found it was not to be applied retroactively to cases on collateral review. (D&O, ECF No. 222, PageID 16726, relying principally on *Teague v. Lane,* 489 U.S. 288 (1989). *McKnight* had argued *Hurst* was retroactive because the Florida and Delaware Supreme Courts had held that way, but the Decision pointed out that each of those courts relied on a state retroactivity doctrine. *Id.* at PageID 16728.

McKnight notes that other courts besides the Supreme Court have decided in the first instance whether certain of its decisions are to be applied on collateral review.  (Appeal, ECF No. 227, PageID 16770, noting that the Sixth Circuit applied *Johnson v. United States*, 135 S. Ct. 2551 (2015), retroactively in *In re Watkins*, 810 F.3d 375 (6th Cir. 2015)).  The Magistrate Judge agrees that the *Teague v. Lane* question should be decided in the first instance by the lower courts and that is just what has been done here:  The Decision and Order concludes *Hurst* is neither a new substantive rule (ala *Johnson*) nor a new watershed procedural rule (ala, arguably, *Gideon v. Wainwright*, 372 U.S. 335 (1963).  The Supreme Court has never actually found a new procedural rule to be a "watershed" and has frequently refused to do so.

7

McKnight notes the Decision "did not discuss the retroactive applications of Hurst by the Supreme Court of Ohio." (Appeal, ECF No. 227, PageID 16770, citing only one case, *State v. Kirkland*, 145 Ohio St. 3d 1455 (2016)). The entire ruling of the Ohio Supreme Court reads: "On application for reopening under S.Ct.Prac.R. 11.06. Application denied. On motion for order or relief. Motion granted. Cause remanded for new mitigation and sentencing hearing. Pfeifer, O'Donnell, and Kennedy, JJ., dissent and would deny the motion for order or relief." There is no discussion of *Hurst* or *Teague*. How does this Court know that the basis of the decision was *Hurst*? Of what persuasive value on questions of federal constitutional law is a state court decision that does not discuss those questions? How is this Court to square the bar decision in *Kirkland* with the reasoned rejection of *Hurst*'s applicability in *Belton*, *supra*?

The Appeal also asserts the Sixth Circuit has recognized the retroactive application of *Hurst*. (Appeal, ECF No. 227, PageID 16771, citing *Hutton v. Mitchell*, 839 F.3d 486 (6th Cir. 2016)). *Hutton* also contains no discussion of the *Teague* retroactivity question.

The Magistrate Judge remains persuaded that that this Court should decide the retroactivity question in the first instance, but should decide it against McKnight because *Hurst* is neither a new substantive rule or a new watershed rule of constitutional procedure.

March 27, 2017.

s/ *Michael R. Merz*<br>United States Magistrate Judge

\