# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

GREGORY McKNIGHT

:

    Petitioner,                         Case No. 2:09-cv-059

:               District Judge Susan J. Dlott
  -vs-                                    Magistrate Judge Michael R. Merz

DAVID BOBBY, Warden,

:

    Respondent.

## DECISION AND ORDER ON MOTION TO AMEND

This capital habeas corpus case is before the Court on Petitioner's Motion for Leave to File an Amended Petition (ECF No. 271). On the Court's Order to do so, McKnight supplemented his Motion (ECF No. 278). The Warden opposes the Motion (ECF No. 279) and McKnight has filed a Reply (ECF No. 280).

A motion to amend a habeas petition is a non-dispositive pre-trial motion within the decisional authority of a Magistrate Judge. *Monroe v. Houk*, No. 2:07-cv-258, 2016 U.S. Dist. LEXIS 38999 (S.D. Ohio, Mar. 23, 2016)(Sargus, C.J.); *McKnight v. Bobby*, 2017 U.S. Dist. LEXIS 63861 (S.D. Ohio Apr. 27, 2017)(Dlott, D.J.).

28 U.S.C. § 2242 provides that a habeas corpus petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an

1

> opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182. *See also Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997)(citing *Foman* standard).

In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, i.e., if it could withstand a motion to dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.,* 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980); *United States ex rel. Antoon v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 887 (S.D. Ohio 2013)(Rose, J.); *William F. Shea, LLC v. Bonutti Reseach Inc.*, 2011 U.S. Dist. LEXIS 39794, *28 (S.D. Ohio March 31, 2011) (Frost, J.).

Likewise, a motion to amend may be denied if it is brought after undue delay or with dilatory motive. *Foman v. Davis*, 371 U.S. 178 (1962); *Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1259 (6th Cir. 1990); *Bach v. Drerup*, 2012 U.S. Dist. LEXIS 35574, *1 (Ovington, M.J.); *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), cert denied, 517 U.S. 112 (1996)(amendment should be denied if it "is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.").

McKnight proposes to add two new grounds for relief:

> **FORTY-FIFTH GROUND FOR RELIEF:** GREGORY MCKNIGHT'S SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED WHEN AT LEAST ONE JUROR VOTED TO CONVICT MCKNIGHT BASED ON RACIAL ANIMUS AND BIAS.
>
> **FORTY-SIXTH GROUND FOR RELIEF:** GREGORY MCKNIGHT'S SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED WHEN AT LEAST ONE JUROR VOTED FOR DEATH BASED ON RACIAL ANIMUS.

(Proposed Amended Petition, ECF No. 271-1, PageID 17493, 17497.)

Petitioner's proposed new grounds for relief assertedly arise from the Supreme Court's decision last year in *Peña-Rodriguez v. Colorado*, 137 S.Ct. 855, 197 L.Ed. 2d 107 (2017).

The Warden does not contend that amending to add these claims would be futile in the sense that they would fail to state a claim upon which habeas corpus relief could be granted. It is plainly unconstitutional to convict someone and sentence him to death because of his race or on the basis of racial stereotyping.[1]

The Court raised *sua sponte* the question of counsels' diligence in bringing these claims (ECF No. 275). McKnight responded by noting they were brought within one year after the decision in *Peña-Rodriguez*, *supra*. Assuming *arguendo* that the claims arose when the Supreme Court handed down *Peña-Rodriguez* on March 6, 2017, the Motion to Amend beat the statute of limitations by one day. However, the Court does not accept the implication that any habeas claim not barred by the statute of limitations has been brought with due diligence. Here, however, McKnight has explained that the investigation necessary to gather evidence for the claims (by interviewing jurors) did not begin until after *Peña-Rodriguez* was decided and required extensive

---

[1] McKnight pleads these Grounds for Relief under the Sixth, Eighth, and Fourteenth Amendments, but does not explain how the Eighth Amendment is implicated.

3

work (Supplemental Memorandum, ECF No. 278). Faced with that account of the investigation, the Warden raises no lack of diligence defense.

Rather, the Warden contends amendment would be futile because, under *Teague v. Lane*, 489 U.S. 288 (1989), *Peña-Rodriguez* does not apply retroactively to cases pending on collateral review (Warden's Opposition, ECF No. 279). Petitioner disagrees on many bases (Reply, ECF No. 280), each of which will be discussed below.

*Teague* provides that subject to two narrow exceptions, a case that is decided after a defendant's conviction and sentence become final may not provide the basis for federal habeas relief if the case announces a new rule. *Graham v. Collins*, 506 U.S. 461 (1993); *Stringer v. Black,* 503 U.S. 222 (1992); *Teague v. Lane*, 489 U.S. 288 (1989).

The *Teague* analysis is normally a threshold issue, but the nonretroactivity principle is not jurisdictional in the sense that federal courts must raise and decide it *sua sponte*; a federal court may, but need not, decline to apply *Teague* if the State does not argue it. *Caspari v. Bohlen*, 510 U.S. 383 (1994). Here the Warden relied on *Teague* on the first occasion he had to brief the Motion to Amend.

"Two exceptions to the *Teague* rule, however, permit the retroactive application of a new rule whenever: 1) the rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or otherwise prohibits imposition of a certain type of punishment for a class of defendants because of their status or offense; or 2) the rule announces a new "watershed" rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *In re Carl Green,* 144 F.3d 384, 386 (6th Cir. 1998), *citing Caspari v. Bohlen*, 510 U.S. at 396.

McKnight does not contend *Peña-Rodriguez* is retroactive because it creates a new

substantive rule under the first prong of *Teague*. Rather, he contends *Peña-Rodriguez* is not a new rule of criminal procedure at all, but some other kind of rule to which *Teague* does not apply (Supplemental Memorandum, ECF No. 278, PageID 17526-30).

The Court considers first what was actually decided in *Peña-Rodriguez* and then how that decision fits into the *Teague* analysis,

**The *Peña-Rodriguez* Decision**

The Supreme Court heard *Peña-Rodriguez* on certiorari to the Colorado Supreme Court, i.e., on direct review. Miguel Peña-Rodriguez was charged with three counts of sexual misconduct with two female minors. Immediately following discharge of the jury but in the jury room, two jurors told defense counsel that "another juror expressed anti-Hispanic bias toward petitioner and petitioner's alibi witness." 137 S.Ct. at 861. As instructed by the trial judge, counsel obtained affidavits from these two jurors.

> The affidavits by the two jurors described a number of biased statements made by another juror, identified as Juror H. C. According to the two jurors, H. C. told the other jurors that he "believed the defendant was guilty because, in [H. C.'s] experience as an ex-law enforcement officer, Mexican men had a bravado that caused them to believe they could do whatever they wanted with women." *Id*., at 110. The jurors reported that H. C. stated his belief that Mexican men are physically controlling of women because of their sense of entitlement, and further stated, "'I think he did it because he's Mexican and Mexican men take whatever they want.'" *Id.,* at 109. According to the jurors, H. C. further explained that, in his experience, "nine times out of ten Mexican men were guilty of being aggressive toward women and young girls." *Id.,* at 110. Finally, the jurors recounted that Juror H. C. said that he did not find petitioner's alibi witness credible because, among other things, the

5

> witness was "'an illegal.'" *Ibid.* (In fact, the witness testified during trial that he was a legal resident of the United States.)

*Id.* at 862. The trial judge acknowledged that this conduct displayed bias, but refused a new trial on the basis of Colorado Evid. R. 606(b) which "generally prohibits a juror from testifying as to any statement made during deliberations in a proceeding inquiring into the validity of the verdict." *Id.* The Colorado Supreme Court affirmed, relying on *Tanner* v. *United States*, 483 U. S. 107, 107 S.Ct. 2739, 97 L. Ed. 2d 90 (1987), and *Warger* v. *Shauers*, U. S. ___, 135 S.Ct. 521, 190 L. Ed. 2d 422 (2014), which enforced the analogous Fed. R. Evid. 606(b).

Acknowledging that some of the Court's precedents related to anti-Hispanic bias referred to what happened in this case as ethnicity bias and others referred to it as racial bias, Justice Kennedy chose to refer "to the nature of the bias as racial in keeping with the primary terminology employed by the parties and used in our precedents." *Peña-Rodriguez,* 137 S.Ct.at 863.

Justice Kennedy referred to the relevant rule as the "no-impeachment rule" and found its origin in a decision of Lord Mansfield, *Vaise v. Delaval*, 1 T.R. 11, 99 Eng. Rep. 944 (K.B. 1785). Recounting the history of the rule in this country, he noted the federal rule reached virtually its present form when Federal Rules of Evidence enacted in 1975. As to the precise question whether the Constitution might require an exception, he noted that the Court had rejected exceptions in *Tanner* and *Warger, supra*, but in the latter case had reiterated that

> [T]he no-impeachment rule may admit exceptions. As in *[United States v.] Reid* [53 U.S. 361 (1852)] and *McDonald [v. Pless*, 238 U.S. 264 (1915)], the Court warned of "juror bias so extreme that, almost by definition, the jury trial right has been abridged." 574 U. S., at ___-___, n. 3, 135 S.Ct. 521, 529, 190 L. Ed. 2d 422, 432. "If and when such a case arises," the Court indicated it would "consider

6

> whether the usual safeguards are or are not sufficient to protect the integrity of the process.

*Peña-Rodriguez*, 137 S.Ct.at 867.

The Court then held

> [W]here a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee.

*Id.* at 869.

*Peña-Rodriguez* **Announces a New Rule**

A Supreme Court decision announces a new rule where the issue addressed was susceptible to debate among reasonable minds. *Butler v. McKellar,* 494 U.S. 407, 412-415 (1990). A new rule is "a rule that ... was not *dictated* by precedent existing at the time the defendant's conviction became final." *Saffle v. Parks*, 494 U.S. 484, 488 (1990), *quoting Teague v. Lane*, 489 U.S. 288, 301 (1989)(emphasis in original). The Warden's argument that *Peña-Rodriguez* states a "new" rule is persuasive. Certainly the result was not dictated by precedent. As acknowledged in Justice Kennedy's opinion, as recently as *Warger v. Shauers*, ___ U.S. ___, 135 S.Ct. 521, 190 L. Ed. 2d 422 (2014), the Supreme Court had relied on the no-impeachment rule to prevent impeachment of a verdict by a deliberating juror.

Petitioner seems not to contest this point, noting that "[p]rior to *Peña-Rodriguez,* the no-impeachment rule of Rule 606(b) would have prevented the Court['s] considering this information to impeach the jury's verdict." (ECF No. 271, PageID 17485.)

*Peña-Rodriguez* **Announced a Rule of Criminal Procedure**

The *Teague* Court announced two exceptions to its non-retroactivity rule. First are new decisions that place certain primary conduct beyond the power of the state to punish at all or certain offenders beyond the power to the state to punish in certain ways. Second are decisions that announce changes in criminal procedural rules so fundamental as to be labeled "watershed" changes.

McKnight seeks to create a new exception to *Teague* non-retroactivity. He argues *Peña-Rodriguez* is not a new rule of criminal procedure rule because it does not regulate "the manner of determining the defendant's culpability." (Supplemental Memorandum, ECF No. 278, PageID 17526, relying on *Montgomery v. Louisiana,* 136 S.Ct. 718, 730 (2016), quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004).

In *Montgomery* the Court held that its decision in *Miller v. Alabama*, 567 U.S. 460 (2012), that juvenile non-homicide offenders could not be sentenced to life imprisonment without the possibility of parole was a substantive rule because it makes a certain class of offenders ineligible for a certain kind of punishment. Because it was substantive, the States were constitutionally obliged to apply it retroactively to cases on collateral review. In the language relied on by McKnight, Justice Kennedy wrote:

> Procedural rules, in contrast, are designed to enhance the accuracy of a conviction or sentence by regulating "the manner of determining the defendant's culpability." *Schriro*, 542 U.S., at 353, 124 S. Ct. 2519, 159 L. Ed. 2d 442; *Teague, supra*, at 313, 109 S.

8

> Ct. 1060, 103 L. Ed. 2d 334. Those rules "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Schriro, supra*, at 352, 124 S. Ct. 2519, 159 L. Ed. 2d 442. Even where procedural error has infected a trial, the resulting conviction or sentence may still be accurate; and, by extension, the defendant's continued confinement may still be lawful. For this reason, a trial conducted under a procedure found to be unconstitutional in a later case does not, as a general matter, have the automatic consequence of invalidating a defendant's conviction or sentence.

*Montgomery v. Louisiana,* 136 S.Ct. at 730. Thus the purpose of this language was to distinguish between substantive rules which constitutionally must be applied retroactively and procedural rules which need not be. Nothing in *Montgomery* suggests the Supreme Court would recognize a new exception to *Teague* non-retroactivity for rules which are neither substantive nor procedural.

*Schriro v. Summerlin*, 542 U.S. 348 (2004), also provides no support for this new exception. There the Ninth Circuit had applied *Ring v. Arizona*, 536 U.S. 584 (2002), retroactively on habeas corpus to a case that had become final before *Ring* was decided. The Supreme Court reversed, holding retroactive application of *Ring* was not permitted under *Teague*. Nothing in the Court's opinion supports a new exception from *Teague* non-retroactivity for rules like the one announced in *Peña-Rodriguez.*

McKnight's argument is that because *Peña-Rodriguez* comes into play after a verdict, it is not "a procedure under which a trial is conducted" and has "no bearing on the manner of determining a defendant's culpability . . . ." On the contrary, the *Peña-Rodriguez* rule is entirely in the service of eliminating racial bias in determining culpability. If it has its intended effect, it will prevent jurors from hearing racist diatribes about defendants or witnesses from one another. An appropriate analog would be *Batson v. Kentucky*, 476 U.S. 79 (1986), which provides a pre-

9

trial[2] procedure for eliminating race-based peremptory challenges to jurors. In *Beard v. Banks*, 542 U.S. 406 (2004), the Supreme Court held *Batson* was not to be applied retroactively. *Batson* regulates the conduct of voir dire, before trial starts. *Peña-Rodriguez* regulates the procedure for conducting motions for new trial after verdict. Neither *Batson* nor *Peña-Rodriguez* regulates the conduct of trial between the swearing of the jury and its discharge after verdict or mistrial. But both are intended to protect the integrity of the jury system by preventing verdicts based in any way on race.

In *Montgomery*, Justice Kennedy acknowledged the impact of Justice Harlan's retroactivity analysis on the *Teague* Court. That analysis was first announced in full in Harlan's concurring opinion in *Mackey v. United States*, 401 U.S. 667 (1971). In *Mackey*, Harlan regretted his concurrence in *Linkletter v. Walker*, 381 U.S. 618 (1965), noting that it had brought no coherence to retroactivity doctrine and "the subsequent course of *Linkletter* became almost as difficult to follow as the tracks made by a beast of prey in search of its intended victim." *Mackey*, 401 U.S. at 676. He asserted that the choice of appropriate constitutional law to apply in a habeas case depended "in the first instance of the nature, function, and scope of the adjudicatory process in which such cases arise." *Id.* at 682.

> Habeas corpus always has been a *collateral* remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review. The interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further judicial revision, may quite legitimately be found by those responsible for defining the scope of the writ to outweigh in some, many, or most instances the competing interest in readjudicating convictions according to all legal standards in effect when a habeas petition is filed. Indeed, this interest in finality might well lead to a decision to exclude completely certain legal issues, whether or not properly

---

[2] *Batson* is applied during voir dire, before Double Jeopardy attaches when the trial starts by swearing the jury.

> determined under the law prevailing at the time of trial, from the cognizance of courts administering this collateral remedy. This has always been the case with collateral attacks on final civil judgments.

*Id.* at 682-83. In light of the nature of habeas, he laid out what he believed was the appropriate scope for retroactive application of new rules in habeas: they should apply when they are new "substantive due process rules" and when they command a procedure "implicit in the concept of ordered liberty." *Id.* at 693, citing *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)(Cardozo, J.). With slight modification, the Court adopted Harlan's approach in *Teague*.

McKnight's argument here rests on recognizing a new category of retroactive criminal rules for which there is no support in federal law. He cites no case in which any federal court had recognized this new "criminal procedure that is not trial procedure" category. Moreover, adopting it would seriously undermine the binary division of new constitutional rules that underlies Justice Harlan's analysis that brought coherence to retroactivity doctrine. McKnight's argument is unsupported by precedent or policy.

*Peña-Rodriguez* Announced a Constitutional, Not an Equitable, Rule

As an alternative to his proposed new exception to non-retroactivity, McKnight asserts *Peña-Rodriguez* adopts a new equitable rule rather than a new constitutional rule, analogizing *Peña-Rodriguez* to *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013).

McKnight is correct that *Martinez* and *Trevino* rest on the Supreme Court's equitable powers: the Court was very careful not to announce a new constitutional entitlement to effective assistance of counsel in post-conviction proceedings. But McKnight offers no textual proof that

11

the *Peña-Rodriguez* Court was exercising its equitable powers. Indeed, the very language McKnight quotes from *Peña-Rodriguez* belies that analysis: "A **constitutional** rule . . . is necessary . . . ." (ECF No. 278, PageID 17528, quoting *Peña-Rodriguez*, 137 S.Ct. at 869 (emphasis supplied).) In order to reach the decision it did in *Peña-Rodriguez,* the Supreme Court had to rely on the Constitution because the decision it was reviewing applied Colorado law despite a federal constitutional objection to that application.

*Peña-Rodriguez* is Not a "Watershed" Rule of Criminal Procedure

Alternatively, McKnight seeks to bring himself within the *Teague* exception for "watershed" new rules of criminal procedure (ECF No. 278, PageID 17530). As he acknowledges, since *Teague* the Supreme Court has never found such a new rule to meet that standard. *Whorton v. Bockting*, 549 U.S. 406 (2007). As of February 28, 2007, the date *Whorton* was decided, the only rule the Supreme Court has identified as qualifying under the "watershed" exception is that adopted in *Gideon v. Wainwright,* 372 U.S. 335 (1963). While the new rule adopted in *Peña-Rodriguez* is clearly important, it pales in significance to *Gideon*. As noted above, the Supreme Court declined to apply *Batson* retroactively, although it undercut the traditional "peremptory" nature of peremptory challenges.

In arguing for retroactive application of *Peña-Rodriguez*, McKnight relies on *Tharpe v. Sellers*, 138 S.Ct. 545, 199 L. Ed. 2d 424 (2018). In a *per curiam* GVR decision in that case, the Supreme Court granted Tharpe a certificate of appealability that had been denied by the Eleventh Circuit without citing *Peña-Rodriguez.* Justice Thomas in dissent thought that "no reasonable jurist could argue that *Peña-Rodriguez* applies retroactively on collateral review." *Id.* at 551.

12

Perhaps the majority disagreed, but it did not say so. Perhaps the majority wanted the Eleventh Circuit to decide retroactivity in the first instance. Perhaps the *Teague* issue did not occur to the majority despite the dissent. Perhaps the majority's inadvertence parallels that of the Sixth Circuit: without discussing *Teague*, the Sixth Circuit applied *Hurst v. Florida*, 577 U.S. ___, 136 S.Ct. 616 (2016), retroactively in *Hutton v. Mitchell*, 839 F.3d 486 (2016), but was itself reversed GVR in *Jenkins v. Hutton*, 582 U.S. ___, 137 S.Ct. 1769 (2017). What *Tharpe* means for *Peña-Rodriguez* retroactivity therefore remains to be seen.

**Allowing the Ohio Courts to Decide Retroactivity in the First Instance**

If this Court rejects his arguments about *Teague* nonretroactivity, McKnight wants us to "permit the state court to address the retroactivity of *Peña-Rodriguez* in the first instance." (ECF No. 278, PageID 17530.)

In part, McKnight expresses his hope that the Ohio courts will grant broader retroactivity under Ohio law than the federal courts, which the Constitution does not prohibit. *Danforth v. Minnesota*, 552 U.S. 264 (2008). In part he also relies on federal exhaustion doctrine for the proposition that state courts should be given a first opportunity to review his federal claim that *Peña-Rodriguez* is retroactive. (ECF No. 278, PageID 17531, citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 846-7(1999).)

In order to obtain this first state review, McKnight says he will file a motion to hold this case in abeyance while he exhausts this claim. *Id.* This is the same litigation strategy evinced by the Ohio capital habeas bar in general in their attempts to have capital habeas cases stayed while the Ohio courts decided the retroactivity of *Hurst*. Judges of this Court uniformly rejected that

13

approach: *Smith v. Pineda*, Case No. 1:12-cv-196, 2017 WL 631410 (S.D. Ohio Feb. 16, 2017); *Henness v. Warden*, Case No. 2:14-cv-2580, 2017 WL 749198 (S.D. Ohio Feb. 27, 2017); *Gapen v. Bobby*, Case No. 3:08-cv-280, 2017 U.S. Dist. LEXIS 130755 (S.D. Ohio Aug. 15, 2017); *Campbell v. Jenkins*, Case No. 2:15-cv-1702, 2017 U.S. Dist. LEXIS 130803 (S.D. Ohio Aug. 16, 2017); *McKnight v. Warden*, Case No. 2:09-cv-59, 2017 WL 631411 (S.D. Ohio Feb. 15, 2017); *Chinn v. Jenkins*, Case No. 3:02-cv-512, 2017 WL 631412 (S.D. Ohio Feb. 13, 2017); *Davis v. Bobby*, Case No. 2:10-cv-107, 2017 U.S. Dist. LEXIS 157948 (S.D. Ohio Sept. 25, 2017); see also *Lindsey v. Jenkins,* No. 1:03-cv-702 (S.D. Ohio Sept. 25, 2017)(Sargus, J.); *Twyford v. Bradshaw,* No. 2:03-cv-906 (S.D. Ohio Sept. 12, 2017)(Marbley, J.); *Myers v. Bagley,* No. 3:04-cv-174 (S.D. Ohio, Sept. 12, 2017)(Marbley, J.); *Robb v. Ishee*, No. 2:02-cv-535 (S.D. Ohio, Sept. 12, 2017)(Marbley, J.), including in this very case. The Sixth Circuit also found *Hurst* was not retroactive without suggesting the question should first have been put to the state courts. *In re Coley*, 871 F.3d 455 (6th Cir.2017).

It would be premature to decide now a motion to stay which has not yet been filed. However, the in authorizing such stays in *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court noted "[s]taying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of federal proceedings. *Id*. at 277-78. In initially moving to amend, McKnight's counsel asserted "the case is still in its early stages." (ECF No. 271, PageID 17485). The case has been pending for almost ten years. In January 2016 the Magistrate Judge advised the parties he regarded the case as ripe for decision (ECF No. 196). All activity in the case since then has involved proposed new claims. This state of the docket raises serious questions about whether further delay is warranted.

**Conclusion**

Based on the foregoing analysis, the Motion for Leave to Amend is DENIED.

May 22, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge
