# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

GREGORY McKNIGHT

           Petitioner,

:

Case No. 2:09-cv-059

:

District Judge Susan J. Dlott
Magistrate Judge Michael R. Merz

-vs-

DAVID BOBBY, Warden,

:

           Respondent.

---

# DECISION AND ORDER

---

This capital habeas corpus case was referred to Magistrate Judge Michael R. Merz pursuant to Fed.R.Civ.P. 72 pursuant the General Order of Reference for habeas corpus cases at the Columbus location of Court when this case was filed.  It is before the Court on Petitioner's Objections (Doc. 342) to the Magistrate Judge's Report and Recommendations (the "Report," Doc. 332) to dismiss McKnight's amended Petition (Doc. 127).  As permitted by Fed.R.Civ.P. 72, the Warden has responded to McKnight's Objections (the "Response," Doc. 348).

The Court has reviewed the findings and conclusions of the Magistrate Judge and has considered *de novo* all of the filings in this case with particular attention to the issues as to which Petitioner has lodged objections.  Having done so, the Court determines that the Magistrate Judge's recommendations should be adopted.

## I.  BACKGROUND

McKnight was tried and convicted of the aggravated murder of Emily Murray while committing a kidnapping, kidnapping, aggravated robbery, and the murder of Gregory Julious.

1

(State Court Record, Doc. 105-26, PageID 7332–7340; Doc. 106-13, PageID 9287–9291). On direct appeal, the Ohio Supreme Court wrote:

***State's Case***

> {¶ 2} During early 2000, Julious lived with his girlfriend, Dana Bostic, at her home in Chillicothe. At the time, [McKnight] was dating Lisa Perkins, who was a friend of Bostic's. [McKnight] became acquainted with Julious by visiting Perkins at Bostic's home.

> {¶ 3} On Friday, May 12, 2000, at around 4:00 p.m., Bostic returned home from work and found [McKnight], Julious, and her daughter in the kitchen. Julious was wearing only boxer shorts. Bostic then left the house with her daughter to pick up her son.

> {¶ 4} When Bostic returned after approximately one hour, [McKnight] and Julious were no longer at the house. Bostic testified, "The door was unlocked. There was [sic] candles still burning, * * * and it was like he just ran out for a minute and he was coming right back." Moreover, Julious's belongings, including his clothes, personal hygiene products, and his identification card, were still in the house.

> {¶ 5} When Julious did not return home, Bostic called [McKnight] on his pager. Later that night, [McKnight] returned Bostic's call and put Julious on the phone. Julious told Bostic that "he was in Columbus at McKnight's friend's house and they were getting ready to go to a [sic] OSU block party and he would be home." Bostic described the conversation as "very unusual" because Julious "didn't let [her] ask him anything else" and abruptly ended the conversation. Bostic never saw or talked to Julious again.

> {¶ 6} In June 2000, [McKnight] and his wife, Kathy McKnight, acquired a trailer in a rural area near Ray, Ohio. [McKnight] and Kathy moved their belongings into the trailer, but they did not move in. Instead, they moved to the home of Kathy's mother, in Gambier.

{¶ 7} In late September or early October 2000, [McKnight] was hired as a kitchen worker at the Pirate's Cove restaurant in Gambier. [McKnight] was friendly with his co-workers, and they would sometimes give him rides to his Gambier home after work.

{¶ 8} Emily Murray, a Kenyon College student, was a part-time waitress at the Pirate's Cove. Murray lived in a Kenyon College dormitory approximately 100 yards from the Pirate's Cove, and she drove her mother's Subaru Outback at Kenyon.

{¶ 9} On November 2, 2000, Murray quit her job and spent her last evening working at the Pirate's Cove. Several college friends visited Murray at the Pirate's Cove to help celebrate her last night at work, but her friends left before Murray finished work.

{¶ 10} [McKnight] also worked at the Pirate's Cove on the evening of November 2. Time cards showed that Murray finished work at 3:07 a.m. and [McKnight] finished work at 2:59 a.m. on November 3. Nathan Justice, the bartender at the Pirate's Cove, saw Murray looking for her keys before 3:30 a.m. No one at the Pirate's Cove recalls seeing Murray and [McKnight] leave together.

{¶ 11} Murray never returned to sleep in her dormitory room, and she failed to appear at a party on the evening of November 3. This absence concerned Murray's friends because Murray had not left a message regarding her whereabouts and they could not find Murray's Subaru Outback on campus or in Gambier.

{¶ 12} After an unsuccessful search for Murray, her friends notified Murray's family and Kenyon College Security. A search of Murray's dormitory room by Murray's friend, Abigail Williams, produced Murray's wallet, which contained her Ohio and New York driver's licenses, credit cards, and bank card.

{¶ 13} On Sunday evening, November 5, Williams talked to [McKnight] about Murray's disappearance. [McKnight] said that he had worked that night but "left well before she did * * * [and] that he was not there so he could see her leave." According to Williams, [McKnight] was "very curt" and "[they] didn't get any

information. He just kind of smirked" at them. A short time after Murray disappeared, [McKnight] told Nate Justice that "[h]e felt that [Murray] was probably dead."

{¶ 14} On December 9, 2000, Vinton County Sheriff's Chief Deputy Charles Boyer and Deputy Matt Kight went to [McKnight]'s trailer to serve an unrelated indictment on him, but [McKnight] was not there. Deputy Kight ran a license check on a vehicle on the property and learned that the Subaru Outback parked behind the trailer was associated with the disappearance of Emily Murray.

{¶ 15} After obtaining a search warrant, law enforcement entered [McKnight]'s trailer and found bloodstains on the carpet near the front door. Police followed a trail of blood down the hallway and discovered Murray's clothed body wrapped inside a carpet in the spare bedroom.

{¶ 16} During the search, Special Agent Gary Wilgus, a crime-scene investigator with the Ohio Bureau of Criminal Identification and Investigation, found a copper bullet jacket near the bloodstained carpet in the living room. A bullet hole was found in the area of the bloodstained carpet, but investigators did not find the bullet that went through the floor. Additionally, police found five spent .357 shell casings inside a drawer in the living room, seven nine-millimeter bullets inside a drawer in the master bedroom, and a roll of bloodstained duct tape in the living room.

{¶ 17} Investigators searching the property found human bones and clothing in the cistern, the root cellar, and in a plastic bag. Police discovered that a fire had been started in the root cellar, and they recovered burned bones and pieces of clothing. The skeletal remains included most of the bones from a single human, but only six skull fragments were found. Dr. Nancy Tatarek, a forensic anthropologist, concluded that the remains were from an African–American male who was 20 to 25 years of age and six feet to six feet, six inches tall.

{¶ 18} The police identified the remains as those of Gregory Julious. Dr. Franklin Wright, a forensic dentist, positively matched

4

the teeth and jawbone found on [McKnight]'s property with Julious's dental records. Bostic also identified the remains of boxer shorts found in the cistern as those Julious was wearing the day he disappeared. Kim Zimmerman, [McKnight]'s brother-in-law, had given police a bloodstained backpack that he had taken from the trailer's living-room closet.

{¶ 19} Police searched the vehicle that [McKnight] was driving when Julious disappeared, and they discovered bloodstains on the carpet underneath the rear seat. Subsequent DNA analysis showed that the "DNA from the * * * carpet [was] consistent with the DNA profile from Gregory L. Julious." According to Diane Larson, a DNA serology analyst, the "chance of finding the same DNA profile in the population is * * * approximately 1 in 50 trillion people for the Caucasian population, one in 177 trillion in the African–American population, and 1 in 51 trillion in the Hispanic population."

{¶ 20} Inside [McKnight]'s Gambier home, police found an empty box of Winchester .357 magnum cartridges underneath the bed in the master bedroom, two .30 caliber bullets in the master-bedroom closet, and four nine-millimeter bullets in the basement. Police also learned that [McKnight] had purchased three handguns from two gun shops before the murders: a Jennings nine-millimeter semiautomatic pistol purchased on February 17, 1999, an Intratec nine-millimeter pistol purchased on April 24, 1999, and a Jennings .380 caliber semiautomatic pistol bought on May 24, 2000.

{¶ 21} Dr. Dorothy Dean, Deputy Coroner for Franklin County, found that Murray had died from a single "gunshot wound to the head." Murray was shot with a high-powered weapon, and the gun was "very, very close or touching her skin" when fired.

{¶ 22} Dr. Tatarek found that the condition of the skull fragments of Julious were "consistent with an injury by gunshot." She also found evidence of trauma to the vertebra "caused by some sort of sharp object penetrating the person's neck and cutting into the bone." Moreover, trauma to two hand bones was "consistent [with] defense wounds." Dr. Tatarek also found trauma around joints "consistent with dismemberment of a person." The condition of the

skeletal remains placed the date of death within a three- to six-month time frame that included May 12, 2000.

{¶ 23} Diane Larson concluded that the DNA profile from the bullet jacket found in [McKnight]'s trailer was consistent with Murray's DNA profile. The odds that the DNA from the bullet jacket was from someone other than Murray were one in 646 billion for the Caucasian population. Larson also found that the bloodstains on the backpack and duct tape matched Julious's DNA profile. The odds that the DNA from bloodstains on the backpack was from someone other than Julious were one in 64 quadrillion for the African–American population.

{¶ 24} Heather Zollman, a firearms expert, compared a bullet taken from a tree behind the trailer and the bullet jacket from inside the house and concluded that they were "fired [from] the same firearm." Zollman described each as a "Remington brand 180 gram .357 magnum semi-jacketed hollow-point bullet." She could not determine the caliber of the bullet removed from Murray's body. Nevertheless, Zollman concluded that the lead was "consistent with having come from the bullet." Gunpowder on the surface of the bullet fragment was also "the same type of style of flattened ball powder that is loaded by Remington in these .357 magnum cartridges."

***Defense's Case***

{¶ 25} The defense called one witness. Donald Doles, a Vinton County neighbor of [McKnight], [who] testified that twice during the fall of 2000, he had observed a woman who looked like Emily Murray drive past his house in a Subaru Outback with New York license plates. When she drove past on one occasion, Doles was only ten or 12 feet away from the car when "she turned around and looked at [him] and smiled and waved." During cross-examination, Doles did not recognize Murray's picture, and he said that he was not 100 percent certain that the woman driving past his house was Murray.

***Indictment and Trial Result***

6

{¶ 26} The grand jury indicted [McKnight] on one count of aggravated murder and one count of murder. Count 1 charged appellant with the aggravated murder of Murray while committing a kidnapping, Count 2 charged kidnapping, and Count 3 charged aggravated robbery. Count 6 charged [McKnight] with the murder of Julious. Additionally, [McKnight] was indicted for tampering with evidence in Counts 4 and 7 and gross abuse of a corpse in Counts 5 and 8. Prior to trial, Counts 4, 5, 7, and 8 were dismissed.

{¶ 27} The aggravated-murder count contained four death-penalty specifications: murder to escape detection, apprehension, trial, or punishment for another offense, pursuant to R.C. 2929.04(A)(3); murder as a "course of conduct" in killing two or more people, pursuant to R.C. 2929.04(A)(5); murder while committing or attempting to commit kidnapping, pursuant to R.C. 2929.04(A)(7); and murder while committing or attempting to commit aggravated robbery, pursuant to R.C. 2929.04(A)(7). The indictment also contained a firearm specification.

{¶ 28} [McKnight] pleaded not guilty to all charges. The jury found [McKnight] guilty of Counts 1, 2, 3, and 6, and he was sentenced to death.

*Ohio v. McKnight*, 107 Ohio St. 3d 101, 2005-Ohio-6046 (2005).

On direct appeal to the Ohio Supreme Court, McKnight raised thirty propositions of law (Report, Doc. 332, PageID 18012 (citing State Court Record, Doc. 106-14, PageID 9426 to Doc. 106-15, PageID 9662)). The Ohio Supreme Court rejected all thirty propositions and, after an independent evaluation and proportionality review, affirmed McKnight's convictions and death sentence. *McKnight*, 2005-Ohio-6046, ¶ 335. The United States Supreme Court denied certiorari. *McKnight v. Ohio*, 548 U.S. 912 (2006).

While litigating his direct appeal, McKnight filed a counseled postconviction petition in the Vinton County Court of Common Pleas, ultimately raising fifteen grounds for relief (Report, Doc. 332, PageID 18012, (citing State Court Record, Doc. 107-6 to 107-8, PageID 10470–

7

10500, Doc. 108-1, 10666–10682, Doc. 108-5, PageID 10939–10357)). The trial court denied

relief on all fifteen grounds. After a brief remand to the trial court to correct a procedural error,

the Fourth District Court of Appeals affirmed the denial. *Ohio v. McKnight*, 2008-Ohio-2435

(Ohio App. 4th Dist. May 19, 2008), *appeal not allowed at* 119 Ohio St. 3d 1487 (2008).

On October 14, 2009, McKnight filed his Petition raising forty-two claims for relief,

including Claims Forty-One and Forty-Two, challenging Ohio's lethal injection method of

execution (Doc. 9). McKnight subsequently filed a Supplemental Petition (Doc. 241, as

amended Doc. 251), raising two additional method of execution claims (Claims Forty-Three and

Forty-Four) and amending Claims Forty-One and Forty-Two. On Motion by the Warden (Doc.

257), the Court dismissed Petitioner's forty-first, forty-second, forty-third, and forty-fourth

claims for relief without prejudice to their inclusion in a separate action under 42 U.S.C. § 1983

(Order, Doc. 266).

On September 14, 2020, the Magistrate Judge recommended that all of McKnight's

claims be dismissed because they were either procedurally defaulted or without merit. (Report,

Doc. 332). As more fully discussed below, McKnight timely objected to the Report and

Recommendation in its entirety. (Objections, Doc. 343).

## II.     STANDARDS OF LAW

### A.     Procedural Default

Federal courts may not consider the merits of procedurally defaulted claims, unless the

petitioner demonstrates cause for the default and resulting prejudice resulting or that failing to

review the claim would result in the fundamental miscarriage of justice by convicting an actually

innocent person. *Williams v. Anderson*, 460 F.3d 789, 805–806 (6th Cir. 2006) (citing *Lundgren

v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006)). "A claim may become procedurally defaulted in

8

two ways." *Id.* at 806. First, a claim is procedurally defaulted where state-court remedies have

been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment

declines to reach the merits because of a petitioner's failure to comply with a state procedural

rule. *Id.* Second, a claim is procedurally defaulted where the petitioner failed to exhaust state

court remedies, and the remedies are no longer available at the time the federal petition is filed

because of a state procedural rule. *Id.*; *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013).

In recognition of the equal obligation of the state courts to protect the constitutional rights

of criminal defendants, and in order to prevent needless friction between the state and federal

courts, a state criminal defendant with federal constitutional claims is required to first present

those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails

to do so, but still has an avenue open to present the claims, then the petition is subject to stay

pending exhaustion. *Rhines v. Weber*, 544 U.S. 269 (2005). Where a petitioner has failed to

exhaust claims but would find those claims barred if later presented to the state courts, "there is a

procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735

n.1 (1991).

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court.

To fairly present a claim, a petitioner must assert both the *legal* and factual basis of his or her

claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must

present his claim to the state courts as a federal constitutional issue-not merely as an issue arising

under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take

four actions in his brief which are significant to the determination as to whether a claim has been

fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing

constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis;

(3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Williams*, 460 F.3d at 806; *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017).

Under the independent and adequate state ground doctrine, a federal habeas claim is procedurally defaulted when: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc). The second prong of this test requires that the state courts "actually enforce[ ]" the state procedural rule in denying relief. *Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). In other words, "it is not sufficient that the state court *could* have applied a procedural default under state law; it must actually have done so." *Skipper v. French*, 130 F.3d 603, 609 (4th Cir. 1997) (citing *Caldwell v. Mississippi,* 472 U.S. 320, 327 (1985)).

In order to establish cause, a petitioner must show that "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)). Procedural default may also be excused if a petitioner can show, by a preponderance of the evidence, that he is "actually innocent," such that "a court cannot have confidence in the outcome of the trial[,]" *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001) (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)), and thus, his conviction constituted a

10

"fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 515. Finally, as a procedural default is not an adjudication on the merits, if a petitioner can successfully set aside such a default, then this Court must review the claim *de novo*. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

### B. Merits Review

In analyzing McKnight's petition for a writ of habeas corpus, the Court is bound by the standard of review enacted in the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214) (the "AEDPA"). The Court may grant the writ on a claim adjudicated on the merits in a state court proceeding only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or involved an "unreasonable application of such law," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1); (d)(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams v. Taylor*, 529 U.S. 362, 379 (2000).

To determine whether the state courts decided an issue on the merits, the district court looks to the opinion of "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) (quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 364–365. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the

11

correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* at 407.

In other words, to obtain relief on his petition, McKnight must identify the "clearly established" legal principle on which he relies. To qualify as "clearly established," a principle must originate from an actual Supreme Court holding, not from dictum. *See White v. Woodall*, 572 U.S. 415, 419 (2014). McKnight also must describe this holding with specificity. *See Brown v. Davenport*, 596 U.S. ___, 142 S. Ct. 1510, 1525 (2022). He cannot recite a holding at a "high level of generality." *Lopez v. Smith*, 574 U.S. 1, 6–8 (2014) (per curiam) (citation omitted); *Metrish v. Lancaster*, 569 U.S. 351, 367–368 (2013). Circuit precedent cannot turn "a general principle of Supreme Court jurisprudence into a specific legal rule" that has not been stated by the Supreme Court. *Lopez*, 574 U.S. at 7 (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)).

If relying on the "unreasonable application" clause, McKnight next must show that the state court engaged in an "unreasonable application" of clearly established law. Under this test, a federal court's belief that a state court committed an error when applying a legal principle to the facts of a case does not suffice. Rather, the federal district court must be able to describe the state court's application as "objectively unreasonable[.]" *White*, 572 U.S. at 419, (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). To warrant that description, a state court must have committed "an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

McKnight faces an additional hurdle if he alleges a trial court error that the state court subjected to harmless error review. Under these circumstances, a federal court cannot grant habeas relief without applying both the test outlined in *Brecht v. Abrahamson*, 507 U.S. 619

12

(1993), and the deferential review required by AEDPA. *Brown*, 142 S. Ct. 1510. *Brecht* requires a state prisoner seeking to challenge his conviction in collateral federal proceedings to show that the error had a "substantial and injurious effect or influence" on the outcome of his trial. 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A "substantial or injurious effect or influence" means "actual prejudice." *See id.* at 637–638. A "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Brown*, 142 S. Ct. at 1524. To succeed on any of his trial error claims, McKnight must convince this federal habeas court that there is grave doubt about his verdict *and* demonstrate that every fair-minded jurist would agree that the error was prejudicial. *Id.* at 1525.

As discussed in detail below, because these standards foreclose McKnight's claims, his objections are overruled.

## III. DISCUSSION

### Claim One

In Claim One, McKnight asks the Court to review the trial court's denial of his motion to suppress the warrant obtained to search his trailer, alleging that it was based on information the averring officer knew to be false. (Petition, Doc. 127, PageID 15668–15675). As explained by the Magistrate Judge in the Report and Recommendations, "where the State has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465 (1976) (footnotes omitted). McKnight dedicates his objection to the adequacy of the procedure that the state court afforded him for adjudicating his Fourth Amendment claim. However,

13

clearly established precedent explains, *Powell*'s "'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Consequently, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.*

McKnight argues that *Stone v. Powell* does not preclude his claim because the trial court erroneously denied his request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (holding that the defendant is entitled to a hearing when he makes a substantial preliminary showing that the police officer included—knowingly and intentionally, or with reckless disregard for the truth—in the warrant affidavit a false statement that was necessary to the finding of probable cause). McKnight contends "[t]he record clearly demonstrates that the affidavit that Boyer used to obtain the search warrant contained patently false information, and that Boyer was aware that the affidavit was factually inaccurate." (Objections, Doc. 343, PageID 18254.) In *Rooks v. Brewer*, the Sixth Circuit rejected the argument that habeas relief was obtainable for denial of a *Franks* hearing, finding that Rooks was provided with an "available avenue" to litigate the validity of the search warrant. No. 18-1224, 2018 WL 4178849, at *1 (6th Cir. May 2, 2018). Quoting *Stone*, the Sixth Circuit held that "[r]easonable jurists would not debate that Rooks received 'the opportunity for full and fair consideration' in state court." *Id.* (quoting 428 U.S. at 486).

By contending *Stone* does not bar relief, McKnight is asking this Court to question the adequacy of the state court procedures used to adjudicate his Fourth Amendment claim. However, the *only* relevant question for this Court is whether McKnight was provided an

14

opportunity to present his Fourth Amendment claim to the Ohio state courts.  He presented his claim to the trial court during a suppression hearing, and again to the Ohio Supreme Court on direct appeal.  He raised the claim again in state postconviction proceedings and the Fourth District Court of Appeals examined the merits despite finding that the claim was barred by *res judicata.  McKnight*, 2008-Ohio-2435, ¶¶ 62–63.  Thus, the Magistrate Judge correctly concluded that McKnight was not denied a fair opportunity to present his claim in state court and as a result, his Fourth Amendment claim is not cognizable in habeas corpus.

To the extent McKnight objects because the state court should have suppressed the search warrant, *Stone v. Powell,* precludes relief.

> Under *Stone* the correctness of the state courts' conclusions is simply irrelevant. The courts that have considered the matter "have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar." An argument directed solely at the correctness of the state court decision "goes not go to the fullness and fairness of his opportunity to litigate the claim [s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant." … "'[F]ull and fair' guarantees the right to present one's case, but it does not guarantee a correct result."

*Beechler v. Timmerman-Cooper*, No. 2:11-CV-696, 2012 WL 524440, at *15 (S.D. Ohio Feb. 16, 2012), *report and recommendation adopted,* 2012 WL 871205 (S.D. Ohio Mar. 13, 2012) (internal citations omitted).

Nor may McKnight obtain habeas review of his Fourth Amendment claim by restyling it as a violation of the Fifth, Sixth, and Eighth Amendments. As the Magistrate Judge noted, McKnight's presentation of the claim before the Ohio courts would not have indicated to a reasonable jurist that he was raising anything other than a Fourth Amendment claim applicable to the state through the Fourteenth Amendment.  (Report, Doc. 332, PageID 18031–18032).  Any similarity between the facts and law presented to the state courts in connection with McKnight's

Fourth Amendment claim and the arguments presented to this Court in connection with his Fifth, Sixth, and Eighth Amendment claims, is insufficient to have exhausted anything other than a Fourth Amendment claim. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (The exhaustion requirement is not met when a petitioner asserts new legal theories or factual claims for the first time on habeas review).

### Claims Two, Three, and Four

McKnight contends that he was deprived of a fair trial because the trial court denied his request for a change of venue due to extensive pre-trial media coverage (Claim Two), the trial court failed to *sua sponte* order a change of venue based on the "pervasive racial bias in Vinton County" (Claim Three), and the trial court failed to provide him with an expert to conduct a scientific jury survey that he needed for his motion for change of venue to succeed (Claim Four). (Petition, Doc. 127, PageID 15675–15698).

McKnight raised Claim Two on direct appeal. The Ohio Supreme Court found that McKnight failed to demonstrate that he was prejudiced by any pretrial publicity. *McKnight*, 2005-Ohio-6046, ¶ 62. The Magistrate Judge concluded that McKnight had not shown that the state court's rejection of his pre-trial publicity claim was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. Specifically, the Magistrate Judge concluded that the pretrial publicity in McKnight's trial was materially distinguishable from the extreme circumstances in cases where the Supreme Court has presumed prejudice. (Report, Doc. 332, PageID 18039–18041).

McKnight raised Claim Three in postconviction proceedings, asserting that the trial court should have *sua sponte* ordered a change of venue based on the racial animus of Vinton County. The Court of Appeals found that Claim Three was barred by *res judicata* because McKnight did

not present any supporting evidence that was unavailable at the time of his trial or appeal. Alternatively addressing the merits, the Fourth District concluded that, to the extent McKnight claimed his jury violated the Sixth Amendment's "fair cross section" requirement, he failed to show black citizens were systematically excluded from the jury pool. The Court of Appeals further concluded that McKnight failed to produce any evidence showing that racial bias affected the outcome of the trial or sentencing. *McKnight*, 2008-Ohio-2435, ¶¶ 33–37.

The Magistrate Judge determined that the Court of Appeals misapplied the doctrine of *res judicata* when addressing Claim Three because demographic information was not part of the trial record and was therefore unavailable to counsel on direct appeal. (Report, Doc. 332 at PageID 18042–18044 (citing *McKnight*, 2008-Ohio-2435, ¶¶ 89–93)). The Magistrate Judge also concluded that the Court of Appeals' alternative merits adjudication was not contrary to federal law. Relying on the same reasons for denying the associated ineffective assistance claim (Claim Twenty-Six), the Magistrate Judge concluded that McKnight had not shown that prospective black jurors were systematically excluded from the venire. (*Id.* at PageID 18153–18154). The Magistrate Judge also concluded that the overall population demographics of the county were insufficient to prove that the jury was not fair and impartial and that the racial bias expressed by two jurors during *voir dire* was also insufficient because the jurors did not serve, and their comments were not heard by the other members of the venire. (*Id.* at 18154–18155).

McKnight raised Claim Four on direct appeal. The Ohio Supreme Court found that the trial court's denial of McKnight's request for a scientific jury survey was not error because McKnight failed to meet Ohio state law requirements for expert funding and because "comprehensive voir dire examination of the seated jurors about pretrial publicity negated any need for a scientific jury survey of public opinion within Vinton County." *McKnight*, 2005-

17

Ohio-6046, ¶ 66. The Magistrate Judge recommended dismissal of Claim Four because the motion for a scientific survey was skeletal, with little reasoning and no supporting evidence, and because McKnight failed to explain why *voir dire* would not adequately function to identify any negative influence on prospective jurors from pre-trial publicity. (Report, Doc. 332, PageID 18045–18046).

McKnight objects to the dismissal of Claim Two on the basis that his pre-trial publicity claim lacked merit, reiterating arguments previously presented in his Traverse and considered by the Magistrate Judge that the state court unreasonably applied federal law when it did not presume prejudice based on evidence of the extensive pre-trial publicity. (Objections, Doc. 343, PageID 18256–18257). He argues that the Ohio Supreme Court's rejection of his claim was based on an unreasonable determination of the facts because the jury questionnaires and *voir dire* transcript illustrated that "the media publicity deeply penetrated the jury pool." (*Id*. at PageID 18258).

McKnight disagrees with the conclusion reached by the state court, but his claim does not meet the standard for habeas relief. The Ohio Supreme Court identified the correct United States Supreme Court standard for presumption of prejudice from pretrial publicity and acknowledged that cases meeting the standard are rare. That court went on to examine the circumstances surrounding McKnight's trial and concluded that he was not actually prejudiced by the pretrial publicity. *McKnight*, 2005-Ohio-6046, ¶ 61–64.

McKnight has failed to show that the Ohio Supreme Court's dismissal of Claim Two was "objectively unreasonable" or "an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103. In rare cases prejudice has indeed been presumed based on the nature of the pre-trial publicity or the

carnival atmosphere of a courtroom entirely taken over by media. *See, e.g., Sheppard v. Maxwell*, 384 U.S. 333, 353–354 (1966) (media took over the courtroom and turned the jury into celebrities after "months [of] virulent publicity about Sheppard and the murder"); *Estes v. Texas,* 381 U.S. 532, 582 (1965) (Warren, C.J., concurring) (media overran the courtroom and saturated the airwaves with the pretrial hearing); *Rideau v. Louisiana*, 373 U.S. 723, 724–725 (1963) (local television station aired video of defendant's jailhouse confession to audiences of 24,000 to 53,000 three times prior to trial in a parish with a total population of 150,000).

In other cases, prejudice from pre-trial publicity may be inferred from the responses of prospective jurors in *voir dire*. "The length to which the trial court must go in order to select jurors who appear to be impartial is . . . relevant in evaluating those jurors' assurances of impartiality." *Murphy v. Florida,* 421 U.S. 794, 802–803 (1975). This is because the assertions of impartiality from some prospective jurors become suspect when the majority of prospective jurors admit to bias, "for it is then more probable that they are part of a community deeply hostile to the accused, and more likely that they may unwittingly have been influenced by it." *Id.* at 803. For instance, in *Irvin v. Dowd*, the Court held that a change of venue was constitutionally required due to the effect of the pervasive pre-trial publicity on the jury pool in the small county where the crime occurred as evidenced by the majority of the 430-person panel needing to be excused because their opinions as to the defendant's guilt were so hardened that they could not be impartial, and two-thirds of those who actually sat on the jury having already formed an opinion that the defendant was guilty. 366 U.S. 717, 728 (1961).

"But 'pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial.'" *Skilling v. United States*, 561 U.S. 358, 384 (2010) (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976)).

19

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Murphy*, 421 U.S. at 800 (quoting *Irvin*, 366 U.S. at 723).

McKnight has failed to show that it was objectively unreasonable for the Ohio Supreme Court to conclude that he was not entitled to the presumption of prejudice justified by the extreme circumstances present in *Sheppard*, *Estes*, and *Rideau*, where the "conviction [was] obtained in a trial atmosphere that [was] utterly corrupted by press coverage[.]" *Id.*. at 798 (citations omitted). Nor has he shown that no reasonable jurist would conclude that he was actually prejudiced by the pretrial publicity, or that any of the facts relied upon by the Ohio Supreme Court to reach this conclusion are incorrect by "clear and convincing evidence." *See* 28 U.S.C. §2254(e)(1). McKnight's objections to the Report's recommendation for dismissal of Claim Two are overruled.

On Claim Three, McKnight objects to the Magistrate Judge's conclusion that the racial composition of Vinton County did not necessitate a change of venue. (Objections, Doc. 343, PageID 18264–18265). McKnight confirmed in his Objection that he is not asserting a fair cross section claim. (*Id.* at PageID 18264). Instead, he argues that he could not receive a fair trial in an "environment in Vinton County that was openly hostile to a Black defendant." (*Id.*). As noted above, the Court of Appeals concluded that McKnight failed to produce any evidence showing that racial bias affected the outcome of the trial or the sentencing hearing. *McKnight*, 2008-Ohio-2435, ¶¶ 33–37. McKnight contends racial bias denied him a fair trial because he was indicted on capital charges for the murder of Murray, a white woman, but not for the murder of Julious, a black man, based "[o]n virtually the same set of facts." (Objections, Doc. 343, PageID

20

18264). The Court of Appeals rejected this argument, concluding that the state's decision to seek the death penalty under these circumstances is not unconstitutional. *McKnight*, 2008-Ohio-2435, ¶ 37 (citing *Ohio v. Steffen*, 31 Ohio St. 3d 111, 124–125 (1987) ("To sustain his [equal protection] claim, defendant must show that racial considerations affected the sentencing process *in his case.*")). The statements by *prospective* jurors included in McKnight's Objection offer no proof of actual bias by the members of his petit jury. (Objections, Doc. 343, PageID 18266–18267). McKnight offers no proof that the outcome of his case was influenced by racial bias. McKnight has failed to show that the state court's dismissal of Claim Three was an unreasonable application of the law to the facts, and his objection to the Report in that regard is overruled.[1]

McKnight offers only a general objection to the Magistrate Judge's recommendation that Claim Four, regarding the trial court's denial of his request for a scientific jury study, be dismissed. (Objections, Doc. 343, PageID 18281). He cites the history of his attempts in both state and federal court to gather evidence of racial bias by questioning the members of the jury, all of which were denied by the state courts and by this Court. *See, e.g., McKnight*, 2005-Ohio-6046, ¶¶ 65-67. He also rehashes his argument, discussed above, that prejudice should be presumed based on pre-trial publicity. (Objections, Doc. 343, PageID 18281). McKnight fails to identify any Supreme Court case that provides a clearly established right to a scientific jury study under the circumstances. As such, he is not entitled to habeas relief and his objection is overruled.

**Claim Five**

McKnight contends in Claim Five that it was impossible to impanel an impartial jury

---

[1] The Court declines to revisit its previous decision that McKnight is not entitled to an evidentiary hearing on Claim Three pursuant to *Pena-Rodriguez v. Colorado,* 580 U.S. 206 (2017). (Doc. 322).

because the media coverage of the trial court's dismissal and subsequent reinstatement of the capital specifications created a hostile and prejudicial environment. The Magistrate Judge denied Claim Five for the same reasons as Claim Two, concluding that McKnight had not shown that any of the deliberating jurors were biased because of media coverage, race, or the dismissal and reinstatement of the capital specifications. (Report, Doc. 332, PageID 18047). In his objection to Claim Five, McKnight repeats the argument that prejudice should be presumed because of the media coverage of the trial. (Objections, Doc. 343, PageID 18284–18288; *see also* Traverse, Doc. 17, PageID 671). As explained in the discussion of Claim Two, *supra*, McKnight has failed to demonstrate that the Ohio's Supreme Court's conclusion that he was not entitled to a presumption of prejudice based on pretrial publicity is objectively unreasonable. McKnight's objections are overruled.

## Claim Six

In Claim Six, McKnight contends that he was denied a fair trial because the state jointly tried him for the murders of Julious and Murray. The Magistrate Judge found that the claim was procedurally defaulted because McKnight only argued a state law theory to the Ohio Supreme Court. (Report, Doc. 332, PageID 18047–18052 (citing State Court Record, Doc. 106-14, PageID 9497–9500)). The Magistrate Judge also concluded that Claim Six lacked merit because no clearly established United States Supreme Court precedent supports a conclusion that misjoinder of charges violates the Constitution. (*Id*. at PageID 18052–18053 (quoting *Grajeda v. Scribner*, 541 F. App'x 776, 778 (9th Cir. 2013); *Mayfield v. Morrow*, 528 F. App'x 538, 541–542 (6th Cir. 2013)).

McKnight objects to the finding of procedural default, arguing that the citations to federal cases in his state court brief were sufficient to fairly present the constitutional claim and preserve

it for federal habeas review.  (Objections, Doc. 343, PageID 18291–18292).  McKnight also challenges the Magistrate Judge's conclusion that the state court's rejection of his improper joinder claim did not contravene federal law.  McKnight cites several Sixth Circuit cases considering whether unfair prejudice from improper joinder deprived the petitioner of a fair trial. (*Id*. at PageID 18293–18294 (quoting *Davis v. Coyle*, 475 F.3d 761, 778 (6th Cir. 2007) (emphasis removed) and citing *Collins v. Green*, 838 F. App'x 161 (6th Cir. 2020))).  McKnight contends that the Magistrate Judge overlooked the fact that he argued that he was prejudiced by the joinder of the Julious and Murray murders at the penalty phase because the jury's knowledge of both murders made a death sentence more likely.  (*Id*. at PageID 18294-18295).

McKnight's objection to the Magistrate Judge's conclusion that Claim Six is procedurally defaulted is overruled.  McKnight points out two cases included in his state court direct appeal brief as proof he fairly presented a constitutional issue to the state court: *United States v. Argentine*, 814 F.2d 783 (1st Cir. 1987) ("[T]here is a considerable truth and obvious pertinence…to the adage that the mind can absorb only what the seat can endure") and *Beck v. Alabama*, 447 U.S. 625 (1980) ("[M]ere convenience of the state is not a substitute for fairness and reliability in a capital trial").  A review of McKnight's direct appeal brief reflects that he cited dicta from these cases to argue that the state law requirements for joinder had not been met. These citations were not sufficient to put the Ohio Supreme Court on notice of a federal due process claim.  Claim Six is procedurally defaulted.

Despite the procedural default, the Magistrate Judge alternatively addressed the merits of Claim Six.  "Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his ... right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986).

23

A petitioner must show "*actual* prejudice, not merely the *potential* for prejudice." *Davis*, 475 F.3d at 777 (emphasis in original). As the Magistrate Judge noted, the Supreme Court has acknowledged the possibility of a due process violation from improper joinder only in dicta. The rule of due process at issue here is "one of the most general in all of criminal law," and "where the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Bass v. Burt*, 850 F. App'x 962, 965 (6th Cir. 2021) (quoting *Woods v. Donald*, 575 U.S. 312, 318 (2015) (*per curiam*)).

This Court is bound to defer to the Ohio Supreme Court's conclusion McKnight was not actually prejudiced by the joinder of claims and therefore not denied due process. The Ohio Supreme Court found that evidence of Julious's murder was necessary to prove the course of conduct specification. It also found that evidence relating to both murders would have been admissible at separate trials to prove McKnight's identity by modus operandi, and evidence of McKnight's guilt was sufficient to sustain each verdict, regardless of whether the indictments were tried together. *McKnight*, 2005-Ohio-6046, ¶ 170-172. Habeas relief on Claim Six would be denied even if it were not procedurally defaulted. McKnight's objections are overruled.

### Claim Seven

McKnight contends in Claim Seven that the "course of conduct" specification was not supported by sufficient evidence, was against the manifest weight of the evidence, was unconstitutionally vague, and fails to narrow the class of persons eligible for the death penalty. The Magistrate Judge found that "manifest weight of the evidence" is a state-law claim not cognizable in federal habeas. (Report, Doc. 332, PageID 18055). The Magistrate Judge also concluded that McKnight failed to show that the Ohio Supreme Court's dismissal of the remaining allegations in Claim Seven was contrary to or an unreasonable application of federal

law or based on an unreasonable determination of the facts. (*Id.* at PageID 18059).

The Ohio Supreme Court found that the "course of conduct" specification was applicable because both victims were McKnight's acquaintances, both victims were alone in the car with McKnight before disappearing, both victims were killed by gunshots to the head, and both victims' remains were found on McKnight's property. *McKnight*, 2005-Ohio-6046, ¶¶ 162–165. The Ohio Supreme Court rejected McKnight's argument that the passage of time between the murders invalidated the course of conduct specification conviction, finding that "murders taking place at different times 'may satisfy the R.C. 2929.04(A)(5) specification so long as the offender's actions were part of a continuing course of criminal conduct.'" *Id.* at ¶ 163. The Magistrate Judge concluded that McKnight could not show the state court's decision was based on an unreasonable determination of the facts. (Report, Doc. 332, PageID 18058, citing Petition, Doc. 127, PageID 15707–15709, ¶¶ 120–131).

McKnight argues that the state court's determination of the facts was unreasonable because it "assigned so much weight to [] meager similarities while assigning little wight to the plethora of differences between the two crimes." (Objections, Doc. 343, PageID 18296). As a result, McKnight argues, the categories of offenses and offenders eligible for the course of conduct specification are unconstitutionally broad. (*Id.*). McKnight also argues that the court relied on irrelevant precedents to justify its decision. (*Id.* at 18296–18303).

A federal habeas court may not characterize state-court factual determinations as unreasonable simply because it would have reached a different conclusion in the first instance. *Brumfield v. Cain*, 576 U.S. 305, 313–314 (2015). Section 2254(d)(2) requires that the Court accord the state court "substantial deference." *Id.* at 314. "If reasonable minds reviewing the record might disagree' about the finding in question, on habeas review that does not suffice to

supersede the [state] court's determination.'" *Id.* (cleaned up).

Federal courts reviewing state habeas claims accord a double layer of deference in sufficiency of the evidence challenges. A jury verdict must be upheld if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). Next, even if a federal habeas court concludes that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, the court must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *Id.*

Applying this standard to Claim Seven, McKnight has not shown that the Ohio Supreme Court's determination that the evidence was sufficient to sustain the course of conduct specification was objectively unreasonable. The court identified several similarities between the Julious and Murray murders that are sufficient to demonstrate "some factual link . . . some connection, common scheme, or some pattern or psychological threat that ties [the offenses] together." *McKnight*, 2005-Ohio-6046, at ¶ 161 (internal quotation marks omitted). Despite the time delay between the murders, it was not unreasonable for the state court to conclude that the similarities between the two murders were sufficient to establish a factual link, based on a totality the circumstances.

Finally, McKnight argues that, as applied to his case, the "course of conduct" specification was unconstitutionally overbroad. Relying on FBI statistics, McKnight argues that the following factors relied upon to establish a course of conduct are too common to constitutionally narrow the class of persons eligible for the death penalty: gunshot as a manner of death, killing multiple persons within a limited geographic area, and victims knowing their attackers. (Objections, Doc. 343, PageID 18301–18303).

26

Under Ohio Rev. Code § 2929.04(A)(5), a defendant who commits aggravated murder is eligible for the death penalty where, "the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender." The Supreme Court has held that "outside the limited First Amendment context, a criminal statute may not be attacked as overbroad." *Schall v. Martin*, 467 U.S. 253, 268 (1984). However, petitioner's claim may be construed as arguing that the aggravating circumstance in § 2929.04(A)(5) is unconstitutionally vague, in that it fails to adequately inform the trier of fact what must be found to impose the death penalty, thus giving the trier of fact the type of open-ended discretion held invalid in *Furman v. Georgia*, 408 U.S. 238 (1972).

Per the Supreme Court in *Maynard v. Cartwright*, 486 U.S. 356, 361–362 (1988), vagueness and overbreadth claims directed at aggravating circumstances in capital punishment statutes are analyzed under the Eighth Amendment. The proper focus in determining whether an aggravating circumstance is unconstitutionally vague is whether that provision "sufficiently minimiz[es] the risk of wholly arbitrary and capricious action." *Id.* at 362. In *Maynard*, the Court found that an aggravating circumstance provision which referred to "especially heinous, atrocious or cruel" murders was invalid because an ordinary person could honestly believe that every murder is "especially heinous." *Id.* at 364. Similarly, in *Godfrey v. Georgia*, 446 U.S. 420, 428–429 (1980), the Supreme Court concluded that an aggravating circumstance for murders that were "outrageously or wantonly vile, horrible or inhuman" did not adequately channel jury discretion because a person of ordinary sensibility could fairly characterize almost every murder as meeting those criteria.

The Ohio Supreme Court addressed the constitutionality of § 2929.04(A)(5) in *Ohio v. Benner*, 40 Ohio St.3d 301, 533 N.E.2d 701 (1988) (abrogated on different grounds). It rejected

the argument that the "course of conduct" language required a mass murder or more than one murder in the same transaction and held that the provision could be satisfied by two or more murders committed on different occasions. *Id.* at 304–305 (citing *Ohio v. Beuke*, 38 Ohio St.3d 29, 526 N.E.2d 274 (1988)). It further concluded that the specification in § 2929.04(A)(5) "is not the type of 'open-ended' statute struck down in" *Maynard* and *Godfrey*. *Id.* at 305. Here, on direct appeal, the Ohio Supreme Court rejected McKnight's vagueness claim by relying on its opinion in *Benner*. *McKnight*, 2005-Ohio-6046, ¶ 159.

McKnight has failed to establish that the course of conduct specification is unconstitutionally vague as established by Supreme Court precedent or that the Ohio Supreme Court's decision dismissing Claim Seven was unreasonable. He argues, *in his case*, the factual similarities between the two murders that established "course of conduct" are statistically common. To be unconstitutionally vague, the course of conduct specification would have to lead a reasonable juror to believe *every murder* could meet the criteria. The language of the specification is not unconstitutionally vague. McKnight's objections are overruled.

## Claim Eight

In Claim Eight, McKnight contends that a preliminary jury instruction given prior to opening arguments in the guilt phase of his trial violated his due process and equal protection rights and denied him the right to confront witnesses against him through meaningful cross-examination. Specifically, he contends the following instruction "neutralize[d] the impact of any inconsistencies among and between the State's witnesses." (Traverse, Doc. 17, PageID 694).

> The testimony of one witness believed by you is sufficient to prove any fact. Also, discrepancies in a witness' testimony, or between his testimony and that of others, if there are any, does not necessarily mean that you should disbelieve the witness, as people commonly forget facts or recollect them erroneously after the passage of time.

28

> You are certainly all aware of the fact that two persons who are witnesses to an incident may often see or hear it differently. In considering a discrepancy in witness testimony, you should consider whether such discrepancy concerns an important fact or a trivial one.

(State Court Record, Doc. 105-13, PageID 5346–5347).

The Magistrate Judge found McKnight did not raise an Eighth Amendment claim in state court. (Report, Doc. 332, PageID 18059). The Magistrate Judge also concluded that the entire claim was procedurally defaulted because the Ohio Supreme Court dismissed the claim due to counsel's failure to enter a contemporaneous objection at trial. (*Id*. at PageID 18060–18061; *see, e.g.*, *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012) (internal quotation marks and citation omitted) ("[T]he Ohio Supreme Court's plain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue."). The Ohio Supreme Court concluded that giving the instruction was not plain error because "[t]he preliminary instruction[] clarified the jury's function in judging credibility and determining the weight to assign the testimony" and the "instruction is virtually identical to instructions approved in *State v. Cunningham,* 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 51–56." *McKnight*, 2005-Ohio-6046, ¶ 223.

McKnight raised ineffective assistance of counsel based on counsel's failure to object as the cause and prejudice necessary to overcome the procedural default, but the Magistrate Judge found that counsel "could not have been ineffective for failing to object to a jury instruction that had little or no likelihood of affecting the outcome of his trial[.]" *Id*. at PageID 18064. McKnight argues again in his Objection that trial counsel's ineffectiveness established cause and prejudice to overcome the default.[2] (Objections, Doc. 343, PageID 18305–18307). He contends

---

[2] Trial counsel's failure to object *during trial* would not establish cause for McKnight's subsequent failure to raise an

that the Magistrate Judge erred by applying AEDPA deference when considering his ineffective assistance claim as cause and prejudice for the default. (*Id.* at PageID 18306 (quoting *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006)). An independent claim otherwise evaluated under the AEDPA standard is generally reviewed *de novo* in procedural default cause-and-prejudice. *See Ege v. Yukins*, 485 F.3d 364, 379 n.7 (6th Cir. 2007) (reviewing an ineffective assistance claim *de novo* as cause to overcome procedural default but applying AEDPA deference when reviewing it as an independent claim). McKnight's objection is nevertheless overruled because his ineffective assistance claim also fails under *de novo* review.[3] It is well-established that the failure to lodge a meritless objection is neither deficient performance nor prejudicial. *See Washington v. Berghuis*, No. 17-2362, 2018 WL 2222590, at *4 (6th Cir. Apr. 30, 2018); *Conley v. Warden Chillicothe Corr. Inst.*, 505 F. App'x 501, 508 (6th Cir. 2012); *see also e.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (counsel cannot be held constitutionally ineffective for failing to pursue a meritless claim or raise a meritless objection); *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001) ("[C]ounsel cannot be ineffective for failure to raise an issue that lacks merit.").

McKnight also attacks the conclusion that the underlying claim is meritless. (Objections, Doc. 343, PageID 18307–18308). He argues that the credibility instruction given in his case can be distinguished from *Ohio v. Cunningham*, which the Ohio Supreme Court cited in its plain

---

Eighth Amendment claim *on direct appeal or in state postconviction*. McKnight did not raise ineffective assistance of appellate counsel as cause to excuse the procedural default of his Eighth Amendment claim. For ineffective assistance of appellate counsel to serve as cause, the petitioner must first have properly presented the claim of ineffective assistance of appellate counsel to the state courts, so that this claim also is not procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 450–451 (2000).

[3] McKnight asserts that counsel had a duty to object, and that he was prejudiced due to counsel's failure to satisfy that duty because he "lost his right to confront witnesses, right to due process, right to equal protection, and right to a fair trial." (Objections, Doc. 343, PageID 18306). McKnight's argument is conclusory, and therefore fails to satisfy the *Strickland v. Washington*, 466 U.S. 668 (1984), standard for relief.

error review for approving virtually identical instructions. *McKnight*, 2005-Ohio-6046, ¶ 223. McKnight maintains that the trial judge's addition of the line, "You are certainly all aware of the fact that two persons who are witnesses to an incident may often see or hear it differently," to the instructions in his case effectively "told [the jury] to ignore *all* discrepancies because the judge knows the jury's judgment better than it knows its own." (Objections, Doc. 343, PageID 18307 (emphasis in original)). McKnight asserts that this discrepancy between the instructions given in his case and those approved in *Cunningham* means that it was error for the court to rely on *Cunningham* in its decision. (*Id*. at PageID 18308).

With specific regard to a habeas challenge to jury instructions, a petitioner has a particularly heavy burden: "In a habeas proceeding, allegedly improper jury instructions must be shown to have infected the accused's trial to such a degree as to constitute a clear violation of due process. The petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned." *Wood v. Marshall*, 790 F.2d 548, 551 (6th Cir. 1986); *see also Coe v. Bel*l, 161 F.3d 320, 329 (6th Cir. 1998). "To warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. The burden is even greater than that required to demonstrate plain error on appeal.'" *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001) (quoting *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000)).

McKnight fails to identify how the preliminary instruction rendered his entire trial fundamentally unfair. Assuming, *arguendo*, McKnight has stated a constitutional claim, he has also failed to show how the Ohio Supreme Court's dismissal of Claim Eight is objectively unreasonable. Even if Claim Eight were not procedurally defaulted, it would fail on the merits. McKnight's objections are overruled.

31

**Claim Nine**

McKnight argues in Claim Nine that the admission of gruesome photographs deprived him of due process, a fair trial, and a reliable determination of guilt. (Petition, Doc. 127, PageID 15714-15717). The Magistrate Judge concluded that Claim Nine was procedurally defaulted because trial counsel did not object when the photographs were introduced at trial, and the Ohio Supreme Court enforced the procedural rule by limiting its review of the claim on direct appeal to plain error. (Report, Doc. 332, PageID 18065–18068 (citing *McKnight*, 2005-Ohio-6046, ¶¶ 138–147).

McKnight argues that the ineffectiveness of his trial counsel, raised separately in Claim Twenty-Six, excuses the procedural default. (Objections, Doc. 343, PageID 18312). He contends that counsels' failure to object to the introduction of the crime scene and autopsy photographs at trial prejudiced him, and the Ohio Supreme Court's conclusion that the probative value of the photographs outweighed any prejudicial effect was unreasonable. (*Id.*) Reviewing McKnight's ineffective assistance of counsel claim *de novo*, the Court determines that McKnight cannot establish that he was prejudiced by the introduction of the photos.[4] Because McKnight cannot establish cause, his procedural default is not excused.

Even if Claim Nine was not procedurally defaulted, it lacks merit. McKnight has failed to demonstrate a violation of a clearly established constitutional right. Whether or not the photographs were properly admitted under the Ohio Rules of Evidence is a state law question not

---

[4] While the ineffective assistance of trial claims asserted in claim Twenty-Six are reviewed under the deferential standard of review, the Court has also reviewed the claim under a *de novo* standard of review and determined that cause has not been established. *See Chase v. MaCauley*, 971 F.3d 582, 591–592 (6th Cir. 2020) (internal citations omitted) ("An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel. In particular, '[t]he latter must meet the higher AEDPA standard of review, while the former need not.' Thus, we review *de novo* the question of whether ineffective assistance of appellate counsel excuses [the petitioner's] procedural default.").

cognizable in federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). McKnight argues at length, (Objections, Doc. 343, PageID 18312–18314), that the Ohio Supreme Court erred when it held that the admission of the photographs was not plain error. However, this Court cannot grant habeas relief based on an erroneous evidentiary ruling. The only issue in a federal habeas proceeding is whether the evidence "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

McKnight makes the blanket statement, "[p]hotographs of this nature generally serve to inflame the jury, and clearly have a strong emotional impact. The prejudice greatly outweighed whatever minimal probative value that photographs would have particularly when McKnight was not challenging the manner or cause of death." (Objections, Doc. 343, PageID 18314). Generalizations about the potential emotional impact of the photos on the jury are insufficient to demonstrate a due process violation or that the state court's adjudication of Claim Nine was unreasonable. For the above reasons, the Court adopts the Report as to Claim Nine.

## Claim Ten

In Claim Ten, McKnight contends the trial court improperly admitted evidence of Murray's habits to prove the elements of kidnapping. (Petition, Doc. 127, PageID 15717–15724). The Ohio Supreme Court held that the trial court had not abused its discretion under Ohio Evid. R. 406 by permitting the state to introduce evidence to show that Murray had a habit of notifying friends and family of her whereabouts. *McKnight*, 2005-Ohio-6046, ¶¶ 136–137. The Magistrate Judge held that McKnight's claim was procedurally defaulted because he had not raised any constitutional claims before the state courts, instead challenging the evidence based on Ohio's evidentiary rule. (Report, Doc. 332, PageID 18070–18072). The Magistrate Judge also

33

concluded that even if McKnight's claim had been preserved for habeas review, it did not

"overcome the substantial deference with which this Court must treat the state court's decision."

(*Id*. at PageID 18072).

McKnight objects to the finding of procedural default by largely repeating arguments that

were previously presented and considered by the Magistrate Judge in the Report. (Objections,

Doc. 343, PageID 18317-18323). Specifically, McKnight argues that the "trivial differences"

between the claim presented to the state court and the tenth claim identified by the Magistrate

Judge do not undermine the substantial equivalence of the claims. (Objections, Doc. 343,

PageID 18318). He also argues that the Magistrate Judge "erroneously dismiss[ed] the

sufficiency of the federal law raised in McKnight's state court claim." (*Id*. at PageID 18319).

McKnight lists a number of federal cases cited in his state court brief. (Doc. 106-15 at Page ID

9524–9532). However, McKnight did not cite those federal cases to argue that the introduction

of habit evidence violated his due process rights. Instead, McKnight utilized the federal cases as

authority that the evidence should not have been admitted under Ohio's evidence rule because it

did not meet the definition of "habit."

The federal cases cited by McKnight do not discuss habit evidence as a violation of

federal due process rights. *See United States v. Angwin*, 271 F.3d 786, 798 (9th Cir. 2001),

*overruled by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) ("Rule 406 is an exception to

the general exclusion of character evidence under the Federal Rules, so courts are somewhat

cautious in admitting the evidence.") (Doc. 106-15 at PageID 9527); *Weil v. Seltzer*, 873 F.2d

1453, 1460 (D.C. Cir. 1989) ("A habit is a *consistent* method or manner of responding to a

particular stimulus. Habits have a reflexive, almost instinctive quality.") (Doc. 106-15 at PageID

9527); *United States v. Newman*, 982 F.2d 665, 668 (1st Cir. 1992) ("Habit is based on

34

"adequacy of sampling and uniformity of response.") (Doc. 106-15 at PageID 9527); *Thompson v. Boggs*, 33 F.3d 847, 854 (7th Cir. 1994) (same) (Doc. 106-15 at PageID 9527); *United States v. Rangel-Arreola*, 991 F.2d 1519, 1523 (10th Cir. 1993) ("Habit is defined by this court as "'a regular practice of meeting a particular kind of situation with a certain type of conduct, or a reflex behavior in a specific set of circumstances.'") (Doc. 106-15 at PageID 9528).

McKnight's state court brief lists the Fourteenth Amendment in a heading and in an introduction. (State Court Record, Doc. 106-15, PageID 9524–9532). However, these drive-by references are insufficient to fairly present a constitutional claim. "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995). A state court brief that merely mentions the Fourteenth Amendment, does not cite federal cases addressing due process, and does not treat the claim as one brought under federal law, does not fairly present a constitutional issue. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006). Because McKnight failed to place the state court on notice of a federal claim, the Magistrate Judge was correct in concluding that Claim Ten is procedurally defaulted.

In addressing the merits, McKnight argues that the state court decision unreasonably determined the facts when it concluded that the evidence in question met the definition of "habit" evidence in Ohio Evid. R. 406 because: (1) the conduct described was volitional rather than reflexive; (2) the instances of Murray's conduct testified to were not specific or particular enough; and (3) four instances of conduct is an insufficient number to establish a habit. (Objections, Doc. 343, PageID 18323–18325). McKnight also argues that the improperly admitted evidence was inflammatory and prejudicial, violated his due process rights, and the

35

Ohio Supreme Court's decision to the contrary was an unreasonable application of federal law. (*Id.* at PageID 18325). He contends that the evidence required the jury to make an improper propensity inference to conclude that McKnight kidnapped Murray. (*Id.*). McKnight also asserts that admission of the evidence in violation of Ohio Evid. R. 406 "violated McKnight's state-given rights under the Ohio Rules of Evidence." (*Id.* (citing *Evitts v. Lucey*, 469 U.S. 387, 393 (1985)).)

"'[E]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence' are usually not cognizable in federal habeas corpus." *Sandoval v. Toledo Corr. Inst.*, 409 F. App'x 847, 850 (6th Cir. 2010) (quoting *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001), *superseded on other grounds at* 28 U.S.C. § 2254(d)(1)). A federal habeas court will review the state court's evidentiary ruling only as to whether it was "so fundamentally unfair as to violate the petitioner's due process rights." *Seymour v. Walker*, 224 F.3d 542, 559 (6th Cir. 2000) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). "Courts 'have defined the category of infractions that violate fundamental fairness very narrowly.'" *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotations omitted)). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (alterations in original)).

On habeas review, this Court is bound by the state supreme court's interpretation of state law. *Estelle*, 502 U.S. at 67–68. Furthermore, McKnight has not shown that the state court's evidentiary ruling rose to the level of a due process violation contrary to clearly established federal law. McKnight identifies no Supreme Court precedent that would support a conclusion

that evidence of Murray's habit of notifying friends and family as to her whereabouts violated the Due Process Clause.

McKnight's objections to both the procedural default finding and the alternative merits analysis are thus overruled.

## Claim Eleven

McKnight argues in Claim Eleven that the introduction of inflammatory evidence about his marital infidelities, his avoidance of police, and various personal characteristics of Emily Murray deprived him of a fair trial and due process. (Petition, Doc. 127, PageID 15725–15733). The Ohio Supreme Court rejected McKnight's claim on direct appeal. *McKnight*, 2005-Ohio-6046, ¶ 77–104. It divided Claim Eleven into two categories, "other acts" evidence and "victim impact" comment and testimony. *Id.* at ¶¶ 78–104.

In its review of the "other acts" evidence, the court held that the trial court did not abuse its discretion in admitting the testimony of McKnight's coworkers, Amber Hammers and Gloria Ressler. Their testimony established a "pattern of behavior" in which McKnight "developed an interest in his coworkers and asked them out," allowing the jury to infer that McKnight likely asked Murray for a ride after work. *Id.* at ¶ 84. The Ohio Supreme Court also found that Lisa Perkins's testimony about McKnight's visits to her in Dana Bostic's home was relevant to show how McKnight knew Julious. *Id.* at ¶ 87.

The Ohio Supreme Court found two of the "other acts" were improperly admitted, but the error was harmless. Testimony that McKnight had sex with Perkins in his car and spent the night with her at Bostic's home "was not relevant and not admissible under Ohio Evid. R. 404(B)." *Id.* at ¶ 88. The Ohio Supreme Court also concluded that Bostic's testimony that McKnight requested to leave a reggae club after he saw the police should not have been admitted, "because

37

there was no connection between [McKnight]'s reaction to the police and the charged offenses." *Id.* at ¶ 90.

When evaluating the "victim impact" testimony, the Ohio Supreme Court concluded that testimony from Murray's friends and family about her personality was admissible because it showed "the likelihood that Murray provided [McKnight] a ride in her car on the night she disappeared[,]" "that she would not have left campus in her car without taking her wallet and driver's license[,]" and had a "habit of notifying family members as to her whereabouts before making a trip." It was also relevant as rebuttal for the defense arguments that she might have committed suicide. *Id.* at ¶¶ 98, 99. Kate Murray's testimony about Murray's tattoo was relevant to identifying her body. *Id.* at ¶ 101.

The Ohio Supreme Court held that McKnight waived his objection to Thomas Murray's "testimony that his daughter's disappearance was 'like somebody hit [him] in the stomach with a sledgehammer' by failing to lodge an appropriate objection, but it found that the admission of the testimony did not constitute "outcome-determinative plain error." *Id.* at ¶ 99. It concluded that McKnight also waived his objection to the prosecutor's comments during opening statement and closing argument by failing to object at trial. The "very brief and not overly emotional" remarks alluding to personal facts about Murray's character and her parents' pain were not plain error. *Id.* at ¶ 103.

The Magistrate Judge concluded that McKnight's Fifth, Sixth, and Eighth Amendment claims were procedurally defaulted because he only alleged a Fourteenth Amendment violation in the state courts. (Report, Doc. 332, PageID 18073). He also found the claims trial counsel failed to object to at trial were procedurally defaulted and rejected McKnight's argument that his counsel's ineffectiveness should overcome the default. (*Id.* at 18085–18086).

Citing *Johnson v. Williams*, 568 U.S. 289 (2013), the Magistrate Judge concluded that the Ohio Supreme Court failed to address McKnight's federal claim by "overlooking" it, warranting *de novo* review. (Report, Doc. 332, PageID 18081–18082). The Report does not mention the United States Supreme Court's guidance in *Johnson* for deferring to a state court opinion that does not overtly mention a federal claim, noting "a state court may not regard a fleeting reference to a provision of the Federal Constitution or federal precedent as sufficient to raise a separate federal claim" or "a state court may simply regard a claim as too insubstantial to merit discussion." *Johnson*, 568 U.S. at 299. Either of these situations could apply to McKnight's Claim Eleven. In any event, the Court adopts the Magistrate Judge's conclusion that Claim Eleven should be dismissed because it lacks merit, whether evaluated under deferential or *de novo* review.

The Magistrate Judge concluded that the claim was meritless because the evidence in question was probative of the sequence of events leading up to the murder, the identities of the victims, and McKnight's *modus operandi*. The Magistrate Judge also found that the evidence was probative to refute the defense theory that Murray's death was a suicide. (Report, Doc. 332 at PageID 18083).

McKnight contends that the Court "must assess whether the prejudicial impact of the evidence outweighs its probative value[,]" such that it rises to the level of a due process violation. (Objections, Doc. 343, PageID 18327 (citing *Lesko v. Owens*, 881 F.2d 44, 51 (3d Cir. 1989))). He argues that the state court's decision fails to account for either the cumulative effect of the improperly admitted evidence or its carryover effect on sentencing. (*Id*. at PageID 18328). McKnight asserts that the improper evidence collectively established that he "needed a ride home from work and had a penchant for seeking extramarital sex," but there were not enough

39

similarities to connect these facts to a motive or opportunity for killing Murray. (*Id*. at PageID 18329). He points out that the state argued the evidence was relevant because evidence would be presented later in the trial that he was doing the same thing with Murray. (*Id.* (quoting State Court Record, Doc. 105-15, PageID 5681)). No such evidence was ever presented. (*Id*. at PageID 18329–18330). Finally, McKnight argues that the evidence played into "the undercurrent of racism in [his] trial invoking racial stereotypes that paint black males as sexual predators, especially toward white females." (*Id*. at PageID 18330).

The Warden maintains that the potential for prejudice is diminished because the challenged evidence implicates not criminal activity but morality. (Response, Doc. 348, Page ID 18486). The Warden argues that marital infidelity is so "ordinary and commonplace" that jurors would not perceive such behavior as "overly unusual or shocking." (*Id*.) According to the Warden, this lack of criminality likely influenced the Magistrate Judge's decision that, even assuming the evidence was inadmissible, the integrity of the proceedings was not compromised. (*Id*. at PageID 18487).

After a thorough review of the record, the Court adopts the Magistrate Judge's recommendation. Even on *de novo* review, before habeas relief can be granted, this Court must find an error of constitutional dimension and conclude the error had a "substantial and injurious effect" on the verdict. *Brecht*, 507 U.S. at 638. The state courts' evidentiary rulings are a matter for federal habeas "only if [they] were so fundamentally unfair as to violate the petitioner's due process rights." *Seymour*, 224 F.3d at 552. In other words, McKnight must show that the unfair prejudice resulting from the inclusion of the evidence "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Egelhoff*, 518 U.S. at 43 (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)). McKnight has failed

40

to show an error of constitutional dimension.

The prejudicial nature of the evidence the Ohio Supreme Court found to be erroneously admitted is underwhelming. The admission of evidence of McKnight's extramarital affair with Perkins and McKnight's reaction to the police at the reggae club is insignificant in the context of the entire trial and insufficient to convince this Court to conclude that there was a substantial and injurious effect on the verdict. Accordingly, McKnight's objections to the Report are overruled as to Claim Eleven.

**Claim Twelve**

McKnight contends in Claim Twelve that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated because the trial court refused to allow him to introduce Emily Murray's journals into evidence to rebut the state's portrayal of Murray as a happy and enthusiastic young woman. (Petition, Doc. 127, PageID 15733-15736). The defense argued at trial that Murray committed suicide (*id*. at PageID 15735, ¶ 224), and her "fictional stories, several drawings, and . . . reflections on life that did not mention suicide" should have been admitted, in addition to her writings that reflected on her previous suicide attempt and mental health." (Report, Doc. 332, at PageID 18092 (quoting *McKnight*, 2005-Ohio-6046, at ¶ 151)). The Ohio Supreme Court concluded that the excluded evidence was irrelevant and inadmissible hearsay. *McKnight*, 2005-Ohio-6046 at ¶¶ 148–157.

The Magistrate Judge concluded that McKnight's alleged violations of his Sixth and Eighth Amendment rights were procedurally defaulted because he only asserted violations of the Fifth and Fourteenth Amendments in his direct appeal to the Ohio Supreme Court. (Report, Doc. 332, PageID 18087). The Magistrate Judge also concluded that there was nothing in the state court opinion to suggest that it had considered any portion of McKnight's federal constitutional

41

claim. (*Id*. at PageID 18089). Even though there is a rebuttable presumption that a federal claim presented to the state courts and which has been denied has been decided on the merits, *Harrington*, 562 U.S. at 99, out of an abundance of caution, the Magistrate Judge conducted a *de novo* of the constitutional claims raised by McKnight in state court. (Report, Doc. 332, PageID 18089–18092).

In response to McKnight's arguments regarding his right to present a complete defense, the Magistrate Judge noted that the state court found the excluded journal entries irrelevant to Murray's state of mind at the time of her death because they were either dated more than a year before the murder or undated. Furthermore, most of the journals mentioning suicide were admitted. (*Id*. at PageID 18090 (citing *McKnight*, 2005-Ohio-6046, at ¶¶ 123, 151)). The Report concluded that, even in light of a defendant's due process rights, "state rule makers 'have broad latitude under the Constitution to establish rules excluding evidence from criminal trials[,]'" (*Id*. at PageID 18091 (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)). Because Murray's more recent writings about her suicide attempt and mental health were admitted and older writings that did not mention suicide were excluded, the Magistrate Judge concluded that McKnight was not deprived of "a meaningful opportunity to present a complete defense." (*Id*. at PageID 18092 (quoting *Holmes*, 547 U.S. at 331)).

McKnight argues that "[c]learly established federal law prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, when no logical explanation for the exclusion can be proffered by the state." (Objections, Doc. 343, PageID 18333). McKnight asserts that the state courts did not offer "a rational justification for the exclusion of some, but not all, of Murray's journals[.]" (*Id*. at PageID 18334). McKnight asserts the exclusion of the evidence was arbitrary because it

prevented him from presenting rebuttal evidence about Murray's mental state, a matter which the state made an issue at trial.  (*Id*. at PageID 18332, 18334).

As noted in the discussion of Claim Eleven, *supra*, it is unclear whether *de novo* review of this claim is appropriate because deference may be owed to the Ohio Supreme Court notwithstanding its failure to overtly mention the federal claim in its opinion. In any event, Claim Twelve lacks merit regardless of the standard of review.

McKnight failed to establish that his right to a complete defense was violated.  The Magistrate Judge correctly referenced the appropriate standard from *Holmes v. South Carolina.* States have "broad latitude" to "establish rules excluding evidence from criminal trials."  547 U.S. at 324.  "[W]ell established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."  *Id.* at 326 (internal citations omitted). The Supreme Court, "plainly referring to rules of [that] type," has made clear that the Constitution allows trial judges "to exclude evidence that is 'repetitive ..., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"  *Id.* at 326–327.

As also correctly noted by the Magistrate Judge, McKnight *was* able to present rebuttal evidence regarding Murray's mental state because the trial court admitted the writings relevant to evaluating her mental state in the months preceding her disappearance, including her writings from the summer and fall of 2000 reflecting on her suicide attempt and mental health.  (State Court Record, Doc. 119-3, PageID 12656–12700).  The Ohio Supreme Court explained why Murray's earlier writings were irrelevant to the issue of her mental status in 2000 and therefore inadmissible under the state rules of evidence.  *McKnight*, 2005-Ohio-6046, ¶¶ 153–154. The Magistrate Judge explained why the application of the state's evidentiary rules to exclude

Murray's earlier writings did not deprive McKnight of a complete defense. (Report, Doc. 332, PageID 18091–18092). McKnight fails to demonstrate a constitutional violation and his objections to the dismissal of Claim Twelve are overruled.

## Claim Thirteen

In Claim Thirteen, McKnight contends that the trial court was obligated to hold a more comprehensive hearing under *Remmer v. United States*, 347 U.S. 227 (1954), upon receiving allegations that a juror had discussed the case with a woman he had been dating. (Petition, Doc. 127, PageID 15736–15742). The Magistrate Judge concluded that the Ohio Supreme Court's denial of McKnight's claim was not "contrary to or an unreasonable application of federal law or [based] on an unreasonable determination of the facts." (Report, Doc. 332, PageID 18097). During the trial, the prosecutor informed the trial court that Amy Warrix reported that Juror Terry Stewart talked to her about the case. The judge questioned Juror Stewart in chambers in the presence of the prosecutor and defense counsel. Juror Stewart explained that after he ended his relationship with Warrix the previous evening, she threatened to implicate him in an inappropriate conversation about the case. Juror Stewart said that Warrix tried to talk to him about the case, but he refused because he was under oath not to talk about it. Juror Stewart confirmed that he had not been exposed to any extraneous information about the case. After hearing Juror Stewart's account, defense counsel confirmed that he was satisfied with Juror Stewart's explanation and did not need to question him further. (State Court Record, Doc. 105-20, PageID 6384–6390).

The Ohio Supreme Court held that the trial court had not abused its discretion by not questioning each juror individually. *McKnight*, 2005-Ohio-6046, ¶ 192. The Magistrate Judge concluded that the trial court was not required to question the entire jury because McKnight had

not met his burden of asserting a colorable claim of extraneous influence. (Report, Doc. 332, PageID 18093–18097).

McKnight argues that he met the threshold of showing a colorable claim of extraneous influence on the jury based on Juror Stewart's description of Warrix as mean, hateful, and "despiteful" [*sic*]. (State Court Record, Doc. 105-20, PageID 6383). McKnight also contends the following statements by Juror Stewart support a finding of extraneous influence: he was afraid he would be arrested or imprisoned for violating the court's instructions, Warrix told him "nothing that's gone on in that courtroom," he had no knowledge about where Warrix got her information, Warrix told him what she thought about the case based on what she had seen on television, and "anybody that knows I'm a juror all says something to do with [the case]." McKnight also points to the fact that Juror Stewart failed to deny that Warrix had shared information about the case with him despite denying that he had shared information about the case with her. McKnight faults the trial court for failing to interview Warrix, even though she remained at the courthouse and was available for questioning. (Objections, Doc. 343, PageID 18337–18339 (citations omitted)). McKnight concedes that he has the burden of proof to demonstrate actual bias from the external contact, but he argues that burden applies only to the *Remmer* hearing itself, which the court failed even to hold. (*Id*. at PageID 18342).

The Warden disputes McKnight's characterization of the issue as involving an extraneous influence on the jury. (Response, Doc. 348, at PageID 18488–18489). He argues that the only allegation made at trial was that Juror Stewart was improperly sharing information about the case with Warrix. (*Id.* at PageID 18489). In other words, there was no "colorable claim of extraneous influence" as required for a "*Remmer* hearing, because there was never any claim of external influence.

45

The Ohio Supreme Court made a finding of fact that "the [trial] court believed the juror's denial that he talked to Warrix about the case." *McKnight*, 2005-Ohio-6046, ¶ 191. It dismissed McKnight's claim because no juror misconduct had occurred. *Id.* at ¶ 193.

> A defendant must "do more than simply raise the possibility of bias" in order to obtain a full *Remmer* hearing. To the contrary, a trial court needs to conduct a *Remmer* hearing only when the defense raises a "colorable claim of extraneous influence." An "extraneous influence" is "one derived from specific knowledge about or a relationship with either the parties or their witnesses." Examples of extraneous influences include "prior business dealings with the defendant, applying to work for the local district attorney, conducting an [out-of-court] experiment, and discussing the trial with an employee." A court must seek assurance from the juror that she is capable of proceeding without bias, and if a trial court "views juror assurances of continued impartiality to be credible, the court may rely upon such assurances."

*Jackson v. Bradshaw*, 681 F.3d 753, 766 (6th Cir. 2012) (internal citations omitted). Juror Stewart's assurances satisfied the trial court, prosecution, and defense counsel that he could remain impartial, and the trial court was entitled to rely on those assurances. The Ohio Supreme Court's dismissal of Claim Thirteen was neither contrary to nor an unreasonable application of federal law. McKnight's objections are overruled.

### Claim Fourteen

In Claim Fourteen, McKnight contends he was deprived of due process and trial by a fair and impartial jury when the trial court failed to remove a sleeping juror. (Petition, Doc. 127, PageID 15742–15746). The Magistrate Judge held that the claim was procedurally defaulted because the Ohio Supreme Court enforced Ohio's contemporaneous objection rule. *McKnight*, 2005-Ohio-6046, ¶¶ 185–186; (Report, Doc. 332, PageID 18098). The Ohio Supreme Court conducted a plain error analysis, concluding:

> {186} No plain error occurred. There was only a vague allegation that jurors were sleeping when the issue was first raised with the trial court. Juror Trivette was

46

alleged to have been asleep during a later portion of the trial, but the defense has
provided no evidence that this juror was in fact sleeping. Thus, whether Juror
Trivette or any other juror was in fact sleeping is speculative. The trial court
observed that Juror Trivette did not "move around like other jurors * * * [and]
just [maintained] a fixed position, as she [had] throughout." The trial court noted
counsel's concern about Juror Trivette's sleeping, but no further concern about
sleeping jurors was raised during the trial.

{¶ 187} Moreover, appellant has provided no evidence of prejudice. Nothing in
the record shows what part of the testimony, if any, jurors actually missed. Based
on the foregoing, we reject proposition XI.

*McKnight*, 2005-Ohio-6046, ¶¶ 186–187 (internal citations omitted).

The Magistrate Judge alternatively determined there was a lack of evidence on how long

the jurors may have been asleep or what testimony they may have missed and concluded that

McKnight was not entitled to relief. The Magistrate Judge also noted the absence of any

authority for McKnight's contention that prejudice must be presumed. (*Id*. at PageID 18100–

18101 (citing *United States v. Rafidi*, 829 F.3d 437 (6th Cir. 2016)).

McKnight failed to brief any aspect of the Magistrate Judge's procedural default

determination and the Court considers the objection waived. McKnight also contests the

conclusion that his claim would be meritless even if it had been preserved. (Objections, Doc.

343, PageID 18345). He disputes the Magistrate Judge's determination "that there is no

evidence of how long the jurors slept or what testimony they did not hear[,]" pointing out that the

record shows that jurors fell asleep during the testimony of Detective Richard Brenneman and

again during Ohio Bureau of Criminal Investigation (BCI) forensic scientist Heather Zollman's

testimony. (*Id*. (citing State Court Record, Doc. 105-16, PageID 5799, and Doc. 105-22, PageID

6750–6752).

Criminal defendants have a constitutional right to a fair trial and an impartial jury, *see*

*Irvin*, 366 U.S. at 721, that is competent and unimpaired, *see Tanner v. United States,* 483 U.S.

107, 126–127 (1987). A defendant could be deprived of the Fifth Amendment right to due

process or the Sixth Amendment right to an impartial jury if jurors fall asleep and are unable to

fairly consider the defendant's case. *See United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir.

2000). A defendant's general assertions that jurors dozed off during parts of a trial "are too

vague to establish prejudice." *United States v. Tierney*, 947 F.2d 854, 869 (8th Cir. 1991); *see

also United States v. Sherrill*, 388 F.3d 535, 537 (6th Cir. 2004) ("Sherrill has provided no

evidence—indeed, he makes only a vague assertion—that the juror was in fact sleeping, and that

such behavior had a prejudicial effect on his defense").

The state trial court made a factual determination that allegations about sleeping jurors

were "speculative" and "[n]othing in the record shows what part of the testimony, if any, jurors

actually missed." *McKnight*, 2005-Ohio-6046, at ¶ 187. This Court is bound, in the absence of

clear and convincing evidence, to accept the state court's factual determination as correct. *See*

28 U.S.C. § 2254(e)(1). Thus, the allegations in Claim Fourteen do not rise to the level of a

constitutional violation. McKnight's objection is not well-taken and Claim Fourteen must be

dismissed.

## Claim Fifteen

McKnight contends in Claim Fifteen that that he was deprived of due process and a fair

trial when the trial court failed to take curative action in response to a spectator's one-word

outburst, "No," during closing arguments of the guilt phase. (Petition, Doc. 127, PageID 15747–

15750). On direct appeal, the Ohio Supreme Court held that McKnight could not show prejudice

because trial counsel never reported the outburst, and there was no evidence that the jurors heard

the one-word outburst, or any evidence that it affected them. *McKnight*, 2005-Ohio-6046, ¶ 204.

The Magistrate Judge concluded the state court's rejection of the claim did not run afoul of

federal law, given the context and nature of the spectator's comment and defense counsels' failure to respond to it. (Report, Doc. 332, PageID 18105).

McKnight contends that the state court unreasonably applied *Remmer* and its progeny. (Objections, Doc. 343, PageID 18347–18348). McKnight argues that his case should be distinguished from *White v. Smith*, 984 F.2d 163 (6th Cir. 1993), cited by the Magistrate Judge, because the trial court undertook no curative action in the wake of a spectator outburst. (*Id*. at PageID 18349 (quoting *White*, 984 F.2d at 166). McKnight stresses that here, the trial court not only failed to conduct a *Remmer* hearing, but it "did not even question or admonish the jury" after the outburst. (*Id*.) McKnight argues that the trial court's failure to act was exacerbated by the "extensive and inflammatory" pretrial publicity, the victim impact and victim character evidence presented by the state, and the state's introduction of "extensive bad character evidence, portraying McKnight as an evil black male who preyed on white women." (*Id*.)

In *White*, the defendant's mother approached the jurors as they were retiring to deliberate and said that she would pray for them. 984 F.2d at 164. A few of the jurors reported to the trial judge that the statements made them nervous, and they were worried about reprisals. The trial judge advised the jury that he believed the defendant's mother meant no harm, he would be instructing "everyone to stay away from the jury," and any threats would be "dealt with severely." *Id.* The Sixth Circuit reversed the district court's grant of habeas relief, finding that *Remmer* did not apply to facially nonthreatening communications made inside the controlled conditions of the courtroom:

> We cannot conclude, however, as White would have us, that the Constitution requires a trial court to *sua sponte* conduct a full-blown evidentiary hearing every time a courtroom spectator makes a comment within the jury's hearing. Where the communication is innocuous and initiated by a spectator in the form of an outburst, a hearing is not necessarily required. This is particularly true when,

49

> as in this case, the trial judge follows up with a statement to the
> jury, allaying any apprehensions.

*Id.* at 166–167. In McKnight's case, the audience member's outburst, "No," was not objectively

threatening to the jurors, nor did any juror report being threatened by the statement. The

admonition McKnight argues was required is not supported by *White*.

In any event, habeas relief is reserved for violations of clearly established Supreme Court

precedent. McKnight identifies no Supreme Court precedent that requires a trial judge to *sua*

*sponte* admonish the jury after an audience outburst of this nature. The Ohio Supreme Court's

dismissal of this claim for lack of prejudice is neither contrary to nor an unreasonable application

of federal law. The Court finds no error in the Magistrate Judge's conclusion that the state

court's decision was not unreasonable. McKnight's objection is overruled.

### Claim Sixteen

McKnight contends in Claim Sixteen that his constitutional rights were violated when he

was shackled in the jury's presence without justification. (Petition, Doc. 127, PageID 15750-

15753). Citing *Illinois v. Allen,* 397 U.S. 337, 344 (1970), the Ohio Supreme Court

acknowledged that "[n]o one should be tried while shackled, absent unusual circumstances," but

found the shacking harmless because "[t]he jury's view of [McKnight] was brief and

inadvertent" and "the trial court's curative instruction removed any prejudice." *McKnight*, 2005-

Ohio-6046, ¶¶ 219–220. The Magistrate Judge found that the Ohio Supreme Court's dismissal of

McKnight's claim was neither contrary to nor an unreasonable application of federal law.

(Report, Doc. 332, PageID 18109). To obtain relief on this trial error claim adjudicated on the

merits, McKnight must show that the error had a substantial and injurious effect or influence on

the outcome of his trial and that the trial court's dismissal of his claim was objectively

unreasonable. *See Brown*, 142 S. Ct at 1520. McKnight fails to meet both standards.

50

McKnight argues that the Sixth Circuit draws a distinction in the proof necessary for relief depending on the location where the jury viewed the defendant in shackles. McKnight contends that it is inherently prejudicial if the jury views the defendant shackled in the courtroom. However, according to McKnight, to obtain relief for shacking outside the courtroom requires a showing of actual prejudice. (Objections, Doc. 343, PageID 18354 (quoting *United States v. Moreno*, 933 F.2d 362, 368 (6th Cir. 1991))).

Location is not the sole factor that the Sixth Circuit uses to determine whether prejudice is presumed when a defendant was shackled in the jury's presence. The Sixth Circuit has distinguished the inherent prejudice of keeping a defendant shackled during trial from those cases "where the defendant was seen in shackles for a short period of time either in the courtroom or somewhere in the courthouse by the jury, by one or more jurors or by veniremen." *Kennedy v. Cardwell*, 487 F.2d 101, 109 (6th Cir. 1973); *see, e.g.*, *Moreno*, 933 F.2d at 368 (quoting *Payne v. Smith*, 667 F.2d 541, 544–545 (6th Cir. 1981) ("Defendants are required to show actual prejudice where '[t]he conditions under which defendants were seen were routine security measures rather than situations of unusual restraint such as shackling during trial.'"). In other words, the significance does not lie in the location—inside or outside the courtroom—but in the duration and timing. Prejudice is presumed when a defendant is required to remain in shackles during trial, whereas prejudice must be proved in instances in which the jury is momentarily exposed to the defendant in restraints before or after trial proceedings.

The United States Supreme Court recently revisited the issue of shackling inside of the courtroom in *Brown v. Davenport*. During Davenport's trial, but not during his testimony, officials shackled one of his hands, his waist, and his ankles. Those shackles may not have been visible to many in the courtroom because of a "privacy screen" around the table where Mr.

Davenport sat. 142 S. Ct. at 1518. The Michigan Supreme Court had concluded that the trial

court's actions violated *Deck v. Missouri*, 544 U.S. 622 (2005), but ultimately had determined

that the error was harmless. *Id.* On habeas review, the Sixth Circuit reversed, finding that the

shackling had a substantial and injurious effect on the verdict under *Brecht v. Abrahamson.* The

Supreme Court concluded that, to obtain habeas relief, Davenport was required to satisfy the

standard in § 2254(d)(1) and the standard set forth in *Brecht*. *Id.* at 1520. The Supreme Court

determined that Davenport could not meet the requirements of § 2254(d)(1) because the

Michigan Supreme Court determination that the shackling was harmless was not unreasonable.

*Id.* at 1529–1530.

      McKnight's case falls within the class of cases dealing with momentary exposure.

Because he has not demonstrated that he suffered any prejudice, he has not shown a substantial

and injurious effect on the verdict. The Ohio Supreme Court rejected the claim because the

jury's view of McKnight was "brief and inadvertent" and "the trial court's curative instruction

removed any prejudice." McKnight has also failed to show this conclusion was contrary to or an

unreasonable application of federal law and Claim Sixteen must be dismissed.

### Claim Seventeen

      In Claim Seventeen, McKnight contends he was deprived of due process and a fair trial

when the trial court instructed the jury during the penalty phase that it was to "decide whether

the State has proved beyond a reasonable doubt that Gregory McKnight committed the

aggravated murder for the purpose of escaping detection, apprehension, trial or punishment for

the kidnapping and/or a theft offense." (Petition, Doc. 127, PageID 15753–15757) (quoting State

Court Record, Doc. 105-26, PageID 7269)). He argues that joining the separate offenses of

kidnapping and theft in a single specification "lack[s] the requisite specificity that fundamental

due process requires to avoid duplicity" because statutory alternatives that are independent

elements must be charged in separate counts and decided separately. (*Id*. at PageID 15754–

15755, ¶ 289 (citing *Schad v. Arizona*, 501 U.S. 624, 632 (1991), *abrogated on other grounds by*

*Ramos v. Louisiana*, 140 S. Ct. 1390 (2020)). According to McKnight, the improper joining of

the two offenses also allowed the jury to find him guilty of acting to escape detection without

unanimous agreement as to whether he was escaping detection for the crime of kidnapping or the

crime of theft. (*Id*. at PageID 15755, ¶ 291 (citing *Duncan v. Louisiana*, 391 U.S. 145, 152

(1968))). McKnight also contests the specific instructions for proving kidnapping and robbery

because both charges allowed for alternative means of committing the crime. (*Id*. at PageID

15755–15757, ¶¶ 292–299).

The Ohio Supreme Court found the claim was waived because McKnight's trial counsel

invited the error by submitting the language for the jury instruction and because counsel failed to

object to the jury instruction at trial. On plain error review, the Ohio Supreme Court concluded:

> Neither the kidnapping nor the aggravated-robbery instructions
> were improper, because the alternatives were given to the jury
> disjunctively. *State v. Nields* (2001), 93 Ohio St.3d 6, 30, 752
> N.E.2d 859; *State v. Cook* (1992), 65 Ohio St.3d 516, 527, 605
> N.E.2d 70. Jurors need not agree on a single means for committing
> these offenses. The United States Supreme Court has stated,
> "'[D]ifferent jurors may be persuaded by different pieces of
> evidence, even when they agree upon the bottom line. Plainly there
> is no general requirement that the jury reach agreement on the
> preliminary factual issues which underlie the verdict.'" *Schad v.
> Arizona* (1991), 501 U.S. 624, 631–632, 111 S.Ct. 2491, 115
> L.Ed.2d 555, quoting *McKoy v. North Carolina* (1990), 494 U.S.
> 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (Blackmun, J.,
> concurring).

*McKnight*, 2005-Ohio-6046, ¶ 228. The Ohio Supreme Court also concluded that "[t]he jurors

did not convict appellant of the (A)(3) specification, ["the purpose of escaping detection,

apprehension, trial or punishment for *kidnapping and/or a theft offense*,"] on alternative theories,

because the same jury separately convicted him of *both* kidnapping and aggravated robbery. Thus, the outcome of [McKnight]'s case would not have been different had the instructions been worded differently." *Id.* at ¶ 226 (internal citations omitted).

The Magistrate Judge determined that the claim was procedurally defaulted based on the grounds articulated by the Ohio Supreme Court. (Report, Doc. 332, PageID 18110–18113). The Magistrate Judge also concluded that the claim was nevertheless meritless because the jury unanimously found McKnight guilty beyond a reasonable doubt in the guilt phase of the trial and it was extremely unlikely that any juror would have changed his or her vote at sentencing if the aggravating circumstance had only referenced one of the underlying offenses. (*Id*. at PageID 18113). Thus, McKnight was not prejudiced by the phrasing of the jury instruction. (*Id*.).

McKnight objects to the finding of procedural default, arguing that the procedural default should be excused because his trial counsel was ineffective for failing to object. McKnight independently raised ineffective assistance of counsel as grounds for habeas relief in Claim Twenty-Nine. (Objections, Doc. 343, PageID 18358). As discussed below in Claim Twenty-Nine, McKnight's ineffective assistance of counsel claim lacks merit and he cannot establish the cause necessary to excuse his procedural default. *See Coleman*, 501 U.S. at 750 (holding that procedural default may be overcome if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law"). Therefore, McKnight's objection to the finding of procedural default is overruled.

With respect to the merits of Claim Seventeen, McKnight argues that "there was a reasonable likelihood of a different outcome under a proper weighing of the aggravation to determine if it outweighed the mitigation beyond a reasonable doubt" because he "would have had fewer aggravating circumstances on his conviction." (Objections, Doc. 343, PageID 18359).

54

Finally, McKnight argues that *Schad* is distinguishable because it concerned alternative means of committing an offense whereas his claim concerned whether the instruction shifted the burden against him in the weighing of aggravating and mitigating circumstances. (Objections, Doc. 343, PageID 18359–18360 (*Schad*, 501 U.S. at 630))).

"To warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. The burden is even greater than that required to demonstrate plain error on appeal.'" *Buell*, 274 F.3d at 355 (quoting *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000)). McKnight has failed to identify Supreme Court precedent that condemns the penalty phase jury instruction he complains about in Claim Seventeen. Considering the unanimous guilty verdict during the guilt phase, McKnight also fails to demonstrate that the Ohio Supreme Court's dismissal of the claim was objectively unreasonable. McKnight's objections to the Magistrate Judge's merits determination are also overruled.

**Claim Eighteen**

McKnight contends in Claim Eighteen that his right to due process, a fair trial, and an impartial jury were violated. Specifically, McKnight complains about the trial court's guilt-phase instruction to the jury that if they found McKnight guilty of kidnapping per Ohio Rev. Code § 2905.01(C), they must then decide whether Murray was released unharmed in a safe place. (Doc. 127, PageID 15758, ¶ 304). Kidnapping under Ohio Rev. Code § 2905.01(C) is a first-degree felony, but may be reduced to a second-degree felony if the defendant pleads and proves the affirmative defense that he "release[d] the victim in a safe place unharmed." McKnight contends that the instruction was improper because he did not present evidence that Murray was released in a safe place unharmed. (Petition, Doc. 127, PageID 15759, ¶ 308). He argues that he

was prejudiced by the instruction because "the jury could have used this element as proof for the underlying felony." (*Id*. at ¶ 308).

The Ohio Supreme Court concluded that McKnight preserved his objection for appeal. *McKnight*, 2005-Ohio-6046, ¶ 233 (quoting Ohio Rev. Code § 2905.01(C)). It also agreed with McKnight that the language was not properly at issue because he had not argued that Murray was released unharmed in a safe place, but it denied the claim for lack of prejudice:

> [McKnight] argues that the instruction on release in a "safe place unharmed" was prejudicial, turning a mitigating circumstance into an aggravating element. That assertion, however, is speculative. Moreover, overwhelming evidence supported the jury's verdict on the kidnapping and murder charges. Consequently, [McKnight] suffered no prejudice by the finding of the jury that Murray was not released "in a safe place unharmed." Thus, we overrule proposition XX.

*Id*. at ¶ 234.

The Magistrate Judge concluded that McKnight's Fifth and Eighth Amendment arguments were procedurally defaulted because those were not raised in state court. (Report, Doc. 332, PageID 18114 (citing Return of Writ, Doc. 13, PageID 455, and State Court Record, Doc. 106-15, PageID 9584)). The Magistrate Judge also concluded that the state court's finding that any resulting prejudice was purely speculative was not unreasonable and recommended that the claim be denied. (*Id*., PageID 18115A18116).

In his Objections, McKnight disputes the Ohio Supreme Court's reasoning, asserting that the amount of evidence supporting the conviction is irrelevant to the jury's task of weighing the aggravating and mitigating circumstances during the penalty phase. (Objections, Doc. 343, PageID 18361–18362). McKnight argues that he was prejudiced because the prosecution "emphasized that Murray was murdered rather than released in a safe place unharmed," which turned the affirmative defense into an aggravating factor because it "created the direct inference

that McKnight should be penalized because he did not release Murray in a safe place unharmed." (*Id*., PageID 18362–18363).

The Warden contends that McKnight's claim of prejudice from a flawed guilt-phase jury instruction was properly found to be speculative by the Ohio Supreme court. (Response, Doc. 348, PageID 18494 (citing *McKnight*, 2005-Ohio-6046, ¶ 234)). Moreover, the Warden argues that habeas relief is also precluded because McKnight did not raise an issue under the federal constitution. (*Id*. at PageID 18495 (citations omitted)). According to the Warden, McKnight relied entirely on state law before the Ohio Supreme Court on direct appeal. (*Id*. at PageID 18495–18496).

Because the Ohio Supreme Court engaged in harmless error review, to obtain relief on this claim, McKnight must show that the error had a substantial and injurious effect or influence on the outcome of his trial and that the trial court's dismissal of his claim was objectively unreasonable. *Brown,* 142 S. Ct. at 1520. McKnight fails to meet both standards. As noted by the Ohio Supreme Court, McKnight's assertion of prejudice—whether at the guilt or penalty phase—is highly speculative. Speculation is insufficient to convince this Court that the instruction had a substantial and injurious effect on the verdict. Furthermore, McKnight fails to demonstrate that the Ohio Supreme Court's dismissal of the claim was objectively unreasonable.

For the above reasons, McKnight's objections to the Report's conclusions on Claim Eighteen are overruled.

## Claim Nineteen

In Claim Nineteen, McKnight contends that his absence from chambers when Juror Stewart was questioned on the allegations of misconduct, and again during a hearing to review proposed jury instructions, violated his constitutional rights to a fair trial, due process, and the

right to confront witnesses against him. (Petition, Doc. 127, PageID 15760–15762). McKnight alleges that his counsel unilaterally waived his presence during the questioning of Juror Stewart without first obtaining his knowing, intelligent, and voluntary waiver of appearance. (*Id*. at PageID 15761, ¶ 314). The Ohio Supreme Court denied the claim on direct appeal, finding that McKnight had waived his presence to in-chambers proceedings and could not show that he was prejudiced by his absence. *McKnight*, 2005-Ohio-6046, ¶¶ 214–215.

The Magistrate Judge recommended that Claim Nineteen be denied. (Report, Doc. 332, PageID 18116–18120). He concluded that McKnight validly waived his presence by verbal agreement during a pretrial hearing that any in-chambers conferences could be conducted with only the court, court staff, and counsel present. (*Id*. at PageID 18119–18120 (quoting State Court Record, Doc. 105-1, PageID 3307–3308)). The Magistrate Judge further concluded that McKnight was not prejudiced, as he had not shown that his absence from either the in-chambers *voir dire* of Juror Stewart or the review of proposed jury instructions thwarted the fairness of those hearings. (*Id*. at PageID 18118).

McKnight argues that he "was not in a position to make a knowing, intelligent[,] and voluntary waiver of his presence at an in-chambers meeting that would not occur until four months later" on "a critical issue that neither he, nor anyone else involved in the trial, could have anticipated." (Objections, Doc. 343, PageID 18365). Repeating arguments previously raised in his Traverse, McKnight also maintains that his absence from both hearings undermined the fairness of those proceedings. (*Id.*). He contends that his ability to determine whether juror misconduct occurred was necessary for a fair hearing on the "critical" issues of jury bias and misconduct given that "no party to the in-chambers conference saw the need to examine the inconsistent answers given by Juror [Stewart] or even question Ms. Warrix." (*Id.*) McKnight

does not explain why his presence was necessary to the fairness of the discussion on proposed jury instructions, instead simply arguing that it was a critical proceeding because the jury instructions would "define[] the parameters within which the jury decided whether [McKnight] should live or die." (*Id*. at PageID 18366). He asserts that his jury was not properly instructed at either phase of his trial—raised separately as Claims Seventeen, Eighteen, Twenty, and Twenty-Two[5]—as a result of his absence. (*Id*.)

The Ohio Supreme Court determined that McKnight validly waived his presence at the two proceedings he was challenging. It then identified relevant and applicable United States Supreme Court and Sixth Circuit precedent and concluded that McKnight was not prejudiced. *McKnight*, 2005-Ohio-6046, ¶¶ 214–215. McKnight has failed to show how the Ohio Supreme Court's dismissal of this claim was contrary to or an unreasonable application of clearly established federal law. As the Ohio Supreme Court noted, the meetings largely concerned "legal issues within the professional competence of counsel, not issues that [McKnight] must personally decide." *Id.* ¶ 215 (citing *United States v. Gagnon*, 470 U.S. 522, 526 (1985)). McKnight's objections to the Report on Claim Nineteen are overruled.

## Claim Twenty

McKnight argues in Claim Twenty that the jury instructions, at both the guilt and penalty phases, allowed the jury to convict and sentence him on a standard of proof below "beyond a reasonable doubt" which is required by the Fourteenth Amendment's Due Process Clause and the Eighth Amendment. (Petition, Doc. 127, PageID 15762–15764). Specifically, McKnight

---

[5] McKnight states that his claims regarding erroneous jury instructions are in his seventeenth, eighteenth, and *twenty-first* claims for relief. (Objections, Doc. 343, PageID 18366.) The Court presumes he instead meant either or both of Claims Twenty or Twenty-Two, which challenge the jury instructions on reasonable doubt and an allegedly invalid aggravating circumstance, respectively, while Claim Twenty-One concerns the trial court's exclusion of victim impact evidence.

objects to language in the instructions defining "beyond a reasonable doubt" as "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his or her own affairs." McKnight also objects to the first line of the instructions: "Reasonable doubt is present when, after you have carefully considered and compared all evidence, you cannot say you are firmly convinced of the truth of the charge."[6] (*Id*. at ¶ 319 (quoting Doc. 105-27, PageID 7254)). He argues that the "firmly convinced" language "is nearly identical to the impermissibly lower civil standard for 'clear and convincing' evidence." (*Id*. at PageID 15763, ¶ 325 (citing *Holland v. United States*, 348 U.S. 121, 140 (1954), and *Scurry v. United States*, 347 F.2d 468, 470 (D.C. Cir. 1965))).

The Ohio Supreme Court rejected McKnight's claim on direct appeal. *McKnight I*, 2005-Ohio-6046, ¶ 308 (citing *Ohio v. Jones*, 91 Ohio St.3d 335, 347 (2001)). The Magistrate Judge concluded that the rejection of Claim Twenty was neither contrary to nor an unreasonable application of clearly established federal law. The Magistrate Judge cited relevant, clearly established law from the United States Supreme Court and the Sixth Circuit finding the exact language McKnight challenges here to be constitutional:

> Although McKnight's challenging of an instruction never given at his trial is enough to defeat his claim, the Court observes that McKnight also conspicuously neglects to mention the Supreme Court case of *Victor v. Nebraska*, 511 U.S. 1 (1994), where the Court stated as follows:
>
> > The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Cf. *Hopt v. Utah*, 120 U.S.

---

[6] The corresponding first line of the jury instructions at the penalty phase of trial reads: "Reasonable doubt is present when, after you have carefully considered and compared all the evidence, you cannot say you are firmly convinced that the aggravating circumstances of which the defendant was found guilty outweigh the mitigating factors." (Petition, Doc. 127, PageID 15762–15763, ¶ 320 (quoting Doc. 105-27, PageID 7415)).

430, 440–441 (1887). Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, see *Jackson v. Virginia*, 443 U.S. 307, 320 (1979), the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Cf. *Taylor v. Kentucky*, 436 U.S. 478, 485–486 (1978). Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." *Holland v. United States*, 348 U.S. 121, 140 (1954).

*Id.* at 5 (parallel citations omitted). The Court went on to explain that it had only found a definition of reasonable doubt violative of the Due Process Clause one time, that being *Cage v. Louisiana*, 498 U.S. 39 (1990) (*per curiam*), a death penalty case. Soon after *Cage*, the Court, in an attempt to clarify the question courts must answer when a petitioner challenges a jury instruction, stated that it is not how reasonable jurors could have understood the charge as a whole, but "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72 and n.4 (1991) (disapproving *Cage*), quoting *Boyde v. California*, 494 U.S. 370, 380 (1990) (emphasis added).

In any event, the Sixth Circuit has repeatedly held that the language McKnight challenges does not violate due process. *Franklin v. Bradshaw*, 695 F.3d 439, 456 (6th Cir. 2012); *White v. Mitchell*, 431 F.3d 517, 534 (6th Cir. 2005); *Coleman v. Mitchell*, 268 F.3d 417, 437 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 366 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir. 2000); *Scott v. Mitchell*, 209 F.3d 854, 884 (6th Cir. 2000); *Thomas v. Arn*, 704 F.2d 865, 867–68 (6th Cir. 1983). McKnight does not explain why the "reasonable doubt" instructions given in his case should be treated differently from the same instructions in those cases. The Ohio Supreme Court's rejection of McKnight's claim on direct appeal was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Consequently, his twentieth ground for relief should be denied.

(Report, Doc. 332, PageID 18122–18124).

McKnight argues that the trial court's instructions on reasonable doubt failed to satisfy *Victor*'s requirement that trial courts merely "correctly conve[y] the definition of reasonable doubt to the jury."  (Objections, Doc. 343, PageID 18369–18370 (alteration in original)).  He also cites instances in which the Supreme Court and the Sixth Circuit have criticized similar "willing to act" language.  (*Id.* at PageID 18369 (citing *Holland*, 348 U.S. at 140, *Thomas v. Arn*, 704 F.2d 865, 868–869 (6th Cir. 1983), and *Scurry*, 347 F.2d at 470).

McKnight's objections lack merit.  As the Magistrate Judge explained in the Report, the reasonable doubt instruction provided at McKnight's trial has been previously challenged on the same grounds and found to satisfy due process.  (Doc. 332, PageID 18122–18124).  The cases McKnight cites, which criticized the "willing to act" language, also held that the challenged instructions "adequately convey the concept of reasonable doubt to the jury[.]"  *Thomas*, 704 F.2d at 869; *see also Holland*, 348 U.S. at 140 (reasonable doubt instruction, despite the Court's disapproval of the "willing to act" language, "was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some."); *Scurry*, 347 F.2d at 469–470 (disapproving of the "willing to act" language in the instruction for "proof beyond a reasonable doubt" but holding that the charge taken as a whole had adequately conveyed the concept of reasonable doubt to the jury).  The Sixth Circuit noted in *Thomas*, the "willing to act" language has been upheld by the courts criticizing it even on direct appeal, where the standard of review is easier to meet than in habeas review. 704 F.2d at 868–869 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

McKnight has failed to demonstrate a violation of clearly established Supreme Court precedent entitling him to habeas relief. Accordingly, the Court adopts the Magistrate Judge's recommendation in the Report and dismisses Claim Twenty.

## Claim Twenty-One

In claim Twenty-One, McKnight contends that the exclusion of an affidavit from Emily Murray's sister, Kathleen Murray, in which she asked the court to spare McKnight's life, denied him a fair and reliable sentencing determination in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.  (Petition, Doc. 127, PageID 15764–15767).  He argues that Murray's affidavit was not excludable opinion evidence, but it was instead admissible evidence of McKnight's history and background and the effect ongoing court proceedings would have on Murray's family.  (*Id*. at ¶ 332).  McKnight maintains that true victim impact evidence, such as Murray's affidavit, could not be excluded without violating his right to due process and equal protection.  (*Id*. at ¶¶ 332–333).

The Ohio Supreme Court concluded that "possible testimony from Murray's family members recommending a life sentence had no relevance to appellant's character, prior record, or the circumstances of the offense."  *McKnight*, 2005-Ohio-6046, ¶ 245.  Citing *Payne v. Tennessee*, 501 U.S. 808, 827 (1991), it further concluded that the trial court did not err in refusing to admit the Murray family's opinion about the death penalty as victim impact evidence.  *Id.* at 247.

The Magistrate Judge summarized the governing law on victim impact evidence set forth by the United States Supreme Court in *Bosse v. Oklahoma,* 580 U.S. 1 (2016) (*per curiam*).  In sum, States may choose to allow the admission of victim impact evidence regarding the personal characteristics of the victim and the emotional impact of the crimes on the victim's family, but the Eighth Amendment prohibits admission of the characterizations and opinions from a victim's family members about the crime, the defendant, and the appropriate sentence. (Report, Doc. 332, PageID 18125 (quoting *Bosse*, 137 S. Ct. at 1–2, and *Payne*, 501 U.S. at 827 (1991))).  The

Magistrate Judge concluded that the evidence McKnight characterized as victim impact evidence and wished to admit was "in reality . . . opinion on what sentence was appropriate for McKnight" and thus is barred from admission by Supreme Court precedent. (Report, Doc. 332, PageID 18127).

McKnight argues that the trial court was constitutionally required to admit the evidence of Emily Murray's opposition to the death penalty and the Ohio Supreme Court's decision to the contrary was an unreasonable application of the clearly established law of the United States Supreme Court. (Objections, Doc. 343, PageID 18372–18373). He cites to the principle, first articulated in *McCleskey v. Kemp*, that "States cannot limit the sentencer's consideration of any relevant circumstance that could cause it to decline to impose the penalty." *Id*. (quoting *Payne*, 501 U.S. at 824, and *McCleskey*, 481 U.S. at 305–306). Noting that victim identity is often a relevant circumstance in capital cases, McKnight argues that the trial court violated *McCleskey* and *Payne* by refusing to admit evidence of the relevant circumstance that Emily Murray was a person who was opposed to capital punishment. (*Id*. at PageID 18373).

The Court is unpersuaded by McKnight' attempts to re-characterize Emily and Kathleen's Murray's respective opinions about the death penalty as both victim impact evidence and a relevant circumstance of the crime that is constitutionally required to be admitted. McKnight cites no authority for the proposition that the opinions of a victim or her family members about the death penalty constitute relevant mitigation evidence pursuant to *McCleskey*. Courts that have considered the applicability of *Payne*'s prohibition on opinions favorable to the defense have concluded that the evidence is irrelevant and inadmissible per *Payne*. *See, e.g.*, *United States v. Brown*, 441 F.3d 1330, 1351 n.8 (11th Cir. 2006) (holding that family members' opposition to the death penalty was neither relevant nor admissible); *Robinson v. Maynard*, 829

F.2d 1501, 1504–05 (10th Cir. 1987), *overruled on other grounds by Romano v. Gibson*, 239

F.3d 1156, 1169 (10th Cir. 2001).  Moreover, even if not expressly forbidden by *Payne*, "the

[Supreme] Court has never held that a defendant in a capital case in entitled to have the jury

consider the victim's family's recommendation of leniency."  *Sansing v. Ryan*, 41 F.4th 1039,

1063-1064 (9th Cir. 2022) (holding that state court did not unreasonably apply the Supreme

Court's Eighth Amendment precedent when it found that the exclusion of the victim's daughter's

letter opposing a death sentence did not violate the defendant's constitutional rights).

McKnight has failed to demonstrate a clearly established legal principle from a Supreme

Court justifying habeas relief. Accordingly, the Court overrules McKnight's objections on Claim

Twenty-One.

### Claims Twenty-Two and Twenty-Five

In Claims Twenty-Two and Twenty-Five, McKnight contends his constitutional rights

were violated due to various jury errors in weighing the aggravating and mitigating

circumstances in the penalty phase of his trial. (Petition, Doc. 127, PageID 15767–15770,

15776–15779).  As to both claims, the Magistrate Judge concluded that the Ohio Supreme Court

cured any errors that occurred at the trial court level by independently reweighing the

aggravating and mitigating factors, relying on *Clemons v. Mississippi,* 494 U.S. 738, 741 (1990).

(Report, Doc. 332, PageID 18130–18131, 18143 (quoting *McKnight*, 2005-Ohio-6046, ¶ 256)).

McKnight argues that *Hurst v. Florida*, 577 U.S. 92, 94 (2016), prohibits the Ohio

Supreme Court from independently reweighing the aggravating and mitigating factors to cure

trial court error.  (Objections, Doc. 343, PageID 18376–18377).  *Hurst* held a Florida law

unconstitutional that called for the judge, not the jury, to make the factual findings regarding the

existence of aggravating circumstances necessary to impose a death sentence.  577 U.S. at 98–

99.  The Supreme Court held that this type of sentencing scheme violates a defendant's Sixth Amendment right to have a jury determine any facts that trigger an increase in punishment.  *See Ring v. Arizona*, 536 U.S. 584, 604–605 (2002) (invalidating a death sentence where a judicial finding of an aggravated circumstance exposed the defendant to a punishment more severe than that authorized by the jury's guilty verdict alone).

McKnight argues that the facts necessary to impose a death sentence in Ohio—and thus necessarily subject to determination by the jury—include both the existence of the statutory aggravating circumstances and whether the aggravating circumstances outweigh the mitigating factors.  (Objections, Doc. 343, PageID 18377).  McKnight argues that reweighing by the appellate court is violative of *Hurst* because it permits the appellate court to make a finding requisite to imposition of the death penalty, which is the sole province of the jury.  (*Id*. at PageID 18380–18381).

McKnight previously moved to amend his petition to add a claim that Ohio's capital sentencing scheme was unconstitutional based on *Hurst* because the jury's penalty phase verdict and death recommendation were merely advisory, relying on the very argument he now reprises as an objection to the Report.  (Motion for Leave, Doc. 215).  In his Motion, McKnight also asserted the argument he now advances as an objection to the Report: that Ohio's process of "appellate reweighing violates the Sixth Amendment."  (*Id*. at PageID 16643). The Magistrate Judge denied McKnight's motion to amend, concluding that the proposed claim would be futile because Ohio's capital sentencing scheme was materially different from the Florida law invalidated by *Hurst*:

> In Ohio, unlike Florida, the trial judge could not find an aggravating circumstance the jury had not already found beyond a reasonable doubt in the culpability phase of the trial.

66

(Decision and Order, Doc. 222, PageID 16725).

The Magistrate Judge also determined that *Hurst* was a new rule not applicable retroactively to convictions and sentences finalized before it was announced on January 12, 2016.  (*Id*. at PageID 16726–16728).  McKnight appealed that decision (Doc. 236), as well as the Magistrate Judge's Supplementary Memorandum Opinion (Doc. 235), and, on *de novo* review, the Court affirmed the Magistrate Judge's decision.  (Decision and Order, Doc. 246).

The reasons articulated for the earlier denial of McKnight's proposed *Hurst* claim also apply to his argument here.  *Hurst* announced a new rule that does not apply retroactively to McKnight's case. McKnight's conviction and sentence became final when the United States Supreme Court denied his petition for certiorari no later than June 26, 2006—nearly ten years before *Hurst*.  (State Court Record, Doc. 107-5, PageID 10427).  In *Edwards v. Vannoy*, 141 S. Ct. 1547, 1560 (2021), the Supreme Court made its position clear, "[n]ew procedural rules do not apply retroactively on federal collateral review."  Since the Magistrate Judge's original decision rejecting McKnight's proposed *Hurst* amendment on February 15, 2017 (Doc. 222), this Court has consistently interpreted *Hurst* as announcing a new rule that may not be applied retroactively in habeas corpus.  *See, e.g.*, *Johnson v. Bobby*, Case No. 2:08-cv-55, 2021 WL 6125049, at *154 (S.D. Ohio Dec. 28, 2021); *Davis v. Shoop*, No. 2:16-CV-495, 2020 WL 3255145, at *30 (S.D. Ohio June 16, 2020), *report and recommendation adopted as modified,* No. 2:16-CV-495, 2021 WL 1172048 (S.D. Ohio Mar. 29, 2021); *Fears v. Jenkins*, No. 2:17-CV-029, 2017 WL 1177609, at *3 (S.D. Ohio Mar. 30, 2017).

Even if *Hurst* could be applied to McKnight's case, his claim would fail because the same argument was rejected by the Supreme Court in *McKinney v. Arizona*, 140 S. Ct. 702 (2020).  In *McKinney*, the Supreme Court held that a state supreme court could, in accordance

with *Clemons*, independently reweigh the aggravating and mitigating factors to reaffirm a death

sentence. *Id*. at 706–707. Like McKnight, the petitioner in *McKinney* reasoned that appellate

courts are barred from reweighing aggravating and mitigating factor because *Ring* and *Hurst*

entitle a capital defendant to a jury determination of any fact capable of increasing his sentence.

*Id.* at 707. The Supreme Court refuted that characterization of the holdings of *Ring* and *Hurst*:

> Under *Ring* and *Hurst*, a jury must find the aggravating
> circumstance that makes the defendant death eligible. But
> importantly, in a capital sentencing proceeding just as in an
> ordinary sentencing proceeding, a jury (as opposed to a judge) is
> not constitutionally required to weigh the aggravating and
> mitigating circumstances or to make the ultimate sentencing
> decision within the relevant sentencing range.... And in the death
> penalty context, as Justice Scalia, joined by Justice Thomas,
> explained in his concurrence in *Ring*, the decision in *Ring* "has
> nothing to do with jury sentencing. What today's decision says is
> that the jury must find the existence of the fact that an aggravating
> factor existed." 536 U.S. at 612, 122 S.Ct. 2428; *see also Kansas v.
> Carr*, 577 U.S. 108, 136 S.Ct. 633, 193 L.Ed.2d 535 (2016) (slip
> op., at 9–11). Therefore, as Justice Scalia explained, the "States
> that leave the ultimate life-or-death decision to the judge may
> continue to do so." *Ring*, 536 U.S. at 612, 122 S.Ct. 2428.

*Id.* at 707–708.

*Ring* and *Hurst* do not require the jury to conduct the weighing of aggravating and

mitigating circumstances. Thus, *Ring* and *Hurst* did not overrule *Clemons,* and appellate

reweighing of aggravating and mitigating circumstances is not prohibited. *Id.* The Magistrate

Judge's conclusion, based on *Clemons*, that the Ohio Supreme Court's reweighing cured any

alleged errors McKnight raised in Claim Twenty-Two and Claim Twenty-Five remains sound.

McKnight's objections to that conclusion are overruled.

### Claim Twenty-Three

In Claim Twenty-Three, McKnight contends he was deprived of due process, a fair trial,

and a fair sentencing determination by a penalty phase jury instruction. (Petition, Doc. 127,

68

PageID 15770–15772). Specifically, the jury was instructed to "consider all of the testimony and evidence relevant to the aggravating circumstance Gregory B. McKnight was found guilty of," but the trial court failed to determine what evidence was relevant. (*Id.* at ¶¶ 349, 354). The Ohio Supreme Court reviewed the claim for plain error on direct appeal because counsel failed to object to the instruction at trial. *McKnight*, 2005-Ohio-6046, ¶ 260. That court concluded that the trial court's instruction was indeed erroneous, but McKnight was not prejudiced because "much of the guilt-phase evidence was relevant to the aggravating circumstances, the nature and circumstances of the offense, and the mitigating factors." *Id.* ¶¶ 260–261.

The Magistrate Judge determined that Claim Twenty-Three was procedurally defaulted because counsel failed to object at trial and the Ohio Supreme Court enforced the procedural rule by limiting its review to plain error. (Report, Doc. 332, PageID 18132 (quoting *Jells v. Mitchell*, 538 F.3d 478, 511 (6th Cir. 2008)). McKnight contends ineffective assistance of his trial counsel excuses the default. However, as explained in the discussion of Claim Twenty-Eight, *infra*, McKnight cannot show that he was prejudiced by counsel's failure to object and, thus, cannot overcome the default of Claim Twenty-Three. (*Id.* at PageID 18133.) The Magistrate Judge also concluded that the underlying claim was meritless because McKnight failed to show that the error was prejudicial to the outcome. The Magistrate Judge noted that McKnight failed to explain how the "autopsy and crime scene photos" and "other inflammatory matter relevant to the aggravating circumstances… so infected the entire trial that the resulting conviction violates due process." (*Id.* at PageID 18133–18134).

McKnight contends that the Magistrate Judge erred by dismissing counsel's failure to object with the comment that "the state court would have overruled the objection." (Objections, Doc. 343, PageID 18388–18389 (quoting Report, Doc. 332, PageID 18133)). McKnight argues

that "[t]he immediate prospective outcome of the objection is irrelevant to the question of whether it caused the default[.]"  (*Id.* at PageID 18389 (citing *Chase v. MaCauley*, 971 F.3d 582, 595 (6th Cir. 2020))).  However, McKnight's ineffective assistance claim fails because he cannot show prejudice. It is the same lack of prejudice that underlies the Magistrate Judge's conclusion that the claim would be meritless even if it had been properly preserved by objection at trial.

McKnight's objection on the merits of Claim Twenty-Three largely repeats the arguments regarding prejudice (Objections, Doc. 343, PageID 18389–18394), previously presented in his Traverse (Doc. 17, PageID 800–804), but he disputes the Magistrate Judge's reasoning that he could not show prejudice without identifying the "potentially inflammatory and irrelevant evidence" that the jury could have considered with more specificity. (Objections, Doc. 343, PageID 18393).  To that end, McKnight asserts that "in death penalty sentencing, improper guidance on the relevance of any evidence is sufficient to 'so infect[] the entire trial that the resulting conviction violates due process.'" (*Id.* (alterations in original) (quoting *Cupp*, 414 U.S. at 147)).  McKnight offers no legal authority for his proposition that improper jury guidance on relevant evidence equals a due process violation.

The Ohio Supreme Court engaged in a harmless error analysis and, thus, to obtain habeas relief, McKnight must satisfy both the *Brecht* and AEDPA standards.  *Brown*, 142 S.Ct. at 1520.  McKnight has not convinced this Court that the instruction had a substantial and injurious effect on the verdict.  Nor has he demonstrated that the Ohio Supreme Court's dismissal of Claim Twenty-Three was objectively unreasonable.  McKnight's objections to the Report's recommendation for dismissal of Claim Twenty-Three are overruled.

### Claim Twenty-Four

McKnight argues in Claim Twenty-Four that the penalty-phase verdict forms misled the

jury because they created the wrong impression that he had the burden of proving that the mitigating factors did not outweigh the aggravating circumstances and because they contradicted Ohio law, which permits a death sentence to be blocked by a single juror.  (Petition, Doc. 127, PageID 15773–15775).  The Magistrate Judge concluded that the claim was inexcusably procedurally defaulted because counsel failed to object at trial.[7]  The Magistrate Judge also found that ineffective assistance of counsel did not excuse the default because trial counsel was not deficient for failing to object to constitutionally sound verdict forms.  (Report, Doc. 332, PageID 18136–18138).

The Ohio Supreme Court found that the verdict forms did not shift the burden of proof to McKnight.

> When read as a whole, the instructions of the trial court and the language of the verdict forms effectively informed the jury that a death-penalty recommendation could be returned only after a unanimous vote that the aggravating circumstance outweighed the mitigating factors beyond a reasonable doubt. As to the life-sentence options, the instructions and the language of the verdict forms simply instructed the jury that it *must* decide among the life-sentence options *if* it found that the state had failed to prove that the aggravating circumstances outweighed the mitigating factors.

*McKnight*, 2005-Ohio-6046, ¶ 268 (internal citations omitted). The Magistrate Judge recommended dismissal of Claim Twenty-Four, concluding, "McKnight's claim would have had little chance of success had his attorneys objected to the verdict forms at the proper time" because "the life verdict forms in McKnight's case were correct statements of law and because it was made perfectly clear to the jurors that one juror could prevent a death sentence[.]"  (Report, Doc. 332, PageID 18138).

McKnight's objection assumes the presence of a defect in the verdict forms that neither

---

[7] McKnight raised the associated ineffective assistance of counsel claim in Claim Twenty-Nine.

the Ohio Supreme Court nor the Magistrate Judge found. McKnight argues that the Magistrate

Judge erred in determining that any misstatement of Ohio law contained in the verdict form was

cured by the jury instructions. (Objections, Doc. 343, PageID 18397). McKnight maintains that

the jury instructions cannot cure the defect in the form because "language that merely contradicts

and does not explain a constitutionally infirm instruction will not suffice to absolve the

infirmity." (*Id*. (internal quotation marks omitted) (quoting *Francis v. Franklin*, 471 U.S. 307,

322 (1985))). The Report echoes the Ohio Supreme Court's determination that the verdict form

accurately reflected Ohio law.

*Penry v. Johnson*, 532 U.S. 782 (2001), cited by McKnight in his Objection, provides no

support for habeas relief on Claim Twenty-Four. In *Penry*, the Supreme Court found, "it would

have been both logically and ethically impossible for a juror to follow both" a special jury

instruction on mitigation evidence and the instructions on the jury verdict form. *Id.* at 799–800.

Here, the Ohio Supreme Court found no such contradiction. McKnight has failed to demonstrate

that he can overcome the procedural default or that the Ohio Supreme Court's conclusion that the

verdict form was sound was an unreasonable application of federal law. Consequently, Claim

Twenty-Four must be dismissed.

### Claim Twenty-Six

In Claim Twenty-Six, McKnight contends his counsel was ineffective during the guilt

phase of his trial. The relevant federal standard for ineffective assistance of trial counsel is that

laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance, a

defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560

U.S. 370, 389 (2010). With respect to the first prong of the *Strickland* test, the Supreme Court

has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland,* 466 U.S. at 689 (citations omitted).

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

*Id.* at 694.

In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. *See Wong v. Belmontes*, 558 U.S. 15, 27, (2009) (per curiam); *Strickland*, 466 U.S. at 693. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id.*, at 696. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697. The likelihood of a different result must be substantial, not just conceivable. *Id.* at 693.

Counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors. *Strickland*, 466 U.S. at 690; *Maryland v. Kulbicki*, 577 U.S. 1, 5 (2015); *Rickman*

*v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997). *Kulbicki* rejects retrospective perfectionism regarding lawyer's conduct. 577 U.S. at 5.

For the reasons explained below, the Court adopts the Magistrate Judge's Report as to Claim Twenty-Six and overrules McKnight's objections.

## A. Failure to Properly Litigate Motion to Suppress

The Magistrate Judge concluded that McKnight's trial counsel was not ineffective in litigating the motion to suppress and challenging the search warrant because the failure to raise meritless arguments is not ineffective assistance. (Report, Doc. 332, PageID 18147–18148). McKnight objects to the Magistrate Judge's conclusion, incorporating the arguments offered in response to the first claim for relief. (Objections, Doc. 343, PageID 18400–18401). However, McKnight makes no argument about his counsels' ineffectiveness in his objections to Claim One, which focuses solely on the viability of his Fourth Amendment claim. (*Id.* at PageID 18246–18255). In any event, as discussed by the Magistrate Judge in connection with Claim One, the affidavit supporting the search warrant did not, in fact, contain false statements. (Report, Doc. 332, PageID 18029). Because it was without merit, McKnight cannot establish that he was prejudiced by any alleged failures by his counsel to litigate his Fourth Amendment claim. Thus, the Court overrules McKnight's objections on this sub-part of Claim Twenty-Six.

## B. Failure to Support Change of Venue

McKnight claims his counsel was ineffective for failing to adequately support the motion for a change of venue based on pretrial publicity and media updates regarding the cost of his defense. (Petition, Doc. 127, PageID 15785–15788, ¶¶ 405–415). The Magistrate Judge found this claim was procedurally defaulted because the Ohio Court of Appeals dismissed it on grounds of *res judicata* in postconviction. (Report, Doc. 332, PageID 18151). McKnight argues that the

default should be excused because his appellate counsel failed to raise the issue on appeal. (Objections, ECF 332, PageID 18404).

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011) (citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008)). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, citing *Wilson.* The attorney need not advance every argument, regardless of merit. *Jones v. Barnes*, 463 U.S. 745, 751–752 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *See*, *e.g.*, *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams v. Bagley*, 380 F.3d 932, 971 (6th Cir. 2004); *Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017) (quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008)).

McKnight cannot show that his appellate counsel was ineffective in failing to include the change of venue claim in his appeal. As discussed in connection with Claim Two, McKnight failed to show that he was prejudiced by the alleged inadequacy of his counsels' motion for a change of venue. Thus, McKnight cannot show that the outcome of his appeal would have been different had the issue been raised. The Magistrate Judge correctly concluded that the default

was unexcused.  McKnight's objections are overruled.

## C.  Failure to Move for Change of Venue Based on Race

McKnight claims that counsel should have moved for change of venue based on the racial composition of Vinton County, Ohio. The Magistrate Judge determined that the state court erroneously concluded that the claim was barred by *res judicata*.  However, he also concluded that counsel was not ineffective for failing to argue for change of venue based on racial makeup because there is no evidence black residents were systematically excluded from the venire. (Report, Doc. 332, PageID 18153–18154).  The Magistrate Judge also rejected the claim that counsel was ineffective for not offering evidence of "endemic racism" in Vinton County because the factual support for the premise was weak and McKnight could not show a venue motion on this basis would have been successful.  (*Id*. at PageID 18154–18155 (quoting *McCleskey*, 481 U.S. at 282–283)).

McKnight argues that his defense counsel filed a boilerplate motion to change venue even though they were aware of the racial climate in Vinton County and inflammatory racial rhetoric on the internet. (Doc. 343, PageID 18405–18407).  He contends that he was prejudiced because an all-white jury heard testimony that he "preyed on white women."  (*Id.* at PageID 18407).  McKnight's argument that he was prejudiced by counsel's failure to file a more specific change of venue motion is speculative, at best.  He fails to show that a more detailed or tailored motion would have been granted.  He also fails to show a reasonable probability that the result of his trial would have been different had his trial been conducted in a different venue.

McKnight's objection is overruled.

## D.  Failure to *Voir Dire*, Challenge for Cause, or Strike by Peremptory Challenge Juror I-30

McKnight raised a claim on direct appeal that his attorneys were ineffective because they

failed to adequately question or challenge Juror I-30. The Ohio Supreme Court concluded that

counsel was not ineffective because Juror I-30's responses during voir dire demonstrated that she

had not formed any opinions about the case. *McKnight*, 2005-Ohio-6046, ¶ 302–304. The

Magistrate Judge concluded that Juror I-30 "expressed an understanding of her duties as a juror,

an ability to judge the case based solely on evidence presented in the trial, and an ability to

weigh the aggravating circumstances and mitigating factors to arrive at an appropriate sentence

under the law." (Report, Doc. 332, PageID 18159 (citing State Court Record, Doc. 105-5,

PageID 3871–3783)). He also noted that McKnight failed to allege that additional questioning

from counsel would have revealed that Juror I-30 was biased. (*Id.*). McKnight argues that

"while Juror I-30 may have believed that she could be fair, she was not the proper person to

judge." (Objections, Doc. 343, PageID 18408 (citing *Morgan v. Illinois*, 504 U.S. 719, 735

(1992))).

    "An attorney's actions during voir dire are considered to be matters of trial strategy. . . .

A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's

decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness."

*Miller v. Webb*, 385 F.3d 666, 672–673 (6th Cir. 2004) (quoting *Hughes v. United States*, 258

F.3d 453, 457 (6th Cir. 2001)). To make out a claim for ineffective assistance based on

counsel's failure to challenge a biased juror, a petitioner must show that the juror(s) in question

were in fact biased against him. *Miller*, 385 F.3d at 674 (citing *Hughes*, 258 F.3d at 459). The

reviewing court must ask whether the juror swore "that [s]he could set aside any opinion [s]he

might hold and decide the case on the evidence and should the juror's protestation of impartiality

have been believed." *Id.* at 673 (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)). "It is

sufficient if the juror can lay aside h[er] impression or opinion and render a verdict based on the

evidence presented in court." *Id.* (quoting *Irvin*, 366 U.S. at 723).

McKnight has not offered any evidence that Juror I-30 was actually biased against him. "A district court may rely upon juror assurances of impartiality in deciding whether a defendant has satisfied his burden of proving actual prejudice." *Hughes*, 258 F.3d at 459–460 (citing *United States v. Pennell*, 737 F.2d 521, 533 (6th Cir. 1984).) Therefore, the Ohio Supreme Court's conclusion that counsel was not ineffective, *McKnight*, 2005-Ohio-6046, ¶ 304, was not an unreasonable application of *Strickland*. McKnight's objections are overruled.

### E. Failure to Object to Pre-Trial Jury Instruction Regarding Witness Credibility

McKnight contends his counsel should have objected when the trial court gave the following instruction to the jury prior to opening arguments:

> The testimony of one witness believed by you is sufficient to prove any fact. Also, discrepancies in a witness' testimony, or between his testimony and that of others, if there are any, does not necessarily mean that you should disbelieve the witness, as people commonly forget facts or recollect them erroneously after the passage of time.
>
> You are certainly all aware of the fact that two persons who are witnesses to an incident may often see or hear it differently. In considering a discrepancy in witness testimony, you should consider whether such discrepancy concerns an important fact or a trivial one.

(Petition, Doc. 127, PageID 15801–15803 (quoting State Court Record, Doc. 105-13, PageID 5346–5347)).

McKnight raised the underlying claim of trial court error in Claim Eight, which was rejected by the Ohio Supreme Court on plain error review. The Magistrate Judge concluded that failing to object to a jury instruction that is not erroneous does not constitute ineffective assistance, noting, "the state courts have repeatedly found no error, plain or otherwise, when the

78

same instruction has been given in other cases."  (Report, Doc. 332, PageID 18160–18161

(collecting cases)).

McKnight incorporates the same arguments he offered in his objections to the Report as

to Claim Eight.  As explained in Claim Eight, the jury instruction was not erroneous.

Accordingly, McKnight cannot meet either prong of the *Strickland* analysis.  The Court

overrules McKnight's objections.

**F.  Failure to Object to "Inflammatory" Victim Impact Evidence**

McKnight argues that counsel was ineffective for failing to object to multiple portions of

testimony, including statements about Murray's life and personality, the effect of her murder on

her family and friends, Murray's tattoo and its meaning, and the prosecutor's recitation of this

evidence in closing argument.  (Petition, Doc. 127, PageID 15803–15806).  The underlying

claim of trial error for admission of the evidence was raised in Claim Eleven.

As the Magistrate Judge noted, the Ohio Supreme Court concluded that:

> [E]ach instance of alleged victim impact evidence was justified to
> show that Emily Murray was in close communication with her
> parents and roommates, would not spontaneously have left
> Gambier without letting some or all of them know where she was
> going, and was religious, responsible, and generally content.
> *McKnight*, 2005-Ohio-6046 at ¶¶ 91–104. That evidence was
> relevant to the identification of her body and to the prosecutor's
> response to the defense's theory of the case that Emily was
> unstable and had committed suicide. *Id*.

(Report, Doc. 332, PageID 18161–18162 (citing *McKnight*, 2005-Ohio-6046 at ¶¶ 91-104)).  The

Magistrate Judge found that the trial court denied McKnight's motion *in limine* and likely would

not have sustained an objection during trial had counsel lodged an objection.  (*Id.* at PageID

18162).

McKnight argues that the Magistrate Judge's "assumption that an objection was sure to

be overruled is contradicted by the Ohio Supreme Court's recognition that McKnight's marital infidelities were irrelevant." (Objections, Doc. 343, PageID 18411 (citing *McKnight*, 2005-Ohio-6046, ¶ 88)). As explained in the discussion of Claim Eleven, *supra*, the state court found that evidence regarding marital infidelity was irrelevant but ultimately harmless. Accordingly, McKnight cannot show that he was prejudiced by counsel's failure to object to the evidence and his ineffective assistance of counsel claim is without merit. McKnight's objection is overruled.

### G. Failure to Request a *Remmer* Hearing

McKnight claims that counsel should have requested a more comprehensive hearing under *Remmer v. United States*, 347 U.S. 227 (1954), after Amy Warrix alleged that Juror Stewart had discussed the case with her. The Magistrate Judge recommended that the ineffective assistance claim be denied for the same reasons as the associated trial error claim, Claim Thirteen. (Report, Doc. 332, PageID 18162). McKnight contends that his right to a fair trial was compromised by Juror Stewart's exposure to extraneous information. (Objections, Doc. 343, PageID 18413).

As noted in the discussion of Claim Thirteen, *supra*, McKnight failed to demonstrate a colorable claim of extraneous juror influence. As such, he cannot show that his counsel was ineffective for failing to request a more comprehensive hearing after the in-chambers questioning of Juror Stewart. McKnight's objection is overruled.

### H. Failure to Request Curative Action After Spectator Outburst

McKnight contends his counsel were ineffective for failing to request any curative action after a spectator responded to defense counsel's suggestion during closing argument that Murray and McKnight were considering a relationship by saying, "No." McKnight raised the underlying claim of trial error in Claim Fifteen. The Magistrate Judge recommended that the ineffective

assistance claim be denied for the same reasons as Claim Fifteen.  (Report, Doc. 332, PageID 18162–18163).

McKnight only generally objects to the Magistrate Judge's opinion. (Objections, Doc. 343, PageID 18413–18415).  "[V]ague, general, or conclusory objections" are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001).  In any event, because no error stemmed from the spectator outburst, McKnight's argument that his counsel had a general duty to preserve errors for review fails to satisfy either prong of the *Strickland* analysis.  McKnight's objection is therefore overruled.

## I.  Failure to Object to Autopsy and Crime Scene Photographs

McKnight asserts that his counsel was ineffective because they should have objected to photographs depicting the crime scene, Murray's body as it was found in McKnight's trailer, and the autopsy. The Magistrate Judge concluded that the Ohio Supreme Court's ruling that McKnight was not prejudiced by introduction of the photographs was not unreasonable.  (Report, Doc. 332, PageID 18163 (citing *McKnight*, 2005-Ohio-6046 at ¶ 305)). The Magistrate Judge also noted that McKnight failed to allege that any of the photographs "were repetitive, cumulative, or improperly authenticated."  (*Id*. at PageID 18164).  Ultimately, the Magistrate Judge concluded that McKnight's ineffective assistance claim should be denied because he had failed to demonstrate that he was prejudiced by introduction of the photographs.  (*Id*.).

McKnight objects, arguing that he did indeed claim that multiple photographs of the gunshot wound were cumulative.  (Objections, Doc. 343, PageID 18415).  Even if the gunshot wound photographs were cumulative, McKnight would still be required to show the photographs prejudiced him.  McKnight also reiterates his argument that "the 'photographs would clearly

have a strong, emotional impact on anyone viewing them including members of the jury.'" (*Id.* (quoting Traverse, Doc. 17, PageID 699–700)). Yet, "[o]bjections that merely state disagreements with the magistrate judge's conclusion or restate arguments previously presented to the magistrate judge are . . . improper." *United States v. Davis*, 421 F. Supp. 3d 433, 440 (E.D. Ky. 2019), *aff'd*, No. 20-5835, 2021 WL 5782360 (6th Cir. Dec. 7, 2021). As McKnight offers no new argument for why the state court's conclusion was an unreasonable application of *Strickland* or the Magistrate Judge's decision was improper, his objections are overruled.

### J. Waiver of McKnight's Presence at In-Chambers Conference

McKnight contends counsel unilaterally waived his presence at the questioning of Juror Stewart about Amy Warrix's allegations and contends that he was improperly excluded from a hearing to review proposed jury instructions. (Petition, Doc. 127, PageID 15816–15818). The Magistrate Judge recommended denial of relief based on ineffective assistance because the related trial error claim, raised in Claim Nineteen, lacked merit. (Report, Doc. 332, PageID 18164). The Magistrate Judge found that McKnight personally waived his presence at all in-chambers proceedings, and "counsel [was] not ineffective in relying on that waiver." (*Id.*).

McKnight objects to the Magistrate Judge's reliance on his pre-trial waiver of his presence based on the same argument he previously offered in support of Claim Nineteen, namely, that his waiver was not knowing, intelligent, or voluntary. (Objections, Doc. 343, PageID 18417). The Court rejects the argument for the reasons articulated in response to Claim Nineteen. The Magistrate Judge reasonably rejected the ineffective assistance claim due to McKnight's failure to show that the Ohio Supreme Court's dismissal of the claim for lack of prejudice was an unreasonable application of federal law. McKnight's objections are overruled.

### K. Failure to Object to Prosecutorial Misconduct

McKnight contends he was denied effective assistance based on counsel's failure to object to prosecutorial misconduct, including the presentation of victim impact evidence, evidence about Murray's character, evidence of McKnight's "other acts" and his reaction to police presence at a club, and evidence amounting to speculation as to Murray's thoughts during the events that ended her life. He also claims his counsel should have objected to the prosecutor's attempts to rebut defense arguments regarding blood and firearm evidence and comments on the defense's failure to present witnesses. (Petition, Doc. 127, PageID 15818–15819). The related claims of prosecutorial misconduct are raised in Claim Thirty-One, *infra*. On direct appeal, the Ohio Supreme Court reviewed each of the prosecutorial misconduct claims for plain error due to counsel's failure to object at trial. Thus, those claims are procedurally defaulted unless the ineffectiveness of counsel excuses the default.

The Magistrate Judge concluded that counsel was not ineffective for failing to object to the introduction of the victim impact and character evidence, the other acts evidence, or McKnight's reaction to police at a club. (Report, Doc. 332, PageID 18165–18166). The Magistrate Judge relied on the fact that the evidence was considered *de novo* in Claim Eleven and found to be meritless. (*Id.* at PageID 18166). The Magistrate Judge also concluded that counsel's failure to object to the prosecutor's stray comment in his penalty-phase rebuttal argument speculating that Murray returned to her dorm room to get her keys to give McKnight a ride home could be legitimate trial strategy to avoid drawing attention to the statement. (*Id.* at PageID 18166–18167).

The Ohio Supreme Court held that McKnight's counsel opened the door to the prosecutor's rebuttal argument regarding the lack of DNA testing on the firearm, so any failure

to object was not plainly erroneous. (*Id.* at PageID 18167–18168 (quoting *McKnight*, 2005-Ohio-6046, at ¶¶ 290–292). The Magistrate Judge rejected McKnight's "bare-bones argument" that the state court's decision met the threshold of 28 U.S.C. § 2254(d)(1)(2) and concluded that McKnight failed to establish the state court's decision was unreasonable. (*Id.* at PageID 18168).

The Magistrate Judge also rejected McKnight's claim that counsel was ineffective for failing to object to the prosecutor's comment that the defense called no witnesses. (*Id.* at PageID 18168. The Magistrate Judge found that the underlying claim was meritless because the prosecutor may comment on the defense's failure to offer evidence, and thus the failure to object was not deficient performance. (*Id.* (quoting *McKnight*, 2005-Ohio-6046, at ¶ 293). Finally, the Magistrate Judge rejected McKnight's due process claim based on the cumulative effect of counsel's failure to object, concluding that the cumulation of instances that are either meritless or harmless by themselves does not add up to an independent error justifying habeas relief. (*Id.* at PageID 18168–18169).

In objecting to the Magistrate Judge's conclusions on ineffective assistance, McKnight relies on his objections to the Report on the related prosecutorial misconduct claim raised in Claim Thirty-One. (Objections, Doc. 343, PageID 18418). The Court incorporates its reasoning for rejecting McKnight's objections as to Claim Thirty-One, *infra*. For the reasons set forth below, McKnight's objection is overruled.

### Claim Twenty-Seven

McKnight contends in Claim Twenty-Seven that he received ineffective assistance of counsel during the penalty phase of trial based on counsel's (1) failure to investigate and present evidence of the effect his father's abandonment of him as a child; (2) failure to investigate and present evidence regarding the circumstances surrounding his conviction for murder at age

fifteen and subsequent incarceration; (3) failure to ensure the mitigation specialist traveled to New York and Texas to interview his family members there; and (4) failure to obtain a cultural expert to investigate or present evidence regarding his Caribbean background, culture, and religious upbringing,  including counsels' misidentification of him as African-American (Petition, Doc. 127, PageID 15820-15827).

The Magistrate Judge concluded that McKnight only challenged the following parts of Claim Twenty-Seven during postconviction proceedings: counsel's failure to present evidence of his father's abandonment of him as a child, counsel's failure to hire a cultural expert, and counsel's misidentification of him as African American.  (Report, Doc. 332, PageID 18170). Despite the Warden's failure to argue procedural default, the Magistrate Judge *sua sponte* concluded that the ineffective assistance claims raised for the first time in Claim Twenty-Seven are procedurally defaulted and McKnight cannot overcome the default.  (*Id*.).

When McKnight appealed his postconviction petition, the Appeals Court concluded that counsel's failure to present evidence of his father's abandonment, or to present testimony from a relative from New York who was present at the mitigation hearing, was "a strategic decision [made] after full and fair consideration and investigation."  *McKnight*, 2008-Ohio-2435, ¶ 78. The trial transcript demonstrated that counsel chose not to present evidence regarding McKnight's childhood because it would open the door to his prior juvenile murder conviction. *Id*. at ¶¶ 77–78.  Likewise, the state court concluded that counsel's decision not to introduce cultural mitigation evidence was a tactical decision.

> At the time counsel made the decision, they reasonably believed that presenting further mitigation evidence would open the door to McKnight's prior juvenile murder adjudication. And counsel appears to have been correct in this regard. In his postconviction deposition, Attorney Carson stated that the judge warned defense counsel that if they brought up anything that predated McKnight's

> detention as a juvenile, then they would open the door to his prior
> juvenile adjudication for murder, which the defense obviously
> wanted to avoid. Therefore, McKnight cannot overcome the strong
> presumption that counsel made a reasonable strategic decision.

*Id*. at ¶ 99. "Additionally, McKnight merely speculates that evidence of his cultural background would have humanized him to the jury and led to a life sentence. As we indicated before, speculation is not sufficient to demonstrate prejudice." *Id*. at ¶ 100.

The Magistrate Judge found that McKnight had not shown that evidence of his father's abandonment or evidence of his Caribbean background would have overcome the probable negative impact of the introduction of his previous murder adjudication; nor had McKnight offered support for his contention that such evidence would have humanized him and led to a life sentence. (Report, Doc. 332, PageID 18174–75). Thus, the Magistrate Judge concluded that trial counsel made a reasonable decision to avoid introduction of the previous murder adjudication, and the state court's finding to that effect was not an unreasonable application of federal law or based on an unreasonable determination of the facts. (*Id*. at PageID 18175).

McKnight maintains that the Warden's procedural default defense is limited to his claimed violations of the Fifth, Eighth, and Fourteenth Amendments because the Warden forfeited the procedural default defense as to the allegations the Magistrate Judge found defaulted *sua sponte*. (Objections, Doc. 343, PageID 18420 (quoting Return of Writ, Doc. 13, PageID 494)). McKnight's objection is overruled. The Magistrate Judge appropriately raised McKnight's procedural default *sua sponte*. *See Palmer v. Bagley*, 330 F. App'x 92, 105 (6th Cir. 2009) (finding a district court does not abuse its discretion in *sua sponte* raising procedural default when the petitioner is given a fair opportunity to respond).

Even if the Court were to conclude that the allegations the Magistrate Judge found defaulted *sua sponte* should be addressed on the merits, McKnight would not be entitled to relief.

86

The procedurally defaulted claims alleged: counsel's failure to investigate and present mitigation evidence of McKnight's previous juvenile murder adjudication and subsequent incarceration; and counsel's failure to ensure the mitigation specialist traveled to New York and Texas to interview family members. (Petition, Doc. 127, PageID 15822–15823, ¶¶ 530–531).

The Magistrate Judge noted that the trial transcript included counsels' statement that they would not be calling a relative from New York to the stand because of the potential of opening the door to evidence of McKnight's juvenile murder adjudication. (Report, Doc. 332, PageID 18172 (quoting *McKnight*, 2008-Ohio-2435, ¶ 77)). Counsel's decision to forego additional mitigation evidence was a reasonable strategic decision to avoid introduction of McKnight's prior murder conviction, and therefore counsel was not ineffective for failing to present additional evidence from McKnight's relatives in New York and Texas. Indeed, McKnight has failed to show that the alleged mitigation evidence would have reasonably changed the outcome of his trial, especially given the price of the introduction of the evidence would have been extremely prejudicial evidence of his prior murder conviction.

McKnight argues that there was beneficial "*Skipper*" evidence to be presented from his juvenile incarceration. (Traverse, Doc. 17, PageID 855 (citing *Skipper v. South Carolina*, 476 U.S. 1, 4–5 (1986))). In *Skipper*, the Supreme Court concluded that evidence of the petitioner's good behavior in prison while awaiting trial for capital murder was relevant mitigation evidence that the state courts could not exclude the defense from presenting. 476 U.S. at 4–5. Here, any *Skipper/*good behavior evidence during McKnight's juvenile incarceration is clearly and significantly outweighed by the fact that McKnight had a previous murder conviction. Counsel's strategic decision to avoid introduction of the murder conviction in lieu of *Skipper* evidence is entitled to deference.

87

McKnight contends that counsels' decision not to present evidence of the circumstances of his juvenile murder adjudication and incarceration cannot be considered strategic because the decision was made after an inadequate investigation. (Traverse, Doc. 17, PageID 866 (citing *Wiggins v. Smith*, 539 U.S. 510, 521–522 (2003))). He asserts that "[w]hile a juvenile adjudication for murder clearly has negative aspects that would impact on the jury's consideration of mitigation, '[c]ompetent counsel should have been able to turn some of the adverse evidence into a positive.'" (*Id.* at PageID 865 (quoting *Sears v. Upton*, 561 U.S. 945, 951 (2010))). Yet, McKnight has not identified what, if any, evidence counsel could have turned into a positive for the jury that would justify a decision to present evidence of his prior murder conviction. As the Court explained above, in response to McKnight's claim that his out-of-state relatives were not interviewed, he cannot show that he was prejudiced even if counsel failed to conduct a sufficient investigation of the circumstances of his prior murder conviction.

McKnight also argues that the state court unreasonably applied federal law when it held that counsel's investigation of his background was not deficient (Objections, Doc. 343, PageID 18421–18423), recycling the same arguments presented in his Traverse (Doc. 17, PageID 857–859) and previously considered by the Magistrate Judge. (Report, Doc. 332, PageID 18172–18175). "Objections that merely restate arguments raised in the memoranda considered by the Magistrate Judge are not proper, and the Court may consider such repetitive arguments waived." *Coomer v. Comm'r of Soc. Sec.*, No. 2:16-CV-1132, 2018 WL 1441410, at *1 (S.D. Ohio Mar. 22, 2018) (internal quotation marks omitted)).

McKnight argues that the state court's finding that he was not prejudiced was contrary to *Strickland* because the state court held that speculation was not sufficient to show prejudice when, in fact, *Strickland* requires speculation. (Objections, Doc. 343, PageID 18423 (citing

*Sears*, 561 U.S. at 956). *Sears* explained the task to be performed by a district court examining

an ineffective assistance of counsel claim based on penalty phase mitigation evidence:

> "To assess [the] probability [of a different outcome under *Strickland*], we consider the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweig[h] it against the evidence in aggravation." 558 U.S., at ___ [*Porter v. McCollum*, 558 U.S. 30 (2009)] (internal quotation marks omitted; third alteration in original).
>
> That same standard applies—and **will necessarily require a court to "speculate" as to the effect of the new evidence**—regardless of how much or how little mitigation evidence was presented during the initial penalty phase.

561 U.S. at 955–956 (emphasis added).  However, McKnight's argument is merely one of

semantics. The state postconviction court found that McKnight's conclusion that evidence of his

Caribbean background would humanize him and result in a life sentence was "speculation."

*McKnight*, 2008-Ohio-2435, ¶¶ 94–95, 100–103.  Stated differently, the jury would not have

found the effect of the "new evidence," McKnight's Caribbean background, to outweigh his

previous murder conviction and return a verdict with a life sentence.  The state court's use of

term "speculation" does not render its conclusion inconsistent with *Sears* or unreasonable.

McKnight also argues that the state Appeals Court erred in holding that the failure to

present cultural mitigation evidence is *per se* inadequate to show deficient performance.

(Objections, Doc. 343, PageID 18423).  The Appeals Court made no such finding.  The court

cited previous Ohio cases finding that the failure to use cultural mitigation evidence was not

ineffective assistance to support its conclusion that McKnight's counsel was not deficient.

*McKnight*, 2008-Ohio-2435, ¶ 101 (citing *Ohio v. Issa*, 1st Dist. Hamilton No. C-000793, 2001

WL 1635592, *4 (Dec. 21, 2001), and *Ohio v. Murphy*, 10th Dist. Franklin No. 00AP-233, 2000

WL 1877526, *6 (Dec. 26, 2000)).  There is nothing unreasonable about the state court's

conclusion that McKnight failed to satisfy the requirements of *Strickland*.

Finally, McKnight objects to the Magistrate Judge's *de novo* conclusion that he was not prejudiced because evidence of parental abandonment and his cultural minority could not overcome the fact of the previous murder conviction. (Objections, Doc. 343, PageID 18424 (quoting Report, Doc. 332, PageID 18175)). He argues that "the juvenile murder adjudication would have reinforced the strength of McKnight's mitigation case[,]" specifically, it would reinforce the evidence of his poor upbringing, because a healthy fifteen year-old does not commit murder. (*Id*.). He also asserts, without citing any evidence in support, that the jury already knew about his prior murder adjudication. (*Id*. at PageID 18424–18425). McKnight's conclusory arguments fail to show a reasonable probability that the outcome of his trial would have been different if counsel adopted a strategy of exposing the jury to his prior murder conviction in exchange for evidence of his poor upbringing.

Accordingly, the Court overrules McKnight's objections to the Magistrate Judge's recommendation as to Claim Twenty-Seven.

### Claim Twenty-Eight

McKnight contends in Claim Twenty-Eight that he received ineffective assistance of trial counsel due to counsels' failure to object when the trial court admitted all the guilt phase evidence during the penalty phase and instructed the jury to consider the relevant evidence. The Magistrate Judge found that the claim was properly presented to the state courts, which adjudicated the claim on the merits when it held that McKnight had not suffered prejudice from the trial court's penalty-phase jury instructions. (Report, Doc. 332, PageID 18176 (quoting *McKnight*, 2005-Ohio-6046, at ¶¶ 305, 307)).

The Magistrate Judge found that McKnight failed to identify any specific piece of

evidence "to which trial counsel should have objected and which was so prejudicial as to have compromised the fairness of the jury's penalty-phase verdict." (*Id.* at PageID 18176). On that basis, the Magistrate Judge distinguished this case from *Ohio v. Getsy*, which McKnight cited for the contention that it is the trial court's responsibility to determine which evidence was relevant. (*Id.* (citing 84 Ohio St. 3d 180, 201 (1998)). Unlike here, in *Getsy*, "specific items of evidence were sought to be excluded from the evidence given to the jury during their penalty-phase deliberations." (*Id.* (citing *Ohio v. Were*, 2002-Ohio-481, 94 Ohio St. 3d 173, 201, 761 N.E.2d 591)). Without such specificity, the Magistrate Judge concluded that he lacked any foundation on which to declare the Ohio Supreme Court's decision contrary to or an unreasonable application of federal law. (*Id.*). McKnight maintains that he did identify specific evidence to which trial counsel should have objected: "all of the autopsy and crime scene photos as well as other inflammatory matters." (*Id.* (quoting Initial Petition, Doc. 9, PageID 238, ¶ 550) (internal quotation marks omitted)).

Getsy does not direct a different result than the one reached by the Magistrate Judge. As noted in the discussion of Claim Twenty-Three, *supra*, the Ohio Supreme Court found that the jury instruction at issue was erroneous, but the error was harmless. *Getsy* held that it was "the trial court's responsibility, not the jury's, to determine what evidence was relevant." 1998 -Ohio-533. Accordingly, *Getsy* may support a conclusion that McKnight's counsel was deficient for failing to object. However, it does not support a conclusion that the Ohio Supreme Court was objectively unreasonable when it determined that McKnight was not prejudiced by the instruction. Indeed, counsel objected to the instruction in *Getsy* and identified the offending penalty-phase evidence, but the Ohio Supreme Court found that the admission of irrelevant evidence in the penalty phase did not prejudice the outcome of the case. *Getsy,* 84 Ohio St. 3d at

201.  McKnight's objection is overruled.

**Claim Twenty-Nine**

McKnight contends in Claim Twenty-Nine that his counsel were ineffective based on their failure to object to inaccurate verdict forms.[8]  McKnight objects to the Magistrate Judge's conclusion that counsel were not ineffective for failing to object to a "losing claim," arguing that "the mere chance that the claim could succeed, no matter how slim, necessitates that it be raised, especially in a capital case with such high stakes."  (Objections, Doc. 343, PageID 18431). This is not the appropriate standard for attorney performance under *Strickland*. Courts have generally held that counsel is *not* ineffective for failing to lodge a meritless objection to a constitutionally adequate instruction.  *See, e.g.*, *Moody v. United States*, 958 F.3d 485, 492 (6th Cir. 2020) (citing *Bennett v. Brewer*, 940 F.3d 279, 286–287 (6th Cir. 2019)).  McKnight's objection appears to be not with the Magistrate Judge's opinion but with the applicable standard for judging ineffective assistance of counsel.  Therefore, his objection is overruled.

**Claim Thirty**

McKnight contends in Claim Thirty that his counsel were ineffective based on their failure to object to flawed jury instructions during the trial and penalty phases on reasonable doubt, releasing the victim in a safe place unharmed, and the "escaping detection" aggravating circumstance.  (Petition, Doc. 127, PageID 15832–15833). The Magistrate Judge noted that the Sixth Circuit has repeatedly held that the instruction given in this case is neither contrary to nor an unreasonable application of federal law, and the Ohio Supreme Court has repeatedly affirmed its constitutionality.  (Report, Doc. 332, PageID 18178 (citations omitted)).

---

[8]  This claim was also cited as cause and prejudice to overcome the procedural default of the associated claim, contained in Claim Twenty-Four, that the use of the allegedly inaccurate verdict forms violated McKnight's constitutional rights.

92

McKnight objects to the Magistrate Judge's conclusion that he was not prejudiced by counsel's failure to object to the reasonable doubt instruction, arguing that the decision was based on improper "speculation" that the "objection would likely have been denied." (Objections, Doc. 343, PageID 18433).  McKnight asserts that attorneys have an obligation to object regardless of the perceived likelihood of success of the objection.  (*Id.*). He also disputes the contention that the objection would be denied simply because the "willing to act" language in the reasonable doubt instruction has been approved in some cases and disapproved in others.  (*Id.* at PageID 18434 (citations omitted)). According to McKnight, "there is a reasonable probability that, had counsel objected, the trial court would have sustained the objection. Trial counsel's deficient performance therefore prejudiced McKnight."  (*Id.*).

McKnight's arguments are unavailing.  Even the failure to raise meritorious objections does not necessarily mean that counsel's performance was deficient:

> [A]ny single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.

*Lundgren*, 440 F.3d at 774–775 (citing *Hodge v. Hurley*, 426 F.3d 368, 376 (6th Cir. 2005)). The Court noted, *supra*, in response to Claim Twenty, in those instances in which courts criticized the "willing to act" language, the courts also ultimately upheld the language as constitutional. McKnight's objections to the Magistrate Judge's opinion regarding the reasonable doubt instruction are overruled.

The trial errors related to the other two instructions at issue were raised in Claims Seventeen and Eighteen. In Claim Seventeen, the Court determined that McKnight had not

shown that he was prejudiced by the instruction on the "escaping detection" specification.[9] The lack of prejudice from the underlying error also dooms McKnight's ineffective assistance claim. In Claim Eighteen, the Court held McKnight's claim of prejudice was entirely speculative due to a guilt-phase jury instruction that the jury decide whether Murray was released unharmed in a safe place in the event they found McKnight guilty of Ohio Revised Code § 2905.01(C) kidnapping. Again, the lack of prejudice from the underlying error is fatal to McKnight's associated ineffective assistance regardless of whether counsel's performance was deficient. For the above reasons, the Court overrules the objections as to Claim Thirty.

### Claim Thirty-One

In Claim Thirty-One, McKnight alleges multiple instances of prosecutorial misconduct.[10] The Magistrate Judge concluded that McKnight had not shown that the state court's adjudication of "these claims [was] contrary to or an unreasonable application of federal law . . . or based on an unreasonable determination of the facts in light of the evidence presented in state court." (Report, Doc. 332, PageID 18180). Instead, McKnight addressed the merits of the claims as if presenting for the first time to the state courts. The Magistrate Judge also found that each of the instances of prosecutorial misconduct alleged by McKnight were already presented as errors of other constitutional rights in Claims Eleven and Twenty-Two. (*Id*.). Based on the Magistrate

---

[9]  The instruction on the Ohio Rev. Code § 2929.04(A)(3) specification asked whether McKnight committed the murder for "the purpose of escaping detection, apprehension, trial or punishment for *kidnapping and/or a theft offense*." (State Court Record, Doc. 105-26, PageID 7269 (emphasis added).)

[10]  Specifically, McKnight charges misconduct based on:  (1) use of victim impact and character evidence; (2) introduction of irrelevant evidence that McKnight engaged in infidelities and reacted to the presence of police at a nightclub; (3) introduction of testimony that officers visited McKnight's trailer to serve an indictment for burglary; (4) speculation as to Murray's thoughts; (5) improper rebuttal regarding the blood on the .357 weapon; (6) comments on defense counsels' failure to present witnesses in its case in chief; (7) inclusion of the "escaping detection" aggravating circumstance in the penalty-phase argument after its exclusion by the trial judge; and (8) reference to McKnight's marital infidelities in penalty-phase closing argument. (Report, Doc. 332, PageID 18179–18180 (citing Doc. 127, PageID 15833–15840, ¶¶ 578, 582, 583, 584, 586, 588, 590, 593)).

Judge's previous consideration of the same arguments in relation to those claims and his recommendation that they be denied, the Magistrate Judge concluded that the same facts and arguments are no more successful "under the category of prosecutorial misconduct" claims and recommended denial of Claim Thirty-One. (*Id*.) He also found that the individual instances did not establish error when considered cumulatively. (*Id*.)

McKnight offers several objections to the Magistrate Judge's conclusions. First, he objects to the Magistrate Judge's conclusion that he did not adequately plead the claim in his Amended Petition. (Objections, Doc. 343, PageID 18435). McKnight argues that he was not obliged to make legal arguments in his Amended Petition; he merely needed to allege the factual basis for his claim. (*Id*. (citing Rule 2(c)(2), Rules Governing § 2254 Cases, and *McNeill v. Bagley*, No. 1:02 CV 1645, 2019 WL 4017047, at *20 (N.D. Ohio Aug. 26, 2019), *aff'd*, 10 F.4th 588 (6th Cir. 2021))). Next, McKnight articulates his disagreement with the Magistrate Judge's conclusion that he failed to meet the standard of 28 U.S.C. § 2254(d). (*Id*. at PageID 18436). McKnight argues that the Ohio Supreme Court's failure "to consider the cumulative prejudice arising from all of the [prosecutorial] misconduct at issue" was contrary to clearly established federal law as determined by the United States Supreme Court. (*Id*.). Finally, McKnight "objects to the Magistrate Judge's suggestion that prosecutorial misconduct need not be considered in cumulative terms." (*Id*. at PageID 18437).

Contrary to McKnight's objection, the Ohio Supreme Court specifically rejected his argument that he was entitled to relief based on cumulative prosecutorial misconduct. *McKnight*, 2005-Ohio-6046, ¶ 299. Also, contrary to McKnight's objection, the Magistrate Judge did not conclude that prosecutorial misconduct should not be considered cumulatively; but instead concluded that McKnight had not made out a viable claim for cumulative prosecutorial

misconduct. (Report, Doc. 332, PageID 18180). McKnight failed to show how those conclusions are an unreasonable application of federal law. *See Stermer v. Warren*, 959 F.3d 704, 727–735 (6th Cir. 2020) (finding that to prevail on a prosecutorial misconduct claim on habeas review, a petitioner must show how the prosecutor's actions were improper based on previous Supreme Court precedent, and how the actions so infected the trial with unfairness as to make the resulting conviction a denial of due process). McKnight's objections are overruled.

### Claim Thirty-Two

McKnight contends in Claim Thirty-Two that two jurors improperly considered the "nature and circumstances of the crime" as a non-statutory aggravating circumstance during the sentencing phase of his trial. (Petition, Doc. 127, PageID 15841–15843). The Magistrate Judge determined that the claim should be denied because McKnight failed to argue how the state appeals court's dismissal of his claim based on the *aliunde* rule was contrary to or an unreasonable application of federal law. (Report, Doc. 332, PageID 18181–18183).

McKnight repeats his previous arguments regarding the merits of the misconduct claim and the inapplicable exception in the *aliunde* rule for external influences on the jury. McKnight's objections fail to cite any Supreme Court precedent supporting a conclusion that the state court's dismissal of Claim Thirty-Two was objectively unreasonable. (Objections, Doc. 343, PageID 18438–18442; *see also* Traverse, Doc. 17, PageID 908, 911–914 (raising same argument as in objections)). Because McKnight has not identified any specific errors in the Report, instead reasserting as his objections the arguments already considered by the Magistrate Judge, the Court adopts the recommendation of the Magistrate Judge without further comment.

### Claim Thirty-Three

In Claim Thirty-Three, McKnight contends his appellate counsel was ineffective for

failing to raise the following assignments of error on direct appeal: (1) ineffective assistance of trial counsel for failing to challenge the allegedly false statements in the search warrant affidavit, and (2) ineffective assistance of trial counsel for failing to seek change of venue based on the racial bias of the venire revealed in *voir dire*. (Petition, Doc. 127, PageID 15843–15844). The Magistrate Judge concluded that Claim Thirty-Three was meritless because the underlying ineffective assistance of trial counsel claims lacked merit, as discussed in response to McKnight's Claim One and Claim Twenty-Six. (Report, Doc. 332, PageID 18184).

Under the Sixth Amendment, a criminal defendant is entitled to the same effective assistance of counsel on appeal as at trial. *Evitts*, 469 U.S. 387; *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith*, 528 U.S. at 285; *Burger,* 483 U.S. 776. When evaluating a claim of ineffective assistance of appellate counsel, the court must assess the strength of the claim that counsel failed to raise. *Henness*, 644 F.3d 308. Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.* Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams*, 380 F.3d at 971; see *Smith*, 477 U.S. 527. "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne*, 876 F.3d at 257 (quoting *Fautenberry*, 515 F.3d at 642).

McKnight objects to the Magistrate Judge's conclusion that *Stone v. Powell*, 428 U.S. 465 (1976), precludes the underlying claim for ineffective assistance of trial counsel based on counsel's failure to press the Fourth Amendment claim, arguing that "*Stone*'s restrictions on

federal habeas review of Fourth Amendment claims do not apply to Sixth Amendment claims of ineffective assistance of counsel, even where counsel was allegedly ineffective for failing to bring a Fourth Amendment claim." (Objections, Doc. 343, PageID 18444 (quoting *Richardson v. Palmer*, 941 F.3d 838, 855 (6th Cir. 2019) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382–383 (1986) (internal quotation marks omitted))). The Court agrees and holds that the underlying ineffective assistance of trial counsel claim was not precluded by *Stone*.

In any event, the Magistrate Judge also found the Fourth Amendment challenges to the search warrant meritless. (Report, Doc. 332, PageID 18184). Likewise, the Magistrate Judge incorporated by reference the reasoning from Claim Twenty-Six to find meritless the ineffective assistance of trial counsel claim for failure to seek change of venue based on racial bias. (*Id.*). McKnight incorporates by reference his objections to the Magistrate Judge's recommendation related to Claims One and Twenty-Six. The lack of merit to the underlying ineffective assistance of trial counsel claims, discussed *supra*, means that appellate counsel was not ineffective for failing to raise the claims on direct appeal. *See Pollini v. Robey*, 981 F.3d 486, 493 (6th Cir. 2020) ("[T]o prevail on a *Strickland*-based ineffective assistance of appellate counsel claim, Pollini must satisfy two prongs: (1) that his appellate counsel was deficient, and (2) that the deficiency prejudiced him.") McKnight's objections are overruled.

**Claim Thirty-Four**

In Claim Thirty-Four, McKnight contends that the prosecution presented insufficient evidence to convict him of kidnapping under Ohio Rev. Code § 2901.05 and, because the kidnapping charge served as a predicate felony for the charge of aggravated felony murder, there was insufficient evidence to convict him of aggravated felony murder. He also claims that his convictions on these charges are against the manifest weight of the evidence. (Petition, Doc.

127, PageID 15845–15848). The Magistrate Judge concluded that McKnight failed to

demonstrate how the state court's adjudication of his sufficiency-of-the-evidence claim was

contrary to or an unreasonable application of federal law. Instead, McKnight focused his

argument in federal habeas on the alleged weakness of the evidence used to convict. (Report,

Doc. 332, PageID 18189). The Magistrate Judge also recommended dismissal of the manifest

weight claim because it is a state law claim that is not cognizable in federal habeas.[11] (*Id*. at

PageID 18187).

McKnight objects to the Magistrate Judge's conclusion on his sufficiency of the evidence

claim, reiterating his previous arguments regarding the weakness of the evidence used to convict

him of kidnapping under Ohio Rev. Code § 2901.05. (Objections, Doc. 343, PageID 18446–

18448.). Under AEDPA, federal courts reviewing habeas claims for sufficiency of evidence

accord a double layer of deference:

> First, as in all sufficiency-of-the-evidence challenges, we must
> determine whether, viewing the trial testimony and exhibits in the
> light most favorable to the prosecution, *any rational trier of fact*
> could have found the essential elements of the crime beyond a
> reasonable doubt. In doing so, we do not reweigh the evidence, re-
> evaluate the credibility of witnesses, or substitute our judgment for
> that of the jury. Thus, even though we might have not voted to
> convict a defendant had we participated in jury deliberations, we
> must uphold the jury verdict if any rational trier of fact could have
> found the defendant guilty after resolving all disputes in favor of
> the prosecution. Second, even were we to conclude that a rational
> trier of fact could *not* have found a petitioner guilty beyond a
> reasonable doubt, on habeas review, we must still defer to the *state
> appellate court's* sufficiency determination as long as it is not
> unreasonable.

*White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009) (internal citations omitted) (emphasis in

original). McKnight's objections fail to establish his entitlement to relief under this exacting

---

[11] McKnight concedes that the claim regarding the manifest weight of the evidence is not cognizable in habeas. (Objections, Doc. 343, PageID 18447 n.35).

standard.  The objections to the Report's recommendations on Claim Thirty-Four are overruled.

## Claim Thirty-Five

McKnight contends in Claim Thirty-five that the Ohio Supreme Court violated his right to due process when it failed to consider similar cases in which a death sentence was not imposed when it conducted its state-mandated sentence proportionality review.  (Petition, Doc. 127, PageID 15849–15855). The Magistrate Judge concluded that the claim lacks merit because the Constitution does not require a proportionality review vis-à-vis other cases, let alone a review that specifically includes consideration of cases which did not result in a death sentence. (Report, Doc. 332, PageID 18190 (citing *Pulley v. Harris*, 465 U.S. 37, 42–44 (1984))).  In his objections, McKnight repeats his argument that the state court's consistent practice of ignoring cases which resulted in sentences less than death violated his right under state law to such a review, thereby denying him the equal protection and due process protected by the Fourteenth Amendment.  (Objections, Doc. 343, PageID 18450).

Errors of state law are not cognizable in habeas unless "sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment[.]"  *Pulley*, 465 U.S. at 41. McKnight's argument is based on his belief that the Ohio Supreme Court erred when it held that the proportionality review required by Ohio Rev. Code § 2929.05(A) is satisfied by considering only cases in which a death sentence was imposed.  (Petition, Doc. 127, PageID 15851–15852, ¶¶ 641–642 (quoting *Steffen*, 31 Ohio St. 3d at 123–24)).  Whatever the merits of McKnight's contention as a matter of state law, the state supreme court's interpretation of Ohio law is binding on this Court.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

McKnight has failed to identify a clearly established right set forth in a United States

Supreme Court opinion upon which habeas relief on Claim Thirty-Five is justified. As the Sixth

Circuit has previously held in response to a similar challenge:

> Since proportionality review is not required by the Constitution, states have great latitude in defining the pool of cases used for comparison. See *Lindsey v. Smith,* 820 F.2d 1137, 1154 (11th Cir. 1987). By limiting proportionality review to other cases already decided by the reviewing court in which the death penalty has been imposed, Ohio has properly acted within the wide latitude it is allowed.

*Buell*, 274 F.3d at 369.  Therefore, McKnight's objections to the Report's recommendations on

Claim Thirty-Five are overruled.

## Claim Thirty-Six

In Claim Thirty-Six, McKnight contends that the state courts violated their duty to

independently weigh the aggravating and mitigating factors by not assigning weight to "relevant

and powerful mitigating evidence," not admitting evidence of the Murray family's opposition to

the death penalty, and ignoring the racism inherent in the case.  (Petition, Doc. 127, PageID

15855-15861).  The Magistrate Judge recommended that the claim be denied because most of the

mitigating evidence cited was acknowledged and given weight in the trial court's sentencing

evaluation and the exclusion of evidence related to the Murrays' opposition to the death penalty

aligned with clearly established federal law as determined by the Supreme Court.  (Report, Doc.

332, PageID 18190–18194).

McKnight merely offers either general disagreement with the Magistrate Judge's

conclusion or repetition of arguments already raised and considered by the Magistrate Judge. The

objection fails to identify any support for the conclusion that the state courts' dismissal of Claim

Thirty-Six was an unreasonable application of federal law.  (Objections, Doc. 343, PageID

18451–18452). The Court overrules McKnight's objections as waived.

## Claim Thirty-Seven

In Claim Thirty-Seven McKnight contends that Ohio's death penalty scheme violates the Constitution. (Petition, Doc. 127, PageID 15861–15864). The Magistrate Judge concluded that McKnight could not show the Ohio Supreme Court's denial of the claim was contrary to or an unreasonable application of clearly established federal law because the United States Supreme Court has not held any state's death penalty scheme unconstitutional since *Gregg v. Georgia*. (Report, Doc. 332, PageID 18194 (citing *Baze v. Rees*, 553 U.S. 35, 47 (2008)). In response, McKnight offers only a general disagreement with the outcome in the Report. (Objections, Doc. 343, PageID 18453–18454 (citations omitted)).

"Objections that merely state disagreements with the magistrate judge's conclusion or restate arguments previously presented to the magistrate judge are improper." *Davis*, 421 F. Supp. 3d at 440 (citing *United States v. Bowers*, No. CV 06-7-DLB-REW, 2017 WL 6606860, at *1 (E.D. Ky. Dec. 26, 2017), and *United States v. Vanover*, No. CR 10-14-DLB-REW-1, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017)). Accordingly, the Court overrules the objections as waived.

## Claim Thirty-Eight

In Claim Thirty-Eight, McKnight contends that execution by lethal injection violates his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments. The entirety of the objection reads, "McKnight objects to the Magistrate Judge's finding that his claim is not cognizable in habeas." (Objections, Doc. 343, PageID 18454).[12]

---

[12] McKnight notes that "[a] Certificate of Appealability has been granted in *Raglin v. Warden*, Case No. 19-3361." (Objections, Doc. 343, PageID 18454 n.36). Since McKnight filed his Objections, however, the Sixth Circuit reaffirmed that method of execution challenges may not be raised in habeas. *Raglin v. Shoop*, No. 19-3361, 2022 WL 1773719, at *6 (6th Cir. Jun. 1, 2022). The Supreme Court has also reiterated that method of execution claims must be brought under 42 U.S.C. § 1983. *Nance v. Ward*, 142 S.Ct. 2214 (2022).

"Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are 'tantamount to a complete failure to object.'" *Davis*, 421 F. Supp. 3d at 440 (quoting *Cole*, 7 F. App'x at 356). McKnight's general statement of objection is improper, and therefore, the Court considers objections to the dismissal of Claim Thirty-Eight as recommended in the Report to be waived.

### Claim Thirty-Nine

In Claim Thirty-Nine, McKnight contends Ohio's system of post-conviction review violated his constitutional rights because it failed to ensure that he was "provided with the reasonable and necessary investigative and expert assistance to develop and present all of his federal constitutional claims to the state courts." (Petition, Doc. 127, PageID 15866–15868). The Magistrate Judge rejected the claim because state collateral review is not a constitutional right. (Report, Doc. 332, PageID 18195–18196 (collecting cases)). In his objection, McKnight repeats verbatim the argument made in his Amended Petition (Doc. 127, PageID 15866–68, ¶¶ 693–702) and Traverse (Doc. 17, PageID 965–967). (Objections, Doc. 343, PageID 18454–18457). "Objections that merely restate arguments raised in the memoranda considered by the Magistrate Judge are not proper, and the Court may consider such repetitive arguments waived." *Coomer*, 2018 WL 1441410, at *1. Therefore, the Court considers objections to the Report with respect to Claim Thirty-Nine waived. In any event, Claim Thirty-Nine lacks merit because, "[e]ven where there may be some error in state post-conviction proceedings, this would not entitle [petitioner] to federal habeas corpus relief since [the] claim…represents an attack on a proceeding collateral to detention…and not on the detention itself." *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986) (quoting *Williams v. Missouri,* 640 F.2d 140 (8th Cir. 1981)).

**Claim Forty**

McKnight claims his constitutional rights were violated based on the cumulative effects of the errors identified in his petition to this Court.  (Petition, Doc. 127, PageID 15868–15869). The Magistrate Judge concluded that the claim was meritless because the Sixth Circuit has held that constitutional errors that would not individually support habeas relief may not be cumulated to justify relief under the AEDPA.  (Report, Doc. 332, PageID 18196.)  McKnight objects to the Magistrate Judge's reliance on Sixth Circuit precedent because the Supreme Court has never held that such claims cannot be cumulated under the AEDPA.  (Objections, Doc. 343, PageID 18458.)  McKnight's objection has no merit.  Under the AEDPA, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  28 U.S.C. § 2254(d).  There is no similar requirement of directly applicable Supreme Court precedent to uphold a state court's decision on a constitutional claim. McKnight's objection is overruled.

## IV.    CONCLUSION

For the above reasons, the Court **OVERRULES** McKnight's Objections (Doc. 343), **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. 332), and **ORDERS DISMISSAL WITH PREJUDICE** of the Amended Petition for Habeas Corpus (Doc. 127). Judgment shall enter in favor of the Warden and against McKnight.

At the conclusion of the Report, the Magistrate Judge wrote:

> Under Rule 11 of the Rules Governing § 2254 Cases, the Court must in any final judgment adverse to the Petitioner make a determination on whether a certificate of appealability should issue as to any claim. No recommendation is made on that question herein because the parties have not yet briefed the question. A schedule for such briefing will be set after any objections to this Report are resolved.

(Doc. 332, PageID 18198.)  Neither party has objected to that recommendation, and it is hereby adopted.  Petitioner McKnight shall file his motion for a certificate of appealability not later than July 1, 2024.

IT IS SO ORDERED.

S/Susan J. Dlott
**SUSAN J. DLOTT**
**UNITED STATES DISTRICT JUDGE**