ININ THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GREGORY McKNIGHT,

    Petitioner,

v.

DAVID BOBBY, Warden,

    Respondent.

Case No. 2:09-cv-059
Judge Susan J. Dlott
Magistrate Judge Michael R. Mertz

## ORDER

This capital habeas corpus case is before the Court on Petitioner's Motion for Certificate of Appealability (ECF. No 364). Respondent opposes the Motion (Response, Doc. No. 366), and McKnight has filed a Reply in Support (ECF No. 373).

A petitioner seeking to appeal an adverse ruling in the district court on a petition for writ of habeas corpus or on a § 2255 motion to vacate must obtain a certificate of appealability before proceeding. 28 U.S.C. § 2253 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214) (the "AEDPA"), provides in pertinent part:

> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>
> > **(A)** the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > **(B)** the final order in a proceeding under section 2255.
>
> **(2)** A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> **(3)** The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C.A. § 2253.

To obtain a certificate of appealability, a petitioner must show at least that "jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). That is, it must find that reasonable jurists would find the district court's assessment of the petitioner's constitutional claims debatable or wrong or because they warrant encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 705 (2004); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). If the district court dismisses the petition on procedural grounds without reaching the constitutional questions, the petitioner must also show that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484. The procedural issue should be decided first to avoid unnecessary constitutional rulings. *Id.* at 485 (citing *Ashwander v. TVA*, 297 U.S. 288, 347 (1936)). The first part of this test is equivalent to making a substantial showing of the denial of a constitutional right, including showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further, *Id.* at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect...a claim does not merit a certificate unless every independent reason to deny the claim is reasonably debatable. *Moody v. United States*, 958 F.3d 485 (6th Cir. 2020). "[T]he standards for a certificate are no mere technicality. By authorizing extra appeals, improper certificates add to the "profound societal costs" of habeas litigation while sapping limited public resources." *Calderon v. Thompson*, 523 U.S. 538, 554 (1998) (quoting *Smith v. Murray*, 477 U.S. 527, 539 (1986)).

A certificate of appealability is not to be issued *pro forma* or as a matter of course. *Miller-El v. Cockrell*, 537 U.S. 322 (2003). Rather, the district and appellate courts must differentiate

2

between those appeals deserving attention and those which plainly do not. *Id.* at 1040. Indeed, a blanket certificate of appealability for all claims is improper, even in a capital case. *Frazier v. Huffman*, 348 F.3d 174 (6th Cir. 2003), *citing Porterfield v. Bell*, 258 F.3d 484 (6th Cir. 2001).

McKnight seeks a certificate of appealability on four motions (ECF No. 271, 278, 286, 287, 301) and twenty-eight of his thirty-six of his claims for habeas relief. (ECF No. 364). In two hundred sixty-six pages, McKnight's motion overwhelmingly repeats the same arguments he made in support of his habeas petition with a generic recitation of the standard for certificate of appealability. The Court's order permitting McKnight to file a motion for a certificate of appealability was not an invitation to seek reconsideration of the court's disposition of his petition; it was an opportunity for McKnight to point out how a dissenting application of the law could legitimately support an issue for appeal.

Nevertheless, amongst McKnight's voluminous arguments, the Court has determined that a COA is due on three denied motions (Motion to Amend, Motion for Stay, and Motion for Authorization to Appear), and two claims for relief (Claim Eleven and Claim Thirty-Four). McKnight's remaining requests are recitations of previous arguments in support of habeas relief that fail to meet the standard for COA.

### Motion to Amend/Motion to Stay/Motion for Authorization to Appear (ECF No. 271, 278, 286, 287)

On March 6, 2018, McKnight filed a Motion for Leave to File an Amended Petition ("Motion to Amend"). (ECF No. 271). He argued that the Supreme Court opinion in *Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017), removed an obstacle for him to further pursue his juror bias claim. Particularly, he argued that the Supreme Court found that the Sixth Amendment overrides any rule prohibiting the consideration of juror affidavits in a motion for a new trial proceeding in cases where a juror made a clear statement of racial animus. McKnight sought to

3

amend his petition with new juror affidavits he argued established that jury deliberations in his trial were tainted by racial animus. (ECF No. 271).

The Court ordered supplemental briefing on *Teague v. Lane*, 489 U.S. 288 (1989), which restricts the retroactivity of new rules of criminal procedural on collateral review, and its applicability to McKnight's request to amend his petition using the new rule announced in *Pena-Rodriguez*. (ECF No. 275). The parties complied (ECF No. 278, 279, 230). McKnight primarily argued that *Pena-Rodriguez* did not announce a rule of criminal procedure because it regulates what evidence may be considered in postconviction proceedings. (ECF No. 278 at PageID# 17527). The Court rejected this argument as an exception to *Teague* that did not exist, and denied McKnight leave to amend his petition on the ground that *Pena-Rodriguez* could not be applied retroactively. (ECF No. 304).

McKnight also filed a Motion to Stay, in which he sought to pursue a remedy for his juror bias claim in state court. (ECF No. 286). Along with his Motion to Stay, McKnight filed a Motion for Authorization to Appear, seeking federal funding for his attorneys to represent him in pursuing a motion for a new trial in state court. (ECF No. 287). The Court denied McKnight's Motion to Stay and Abey for four reasons: (1) the denial of McKnight's motion to amend meant his petition was not mixed, (2) McKnight waited to file his motion to amend until one day before the expiration of the statute of limitations, (3) *Teague* prohibited *Pena-Rodriguez* from being applied retroactively, and (4) Ohio's no-impeachment rule, Ohio R. Evid. 606(B), would prevent the state court from considering evidence of McKnight's claim. (ECF No. 304). It followed that the Court also denied McKnight's request for funding for his counsel to represent him in state court. (ECF No. 305).

4

Reasonable jurists would not find debatable the Court's conclusion that *Teague* bars retroactive application of *Pena-Rodriguez* to claims in federal court. McKnight cannot obtain relief on his existing federal jury bias claim without relying on *Pena-Rodriguez* as authority for the proposition that the state court decision was contrary to federal law. In other words, the Court would have to apply *Pena-Rodriguez* retroactively to the date in which the state court denied postconviction relief. This retroactive application of *Pena-Rodriguez* is prohibited by *Teague*. *See Tharpe v. Warden*, 898 F.3d 1342, 1345-1346 (11th Cir. 2018) ("...*Pena-Rodriguez* cannot apply to Tharpe's habeas claim because, before *Pena-Rodriguez*, no precedent established that proof of a juror's racial animus created a Sixth Amendment exception to the no-impeachment rule...*Teague* bars Thorpe's claim"); *Richardson v. Kornegay*, 3 F.4th 687, 707 (4th Cir. 2021) ("the rule announced in [*Pena-Rodriguez*] was not "clearly established" at the time of Richardson's post-conviction proceedings nor can it be applied retroactively.").

Notwithstanding the Court's conclusion on the retroactive application of *Teague* to McKnight existing jury bias claim in federal court, reasonable jurists could find debatable the Court's decisions denying McKnight's Motion to Amend and Motion to Stay. McKnight sought to amend his federal habeas petition and return to state court on a motion for a new trial pursuant to Ohio Criminal Rule 33. Critically, the petitioner in *Pena-Rodriguez* challenged *the process* used to deny his motion for a new trial on grounds that the no-impeachment rule was a violation of the 6th Amendment. On March 6, 2017, the Supreme Court held:

> Where a juror makes a clear statement indicating that he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee.

*Pena-Rodriguez v. Colorado*, 580 U.S. 206, 206 (2017).

5

*Pena-Rodriguez's* holding specifically concerns how a trial court should properly conduct *the process* for evaluating a motion for a new trial. Thus, any state court conducting the process for hearing a motion for a new trial after March 6, 2017, would be bound by *Pena-Rodriguez*. A newly initiated motion for a new trial under Ohio Criminal Rule 33 by McKnight would fit this definition. In other words, reasonable jurists could find debatable the Court's decision to deny McKnight's Motion to Amend and Motion to Stay because *Pena-Rodriguez* was announced on March 6, 2017, and any state court that hears a motion for a new trial filed after that date is bound by it.

Reasonable jurists could find debatable the Court's analogy to the denial of motions to stay in prior cases by the courts within this district after the Supreme Court's announcement of a new rule of criminal procedure in *Hurst v. Florida*, 577 U.S. 92 (2016). *See* ECF No. 282 at 17576-17577. In those cases, even if the petitioners could have convinced the Ohio state courts to fashion a remedy, their federal habeas claims would have either been mooted or any state fashioned remedy would have been non-cognizable in a federal habeas proceeding. *See Danforth v. Minnesota*, 552 U.S. 264, 282 (2008) ("...the Teague decision limits the kinds of constitutional violations that will entitle an individual to relief on federal habeas, but does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed "nonretroactive" under Teague.").

McKnight's case should, arguably, be treated differently because newly initiated state court proceedings would not necessarily result in a dead end. Upon any hypothetical return to federal court after a stay, McKnight would not need to rely on retroactivity to show that the state court decision was contrary to federal law. For example, the state court could consider his new affidavits

per *Pena-Rodriguez*, but deny relief, and McKnight could argue for federal habeas relief on the theory that the state court's decision was contrary to his 6th Amendment right to an unbiased jury.

To be sure, upon any return to state court, McKnight would have to meet the requirements for a belated motion for a new trial under Ohio Criminal Rule 33 (in pertinent part):

> **(A) Grounds.** A new trial may be granted on motion of the defendant for any of the following causes affecting materially the defendant's substantial rights:
>
> (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
>
> \*\*\*
>
> **(B) Motion for New Trial; Form, Time...**
>
> Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.
>
> **(C) Affidavits Required.** The causes enumerated in subsection (A)(2) and (3) must be sustained by affidavit showing their truth, and may be controverted by affidavit.

Ohio Crim. R. 33. This may be a steep hill for McKnight to climb. But McKnight's juror bias claim was never heard on the merits due to a procedural technicality that no longer exists. Reasonable jurists could conclude that McKnight's chance to have his claim heard for the first time on the merits was sufficient reason to grant his Motion to Amend and Motion to Stay.

In *Pena-Rodriguez*, the Supreme Court made a point of emphasizing that the nature of the petitioner's claim was a factor in recognizing that the 6th Amendment required an exception to the general no-impeachment rule:

> It must become the heritage of our Nation to rise above racial classifications that are so inconsistent with our commitment to the equal dignity of all persons.
>
> \*\*\*

7

> The Nation must continue to make strides to overcome race-based discrimination. The progress that has already been made underlies the Court's insistence that blatant racial prejudice is antithetical to the functioning of the jury system and must be confronted in egregious cases like this one despite the general bar of the no-impeachment rule. It is the mark of a maturing legal system that it seeks to understand and to implement the lessons of history. The Court now seeks to strengthen the broader principle that society can and must move forward by achieving the thoughtful, rational dialogue at the foundation of both the jury system and the free society that sustains our Constitution.

*Pena-Rodriguez*, 580 U.S. at 222, 229. In *Tharpe v. Warden,* when the Supreme Court denied certiorari review, Justice Sotomayor commented,

> [W]e should not look away from the magnitude of the potential injustice that procedural barriers are shielding from judicial review. Tharpe has uncovered truly striking evidence of juror bias.... The danger of race determining any criminal punishment is intolerable and endangers public confidence in the law. That risk is especially grave here, where it may have yielded a punishment that is unique in its 'complete finality.'

*Tharpe v. Ford*, 586 U.S. 1241, 1244 (2019) (citation modified).

With these considerations in mind, reasonable jurists could find debatable or wrong the Court's decision to deny McKnight's request to amend his petition and stay his habeas proceedings to pursue a motion for a new trial in state court.[1] Accordingly, the Court grants a Certificate of Appealability on the Court's orders denying the Motion to Amend (ECF No. 282), Motion to Stay (ECF No. 304) and the Motion for Authorization to Appear (ECF No. 305).

### Claims Eleven and Thirty-Four

In Claim Eleven, McKnight contended that that the introduction of inflammatory evidence about his marital infidelities, his avoidance of police, and various personal characteristics of Emily

---

[1] A non-mixed petition does not automatically prevent a stay under *Rhines v. Weber,* 544 U.S. 269 (2005). *See Hickey v. Hoffner*, 701 Fed. App'x 422, 426 (6th Cir. June 30, 2017).

8

Murray deprived him of a fair trial and due process. (ECF No. 127, PageID 15725–15733). The Court concluded that McKnight failed to show an error of constitutional dimension that had a substantial and injurious effect on the verdict. (ECF No. 349 at PageID# 18561-18565).

In Claim Thirty-Four, McKnight contended that the prosecution presented insufficient evidence to convict him of kidnapping under Ohio Rev. Code § 2901.05 and, because the kidnapping charge served as a predicate felony for the charge of aggravated felony murder, there was insufficient evidence to convict him of aggravated felony murder. The Court concluded that McKnight failed to meet the deferential standard for relief on habeas review for a sufficiency of evidence claim. (ECF No. 349 at PageID# 18622-18624).

Citing *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011), McKnight argues that a dissent by Justice Pfiefer of the Ohio Supreme Court pertaining to these claims demonstrates that reasonable jurists could find the Court's conclusion debatable. (ECF No. 364 at PageID# 18770):

> When a state appellate court is divided on the merits of the constitutional question, issuance of a certificate of appealability should ordinarily be routine. A district court could deny a certificate of appealability on the issue that divided the state court only in the unlikely event that the views of the dissenting judge(s) are erroneous beyond any reasonable debate. See *Slack*, 529 U.S. at 484, 120 S.Ct. 1595.

*Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011). The Court finds this argument persuasive.

In McKnight's direct appeal, Justice Pfiefer of the Ohio Supreme Court filed a concurring opinion that dissented on the majority's conclusion that the evidence proved beyond a reasonable doubt that McKnight kidnapped Murray or that he committed aggravated robbery. *State v. McKnight*, 2005-Ohio-6046, ¶ 341, 107 Ohio St. 3d 101. Pertinent to McKnight's request for a Certificate of Appealability, Justice Pfiefer opined:

> {¶ 342} The majority states, "The state proved that [McKnight] kidnapped Murray by showing that Murray and [McKnight] left work at approximately the same time

9

on the night Murray disappeared, that Murray's car was found parked behind [McKnight's] trailer, and that Murray's murdered body was found rolled in a carpet inside [McKnight's] trailer." None of this evidence proves beyond a reasonable doubt that McKnight "by force, threat, or deception * * * remove[d Murray] from the place where [she was] found or restrain[ed her] liberty." R.C. 2905.01(A). The majority also states that "the evidence proved that Murray did not have her wallet, driver's license, and credit cards when she disappeared and that Murray did not tell anyone she was leaving the area, despite her habit of informing friends of her whereabouts." But this evidence doesn't prove "force, threat, or deception." Further, this evidence suggests that Murray may have voluntarily given McKnight a ride home, as his co-workers sometimes did. (The record does not indicate that McKnight's co-workers ever gave him a ride to Vinton County.) As further proof of kidnapping, the majority states that "[McKnight] lied when Murray's friend asked about her, and [McKnight] also told a co-worker that she was 'probably dead.'" This evidence suggests nothing as to kidnapping; it is certainly damning evidence, but only as to murder. Finally, as further proof of kidnapping, the majority states, "[McKnight] also falsely told Kimberly Zimmerman that the Subaru behind his trailer belonged to his boss or a friend, 'and they were down there probably hunting.'" Again, this evidence suggests nothing as to kidnapping.

{¶ 343} "Other acts" testimony was admitted into evidence to prove McKnight's motive, opportunity, intent or purpose or plan to commit kidnapping. The evidence established that McKnight often needed a ride home from work and that he had a penchant for seeking extramarital sex. Calling these behavioral patterns a "modus operandi" is a significant stretch. This evidence should have been excluded because "its probative value is substantially outweighed by the danger of unfair prejudice." Evid.R. 403(A). The evidence offers little to no probative value given the overwhelming evidence of murder and the absence of evidence of kidnapping. Further, the prejudicial effect is significant because of the opprobrium that a jury is likely to feel toward a serial adulterer, instructions to the contrary notwithstanding. That McKnight sought lovers seems a thin reed on which to base a kidnapping conviction.

{¶ 344} The majority discusses kidnapping only in the context of the sufficiency of the evidence. I agree that there is sufficient evidence to crest that low threshold. Affirming a death specification, however, requires proof beyond a reasonable doubt, which the record does not contain.

{¶ 345} While it ignores the consequences of the paucity of evidence to support a kidnapping conviction, at least the majority discusses it. The aggravated-robbery death specification was affirmed even though the majority opinion does not discuss any of the evidence on which it relies. Apparently, the mere presence of the Subaru on McKnight's property is sufficient evidence to prove that he stole it. In reality, the Subaru's presence on his property proves nothing more than its presence.

{¶ 346} The majority opinion concludes, "[McKnight] kidnapped Murray, stole her car, and then brutally murdered Murray inside his trailer." As discussed above, there is no evidence beyond a reasonable doubt that McKnight kidnapped Murray or that he stole her car. Based on the evidence in the record, it is as likely that Murray voluntarily drove McKnight home and voluntarily entered his home. Sadly, there is no doubt that McKnight committed a brutal murder. Nevertheless, because of the lack of evidence of the aggravating circumstances, McKnight should not be sentenced to death, and I dissent from the portion of the majority opinion that upholds the death sentence.

*McKnight*, 2005-Ohio-6046, ¶¶ 342-346,

Justice Pfiefer opined that the majority affirmed the kidnapping death specification by relying on irrelevant and prejudicial evidence that should not have been admitted. Thus, reasonable jurists could debate that Claims Eleven and Thirty-Four could have been resolved in a different manner, finding both that his due process rights were violated by admission of prejudicial testimony and there was insufficient evidence to support the kidnapping death specification. McKnight is granted a Certificate of Appeal on Claims Eleven and Thirty-Four.

## Conclusion

For the above reasons, a Certificate of Appealability is GRANTED with respect to the denial of his Motion to Amend (ECF No. 271, 287), Motion to Stay (ECF No. 304), Motion for Authorization (ECF No. 278), Claim Eleven, and Claim Thirty-Four. McKnight's request for Certificate of Appealability on all remaining claims is DENIED.

IT IS SO ORDERED.

SUSAN J. DLOTT
UNITED STATES DISTRICT JUDGE

Date: